**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 3:21-cv-00448-BJD-JRK**

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

       *Plaintiff,*

        v.

UWM HOLDINGS CORPORATION and
MAT ISHBIA, individually,

       *Defendants.*
_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**
**PURSUANT TO RULES 12(B)(1), 12(B)(2), AND 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.      Introduction ........................................................................................1

II.     Summary of Factual Allegations ........................................................5

   A.   Plaintiff Is a Mortgage Broker in a Vertical Relationship with
        Mortgage Lenders Like UWM, Rocket, and Fairway..........................5

   B.   UWM Announced the Amendment to Combat Practices It
        Believes Are Harmful to the Wholesale Mortgage Lending
        Channel. .......................................................................................... 6

   C.   Plaintiff and Other Brokers Remain Free to Choose Their
        Lenders.............................................................................................7

III.    Standard of Review ........................................................................... 9

   A.   Rule 12(b)(1)...................................................................................... 9
   B.   Rule 12(b)(2) ..................................................................................... 9
   C.   Rule 12(b)(6) ....................................................................................10

IV.     Argument ......................................................................................... 11

   A.   Plaintiff Lacks Standing on All Claims Because It Alleges No
        Injury. .............................................................................................. 11

        1.   Plaintiff Lacks Article III Standing Because It Does Not
             and Cannot Allege an Injury in Fact. .................................... 11

        2.   Plaintiff Lacks Antitrust Standing Because It Fails to
             Allege Antitrust Injury or That It Is an "Efficient
             Enforcer" of Antitrust Laws. ....................................................13

   B.   This Court Lacks Personal Jurisdiction Over Mr. Ishbia. ................15
   C.   Each Count of Plaintiff's Complaint Fails to State a Claim. .............16

        1.   Plaintiff Fails to State a Claim for Unlawful Restraint of
             Trade Under Section 1 of the Sherman Act (Count I). ............16

             a.   The Amendment Is Facially Lawful and Does Not
                  Restrain Trade...............................................................17

             b.   Plaintiff Fails to Adequately Allege
                  Anticompetitive Effects.................................................19

                  i.    Plaintiff Fails to Allege the Potential for
                        Genuine Adverse Effects on Competition. ..........19
                  ii.   Plaintiff Fails to Allege Actual Detrimental
                        Effects.................................................................. 23

        2.   Plaintiff Fails to State a Claim for "Steering" Under
             Section 1 of the Sherman Act (Count II). ............................... 24

3.    Plaintiff Fails to State a Claim for Attempted
Monopolization Under Section 2 of the Sherman Act
(Count III) ................................................................. 25

a.    Plaintiff Fails to Allege Anticompetitive Conduct
or a Specific Intent to Monopolize ............................... 25

b.    Plaintiff Fails to Allege a Dangerous Probability of
Achieving Monopoly Power. ........................................ 27

4.    Plaintiff Fails to State a Claim for Violation of the
Florida Antitrust Act (Counts IV–VI). .................................... 29

5.    Plaintiff Fails to State a Claim for Tortious Interference
with Business Relationships (Count VII). .............................. 29

6.    Plaintiff Fails to State a Claim for Violations of FDUTPA
(Count VIII). ............................................................... 33

7.    Plaintiff Fails to State a Claim for Declaratory Relief
(Count IX). .................................................................. 34

V.    Conclusion ........................................................................ 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*,
  No. 6:14-cv-310-Orl-31TBS, 2015 U.S. Dist. LEXIS 184070 (M.D. Fla.
  2015) ........................................................................................................17

*Alcon Labs., Inc. v. Allied Vision Grp., Inc.*,
  No. 18-61638-CIV, 2019 WL 2245262 (S.D. Fla. Apr. 2, 2019) ................... 33

*Alcon Labs, Inc. v. Allied Vision Grp., Inc.*,
  No. 18-CV-61638, 2019 WL 2245584 (S.D. Fla. Mar. 7, 2019) ................... 33

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
  135 F.3d 740 (11th Cir. 1998) ................................................................. 29

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l
  Publ'ns, Inc.*,
  108 F.3d 1147 (9th Cir. 1997) ................................................................. 20

*Appleton v. Intergraph Corp.*,
  627 F. Supp. 2d 1342 (M.D. Ga. 2008) ................................................... 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................... 10, 22

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) .............................................................................. 14

*Auto Dealer Sols., Inc. v. S.-Owners Ins. Co.*,
  No. 8:17-CV-2525, 2018 WL 4600674 (M.D. Fla. Jan. 25, 2018) ............... 35

*Bailey v. Allgas, Inc.*,
  284 F.3d 1237 (11th Cir. 2002) ............................................................... 20

*BBX Capital v. Fed. Deposit Ins. Corp*,
  956 F.3d 1304 (11th Cir. 2020) ............................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 10, 14

*Beverage Mgmt., Inc. v. Coca-Cola Bottling Corp.*,
  653 F. Supp. 1144 (S.D. Ohio 1986) ....................................................... 18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .............................................................................. 14

*Caldwell v. Klinker*,
  No. 8:14-CV-2708, 2014 WL 7337430 (M.D. Fla. Dec. 23, 2014) ................ 9

*City First Mortg. Corp. v. Barton*,
  988 So. 2d 82 (Fla. 4th DCA 2008) ................................................... 33, 34

iii

*Daleo v. McCray,*
    No. 8:11-CV-2521, 2012 WL 6733091 (M.D. Fla. Dec. 28, 2012)................................ 10

*Del Prado Mall Pro. Condo. Ass'n, Inc. v. Voyager Indem. Ins. Co.,*
    No. 2:20-CV-838, 2021 WL 1578758 (M.D. Fla. Apr. 22, 2021) ................................ 35

*In re Delta/AirTran Baggage Fee Antitrust Litig.,*
    733 F. Supp. 2d 1348 (N.D. Ga. 2010)....................................................................... 25

*Divcic v. Am. Mortg. Consultants, Inc.,*
    No. 8:09-CV-2233, 2010 WL 11629138 (M.D. Fla. Feb. 22, 2010) ........................... 16

*Doe v. Thompson,*
    620 So. 2d 1004 (Fla. 1993).......................................................................................15

*EnviroPak Corp. v Zenfinity Capital, LLC,*
    No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770 (E.D. Mo. Jan. 23,
    2015) .......................................................................................................................... 23

*Fid. Nat'l Fin., Inc. v. Attachmate Corp.,*
    No. 3:15-CV-01400, 2017 WL 3726687 (M.D. Fla. Mar. 1, 2017)............................. 33

*Fin. Sec. Assur., Inc. v. Stephens, Inc.,*
    500 F.3d 1276 (11th Cir. 2007) .............................................................................1, 6

*Fla. Steel Corp. v. Whiting Corp.,*
    677 F. Supp. 1140 (M.D. Fla. 1988) ......................................................................... 30

*Foster Logging, Inc. v. United States,*
    973 F.3d 1152 (11th Cir. 2020)................................................................................... 9

*Fru Veg Mktg., Inc. v. Vegfruitworld Corp.,*
    896 F. Supp. 2d 1175 (S.D. Fla. 2012) ...................................................................... 9

*Greenberg, M.D. v. Mount Sinai Med. Ctr. of Greater Miami, Inc.,*
    629 So. 2d 252 (Fla. 3d DCA 1993) .......................................................................... 32

*Griffin Indus., Inc. v. Irvin,*
    496 F. 3d 1189 (11th Cir. 2007) ............................................................................... 10

*Gulf States Reorg. Grp., Inc. v. Nucor Corp.,*
    721 F.3d 1281 (11th Cir. 2013)................................................................................. 27

*Gulf States Reorg. Grp., Inc. v. Nucor Corp.,*
    822 F. Supp. 2d 1201 (N.D. Ala. 2011) *aff'd,* 721 F.3d 1281 (11th Cir.
    2013) ......................................................................................................................... 28

*Hanicomp, Inc. v. U.S. Golf Ass'n,*
    2000 WL 426245 (3d Cir. 2000) .............................................................................. 20

*Houston v. Marod Supermarkets, Inc.,*
    733 F.3d 1323 (11th Cir. 2013).................................................................................. 9

*Howard v. Murray,*
    184 So. 3d 1155 (Fla. 1st DCA 2015) ....................................................................... 30

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    626 F.3d 1327 (11th Cir. 2010) ........................................................................... 20, 22

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    No. 4:07-CV-02, 2007 U.S. Dist. LEXIS 91241 (N.D. Ga. Dec. 11, 2007)...................21

*Klayman v. Jud. Watch, Inc.,*
    No. 07-22413-CIV, 2008 WL 11333054 (S.D. Fla. Feb. 22, 2008)............................ 16

*Kovalovsky v. Def. Fin. Acct. Serv.,*
    No. 6:13-CV-1058, 2013 WL 4747091 (M.D. Fla. Sept. 4, 2013) ...............................13

*L&C Babb Mgmt. v. Am. Home Mortg.,*
    No. 6:15-CV-1209, 2016 WL 2784378 (M.D. Fla. May 13, 2016) ...............................11

*Lamb v. Charlotte Cty.,*
    429 F. Supp. 2d 1302 (M.D. Fla. 2006).......................................................................11

*Lane v. Capital Acquisitions & Mgmt. Co.,*
    No. 04-60602 CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006)............................ 16

*Lane v. XYZ Venture Partners, L.L.C.,*
    322 F. App'x 675 (11th Cir. 2009)................................................................................15

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,*
    884 F.2d 504 (9th Cir. 1989)........................................................................................ 24

*Levine v. Cent. Fla. Med. Affiliates,*
    72 F.3d 1538 (11th Cir. 1996) ..................................................................................... 19

*Lewis v. Casey,*
    518 U.S. 343 (1996).......................................................................................................13

*LiveUniverse, Inc. v. MySpace, Inc.,*
    No. CV 06-6994, 2007 U.S. Dist. LEXIS 43739 (C.D. Cal. June 4, 2007) ................ 26

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .......................................................................................................11

*Maxon Hyundai Mazda v. Carfax, Inc.,*
    2016 U.S. Dist. LEXIS 171418 (S.D.N.Y. Sept. 30, 2016), *aff'd,* 726 Fed.
    Appx. 66 (2d Cir. 2018) ............................................................................................... 20

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.,*
    501 F.3d 1244 (11th Cir. 2007) ..................................................................................... 9

*McWane, Inc. v. Fed. Trade Comm'n,*
    783 F.3d 814 (11th Cir. 2015)...................................................................................... 22

*Med. Sav. Ins. Co. v. HCA, Inc.,*
    No. 2:04-CV-156, 2005 WL 1528666 (M.D. Fla. June 24, 2005), aff'd,
    186 F. App'x 919 (11th Cir. 2006) ...............................................................................31

*Med. Savs. Ins. Co. v. HCA Inc.,*
    No. 2:04-cv-156, 2005 U.S. Dist. LEXIS 20206 (M.D. Fla. June 24,
    2005)..............................................................................................................................15

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) ...................................................................................17

*Morris v. SSE, Inc.*,
    843 F.2d 489 (11th Cir. 1988)..................................................................... 9

*Mr. Furniture Warehouse, Inc. v. Barclays Am./Commercial Inc.*,
    919 F.2d 1517 (11th Cir. 1990)................................................................. 27

*Mukamal v. Bakes*,
    No. 07-20793-CIV, 2008 WL 11391157 (S.D. Fla. May 20, 2008), aff'd,
    378 F. App'x 890 (11th Cir. 2010) ............................................................ 33

*Nephron Pharms. Corp. v. Hulsey*,
    No. 6:18-cv-1573, 2019 WL 3890253 (M.D. Fla. Aug. 19, 2019) ................ 32

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007)......................................................................14

*Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*,
    651 F.2d 76 (2d Cir. 1981)......................................................................... 26

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018).......................................................................... 18, 25

*Paddock Pubs., Inc. v. Chicago Tribune Co.*,
    103 F.3d 42 (7th Cir. 1996) ....................................................................... 23

*Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*,
    604 F.3d 1291 (11th Cir. 2010) ..................................................................13

*Paycargo, LLC v. CargoSprint, LLC*,
    No. 3:19-cv-85, 2019 U.S. Dist. LEXIS 195391 (N.D. Ga. 2019)................. 28

*Pediatric Servs. of Am. Inc. v. Kendrick*,
    No. 3:18-cv-1372, 2020 WL 6336127 (N.D. Fla. Sept. 30, 2020) ........... 29, 30

*PNY Techs., Inc. v. Sandisk Corp.*,
    No. 11-CV-04689, 2014 U.S. Dist. LEXIS 58108 (N.D. Cal. Apr. 25,
    2014) ....................................................................................................... 19

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    No. 8:12-cv-02102, 2013 WL 3936394 (C.D. Cal. July 30, 2013) .............. 19

*Procaps S.A. v. Patheon, Inc.*,
    845 F.3d 1072 (11th Cir. 2016) ................................................................. 24

*Ramirez v. Grp. Servs.*,
    No. 6:16-cv-1831, 2017 U.S. Dist. LEXIS 95265 (M.D. Fla. June 20,
    2017)........................................................................................................ 10

*Randall v. Scott*,
    610 F.3d 701 (11th Cir. 2010)..................................................................... 10

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*,
    514 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................. 30, 31

*Saunders v. Duke*,
  766 F.3d 1262 (11th Cir. 2014) ............................................................ 6

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6 (1st Cir. 1999) ................................................................... 14

*Sherr v. HealthEast Care Sys.*,
  262 F. Supp. 3d 869 (D. Minn. 2017) ................................................. 24

*Sierra v. City of Hallandale Beach*,
  904 F.3d 1343 (11th Cir. 2018) ........................................................... 10

*Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*,
  376 F.3d 1065 (11th Cir. 2004) ............................................ 19, 24, 25, 26

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ........................................................................... 25

*St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*,
  457 So. 2d 1028 (Fla. Dist. Ct. App. 1984) ....................................... 29

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961) ........................................................................... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................. 6

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................... 13

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) ............................................................... 27

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919) ........................................................................... 17

*United States v. E. I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956) ........................................................................... 21

*Vitacost.com v. Oregon Freeze Dry, Inc.*,
  No. 09-80367-CIV, 2009 U.S. Dist. LEXIS 74347 ............................ 17

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*,
  No. 06-81141-CIV, 2007 U.S. Dist. LEXIS 22266 (S.D. Fla. Mar. 28,
  2007) ................................................................................................... 14

*Wackenhut Corp. v. Maimone*,
  389 So. 2d 656 (Fla. 4th DCA 1980) ................................................. 32

*Wang v. United States*,
  No. 8:16-CV-2050, 2016 WL 6582900 (M.D. Fla. Nov. 7, 2016) ........ 13

*YMD Records, LLC v. Ultra Enters., Inc.*,
  361 F. Supp. 3d 1258 (S.D. Fla. 2019) ............................................... 18

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ............................................................... 18

*Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*,
   248 F. Supp. 3d 1268 (M.D. Fla. 2017) ....................................................... 34

**Statutes**

28 U.S.C. 1332(d)(2) ...................................................................................15

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................ 16

Fed. R. Civ. P. 9(b) ................................................................................... 33

Fed. R. Civ. P. 12(b)(1)...........................................................................9, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................ 10

Defendants, UWM Holdings Corporation[1] and Mat Ishbia ("Mr. Ishbia," and collectively, "Defendants"), by their undersigned counsel, file this Motion to Dismiss Class Action Complaint and Memorandum of Law in Support thereof, and as grounds therefor, state:

## I.   **Introduction**

This putative class action is more publicity stunt than plausible claim. Plaintiff complains of an optional contractual initiative undertaken by UWM to address a significant threat to its clients—mortgage brokers—who play a vital role in allowing consumers to access the wholesale mortgage lending channel, resulting in better mortgages at more favorable rates than consumers are often able to obtain through retail mortgage lenders. Two months ago, UWM made the decision as part of its "All-In Initiative" to confront the business practices of Rocket Pro TPO ("Rocket") and Fairway Mortgage ("Fairway"), whose actions UWM believes are deeply harmful to mortgage brokers and to the pro-consumer, pro-small business wholesale mortgage lending channel. To that end, UWM announced on March 4, 2021 that it had decided to end its business relationship with brokers who elected

---

[1] Plaintiff inexplicably names UWM Holdings Corporation as a Defendant when Plaintiff's claims all purportedly arise out of an Amendment to the Broker Agreement between Plaintiff and a separate entity, United Wholesale Mortgage, LLC ("UWM")—not UWM Holdings Corporation. *See* Compl. ¶ 12; *see also* Broker Agreement, attached hereto as **Exhibit A**; *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007) (Court may rely on documents referred to in the complaint where such documents are central to plaintiff's claim and neither party challenges their authenticity). That alone is grounds to dismiss the Complaint. Nevertheless, to avoid confusion, all references to "UWM" are to the contracting party, United Wholesale Mortgage, LLC. Plaintiff has also individually named UWM's President and CEO, Matt Ishbia, while failing to articulate any individual grounds for his inclusion as a Defendant. As set forth below, this Court lacks personal jurisdiction over Mr. Ishbia individually.

to continue originating loans with Rocket and Fairway.

Specifically, UWM exercised its contractual right to amend its Broker Agreement and present a new term (the "Amendment") to some of its contracted mortgage brokers, whereby the brokers would represent and warrant that they would no longer submit loans to Rocket and Fairway. Each broker had the free and voluntary choice to accept the Amendment by sending loans to UWM, or to opt out. UWM asked these mortgage brokers to execute an "Addendum" indicating their intentions. For those mortgage brokers that agreed to the new term, either by submitting loans to UWM or by signing the Addendum, business with UWM continued in the normal course. For the minority of mortgage brokers that elected not to do so, UWM honored any existing loans already in the pipeline, and exercised its contractual right to terminate their Broker Agreements going forward. In either event, the mortgage brokers maintained access to more than 70 mortgage lenders, and consumers retained their full spectrum of choices across all mortgage brokers, wholesale mortgage lenders, and retail mortgage lenders. Furthermore, those mortgage brokers who agreed to the Amendment have undertaken no minimum commitment or obligation to submit loans to UWM, and remain free to terminate their Broker Agreements at any time and without consequence.

Plaintiff filed its Complaint after ***declining*** the Amendment. Disregarding its own voluntary contractual choice, Plaintiff insists it has been "forced" or "coerced" to offer UWM's mortgage loan products (it has not), and puts forward

the untenable legal theory that federal and state law compels UWM to do business with Plaintiff on the terms Plaintiff prefers—without regard to UWM's own judgment that its business interests are ill-served by making UWM's technology, services, and products available to those individuals it believes are hurting the wholesale mortgage lending channel by sending loans to Rocket and Fairway.

Contrary to the propaganda campaign being waged by opponents of the All-In Initiative in the media and industry publications—and this Complaint is very much a part of that campaign—UWM is not a utility, a government entity, or a monopolist. UWM's decision to work with some mortgage brokers and not others is no more "anticompetitive" or a "restraint of trade" than the decision of some retail lenders (*e.g.*, major retail banks) to offer loans to consumers only through captive loan officers, and not to do business with independent mortgage brokers at all. UWM has chosen to fight for mortgage brokers, and by extension consumers. Others may agree or disagree with UWM's initiative, but courts will not interject federal or state law to order a private company to do business with entities it views unfavorably, or on terms it has independently concluded are to its detriment, the detriment of its clients, and the detriment of its industry.

All that has occurred here is one contracting party proposed to amend its contract; and, as with any contractual situation, the counterparty had the choice to accept or reject the proposed term. Plaintiff avers it declined the Amendment because it prefers the mortgage loan products offered by Rocket and Fairway to those of UWM. Yet Plaintiff has sued UWM—the lender it did ***not*** choose and

whose products it deems *less* desirable—for supposed anticompetitive practices. Plaintiff alleges no facts explaining how its voluntary choice (or that of any other putative class member) injures Plaintiff, Plaintiff's customers, or the competitive mortgage loan market—because it does not. Plaintiff's claims are facially deficient and should be dismissed for multiple independent reasons.

*First*, Plaintiff lacks both Article III and antitrust standing because it does not and cannot allege any injury in fact, much less an antitrust injury, arising out of its choice to decline the Amendment, which resulted in the termination of its relationship with UWM.

*Second*, Plaintiff has failed to allege facts supporting this Court's personal jurisdiction over Mr. Ishbia, and the corporate shield doctrine precludes personal jurisdiction over Mr. Ishbia individually, requiring his dismissal with prejudice.

*Third*, Plaintiff's purported antitrust claims (Counts I–VI) fail to state a claim because: (i) the Amendment is facially lawful as a means for UWM to select the brokers with whom it does business; (ii) Plaintiff fails to adequately allege actual or potential anticompetitive effects on a properly defined market; and (iii) Plaintiff fails to adequately allege any risk of monopolization of a properly defined market.

*Fourth*, Plaintiff's tortious interference claim (Count VII) fails to allege any intentional or unjustified interference by Defendants with the purported business relationships between Plaintiff, Fairway, and Rocket.

*Fifth*, Plaintiff's Florida Deceptive and Unfair Trade Practices Act

("FDUTPA") claim (Count VIII) fails to adequately allege any purported damages sufficient to state a claim.

**Sixth**, Plaintiff's declaratory relief claim (Count IX) is wholly duplicative of Plaintiff's other claims and cannot survive dismissal.

## II.   <u>Summary of Factual Allegations</u>

### A.   **Plaintiff Is a Mortgage Broker in a Vertical Relationship with Mortgage Lenders Like UWM, Rocket, and Fairway.**

Plaintiff alleges that UWM is a wholesale residential mortgage lender. Compl. ¶ 3. Non-parties Rocket and Fairway are also mortgage lenders. *Id.* ¶¶ 7-8. Plaintiff is a mortgage broker who did minimal business with UWM for less than a year pursuant to a Broker Agreement Plaintiff signed with UWM on or about November 20, 2020.   *See* Ex. A. Plaintiff also alleges it has a "business relationship" with Rocket and/or Fairway. *Id.* ¶ 41.

Wholesale mortgage lenders like UWM offer mortgage loans through independent third parties, including mortgage brokers, and do not work directly with borrowers until after a loan has been funded. *Id.* ¶ 3. The mortgage brokers, in turn, deal directly with the borrower by providing and collecting loan applications and assisting with income verification, among other matters. *Id.* ¶ 5. Thus, the relationship between Plaintiff and lenders like UWM, Rocket, and Fairway is vertical: Plaintiff submits loans to the lenders and acts as a commercial intermediary between the lenders and the consumer borrowers.

**B.    UWM Announced the Amendment to Combat Practices It Believes Are Harmful to the Wholesale Mortgage Lending Channel.**

The event giving rise to this lawsuit is the March 4, 2021 announcement by Defendant Mat Ishbia, President and CEO of UWM, that UWM was proposing to amend its Broker Agreement to require a representation and warranty that mortgage brokers who submit loans to UWM will not also submit loans to Rocket or Fairway. Compl. ¶ 12. Some brokers were encouraged to sign an Addendum indicating their intentions with respect to the Amendment. *Id.* ¶ 32. UWM had the contractual right to amend the Broker Agreement at its discretion, and a broker's submission of any mortgage loan application or mortgage loan to UWM after the date of the Amendment constitutes acceptance. Ex. A § 7.08.

Plaintiff's Complaint expressly incorporates Mr. Ishbia's announcement of the Amendment into its allegations. Compl. ¶¶ 11, 27; *see also* Transcript of Mar. 15, 2021 Facebook Live Video Announcement, attached hereto as **Exhibit B**.[2] Mr. Ishbia explained the purpose of the Amendment, stating that Rocket and Fairway were "out there hurting the wholesale channel" by "soliciting loan officers," "talking negatively about brokers," "going after real estate agents," "trying to cut the loan officers," and "solicit[ing] your past clients." Ex. B at 12:14-13:16. He

---

[2] The Court may consider Mr. Ishbia's comments in ruling on Defendants' motion to dismiss because they are relied upon and incorporated into the Complaint. *See Fin. Sec. Assur., Inc.*, 500 F.3d at 1284-85; *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (documents "incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss").

emphasized that "[w]hatever they want to do they can do [] as long as they play by the rules," but "that's not my business model," which is "helping you win," "[h]elping the family grow," and "[b]eing all in for brokers." *Id.* at 13:18-22. Accordingly, "I'm starting today and saying at UWM, we're not helping those that help them." *Id.* at 14:2-3.

Mr. Ishbia indicated there would be "no hard feelings" for those declining the Amendment, and stated that brokers would still be permitted to "close out your loans" and "take care of consumers [e]ven if you [] decline[.]" *Id.* at 15:10–15:17. He emphasized that this was a decision "going forward," that UWM would not "support[] brokers with our technology, with our service, with our passion for the broker channel, with our recruiting [or] with all the other things" UWM provides "to hurt the rest of the broker channel by funding the competition of brokers [and] the competition of the wholesale channel[.]" *Id.* at 15:23-16:4. He also noted that there were "73 other lenders," and brokers would "have options" with or without the "two [lenders] that are out there hurting the channel," because "there's nothing that those two lenders do for brokers that the other 73 lenders don't do." *Id.* at 16:9-18.

### C.   **Plaintiff and Other Brokers Remain Free to Choose Their Lenders.**

Plaintiff alleges it declined UWM's Amendment in order to maintain its access to what Plaintiff claims are "better-suited and/or lower priced mortgage loans" offered by Rocket and Fairway. Compl. ¶¶ 10, 31, 61. Plaintiff alleges its

Broker Agreement with UWM was terminated when it did not sign the Amendment. *Id.* ¶¶ 27, 38. Plaintiff alleges this somehow inflicted injury on Plaintiff and other putative class members "in the millions of dollars prior to trebling," yet does not allege any facts reflecting how this constituted any injury at all, given Plaintiff's stated preference for Rocket's and Fairway's loan products. *Id.* ¶¶ 68, 79, 89, 101, 112, 122, 135, 145.

Each broker has the same freedom as Plaintiff to accept or decline the Amendment and to select the lender or lenders it preferred—be it UWM, Rocket, Fairway, or any of the other 70+ wholesale mortgage lenders in the market.[3] *Id.* ¶¶ 37, 38; Ex. B. Likewise, every broker contracting with UWM can exit the Broker Agreement at any time. The Broker Agreement contains a term of one year with automatic renewals of one year each, but either party can terminate "for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice[.]" Ex. A §§ 7.05, 7.06. A notice of termination also immediately releases the broker from its representation and warranty not to submit mortgage loans to Rocket or Fairway, without waiting for the seven-day notice period to elapse. *See* Amended Broker Agreement § 3.05, attached hereto as **Exhibit C**.

---

[3] Of course, some lenders (like major retail banks) have decided to cease working with mortgage brokers altogether, offering mortgages only through their own captive loan officer employees. Plaintiff notably does not allege that these lenders have engaged in anticompetitive conduct by electing to stop working with mortgage brokers altogether.

### III.   **Standard of Review**

#### A.   **Rule 12(b)(1)**

This Court is "powerless to act beyond its statutory grant of subject matter jurisdiction," and "must zealously insure that jurisdiction exists over a case." *Caldwell v. Klinker*, No. 8:14-CV-2708, 2014 WL 7337430, at *1 (M.D. Fla. Dec. 23, 2014) (quotation marks omitted). A Rule 12(b)(1) motion to dismiss tests the basis for the Court's subject matter jurisdiction, and "can be based upon either a facial or factual challenge to the complaint." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1170 (11th Cir. 2020) (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). A facial attack on the Complaint requires the Court to "look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Id.* (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013)).

#### B.   **Rule 12(b)(2)**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Plaintiff "bears the burden of establishing personal jurisdiction over the defendant." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1180 (S.D. Fla. 2012) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). Personal jurisdiction is subject to a facial challenge "[w]hen a plaintiff fails to include sufficient allegations in his complaint to establish a prima facie case of

personal jurisdiction[.]" *Ramirez v. Grp. Servs.*, No. 6:16-cv-1831, 2017 U.S. Dist. LEXIS 95265, at *4 (M.D. Fla. June 20, 2017).

### C.    Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Plaintiff "must state a claim for relief that is 'plausible on its face.'" *Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1353 n. 9 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court on a Rule 12(b)(6) motion to dismiss must accept all well-pled factual allegations as true, it is not required to "ignore specific factual details … in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F. 3d 1189, 1205-06 (11th Cir. 2007). Indeed, "'[a] district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'" *Daleo v. McCray*, No. 8:11-CV-2521, 2012 WL 6733091, at *2 (M.D. Fla. Dec. 28, 2012) (quoting *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)). Where Plaintiff's factual allegations do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

IV.   **Argument**

    A.   **Plaintiff Lacks Standing on All Claims Because It Alleges No Injury.**

        1.   <u>Plaintiff Lacks Article III Standing Because It Does Not and Cannot Allege an Injury in Fact.</u>

As a threshold matter, Plaintiff's theory of Article III standing is incoherent on the face of the Complaint, as Plaintiff has failed to articulate how it was injured in any way by having to make a contractual choice between UWM, on the one hand, and Rocket and/or Fairway, on the other. "'[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[,]' which the party invoking federal jurisdiction has the burden of proving." *BBX Capital v. Fed. Deposit Ins. Corp*, 956 F.3d 1304, 1312 (11th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "In order to meet the requirements of Article III standing, a plaintiff must establish that he has suffered an injury in fact, that the injury was causally connected to the defendant's actions, and that the injury would be redressed by a judgment in the plaintiff's favor." *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1307 (M.D. Fla. 2006). An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). A plaintiff who does not allege an injury in fact lacks standing to pursue its claims. *See L&C Babb Mgmt. v. Am. Home Mortg.*, No. 6:15-CV-1209, 2016 WL 2784378, at *3 (M.D. Fla. May 13, 2016) (dismissing complaint for failure to demonstrate a cognizable injury-in-

fact).

Plaintiff has failed to allege any cognizable injury in fact. Indeed, as alleged, the Complaint **denies** any such injury in fact. Plaintiff alleges the Amendment somehow "eliminated" Plaintiff's ability to offer loan products other than UWM's products, and "forced and coerced" brokers like Plaintiff to apply for UWM's loan products instead of Rocket's or Fairway's products. Compl. ¶¶ 61, 64. Yet the Complaint is clear that Plaintiff made the ***opposite*** contractual choice—it declined to sign the Amendment, resulting in the termination of its relationship with UWM; not Rocket or Fairway. *Id.* ¶ 43. Thus, Plaintiff remains free to offer its clients loan products from Rocket and Fairway, the lenders it prefers. *Id.* ¶¶ 10, 31. Put simply, Plaintiff was presented with a contractual amendment that it was free to accept or decline; elected to decline the Amendment; and is therefore free to continue doing business with any mortgage lender other than UWM, including Fairway and Rocket. *See id.* ¶¶ 10, 31, 43, 61, and 64.

Having to make a choice of lenders is not, of course, an injury in fact, and Plaintiff has no federal or state right to do business with UWM on whatever terms it prefers. Plaintiff alleges no facts indicating that having to choose between UWM, Rocket, and Fairway caused Plaintiff to incur any concrete, particular, actual, or imminent injury. If anything, Plaintiff seems to be asserting the purported "injury" was inflicted upon those putative class members who chose differently, and favored UWM's loan products. *See* Compl. ¶¶ 61, 64. But "[c]lass allegations that others suffered injuries giving rise to claims 'add ... nothing to the question

of standing.'" *In re Terazosin Hydrochloride Antitrust Litig*., 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Speculation that some unidentified, putative class member may have been injured in the event it made a different choice than Plaintiff, and found UWM's loan products were better suited to its clients, is not a cognizable injury. Plaintiff's Complaint should thus be dismissed in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Wang v. United States*, No. 8:16-CV-2050, 2016 WL 6582900 (M.D. Fla. Nov. 7, 2016) (dismissing for lack of subject matter jurisdiction because plaintiff's voluntary decision was insufficient to allege an injury in fact); *Kovalovsky v. Def. Fin. Acct. Serv.*, No. 6:13-CV-1058, 2013 WL 4747091, at *1 (M.D. Fla. Sept. 4, 2013) (dismissing complaint for lack of standing).

      2.    <u>Plaintiff Lacks Antitrust Standing Because It Fails to Allege Antitrust Injury or That It Is an "Efficient Enforcer" of Antitrust Laws.</u>

Plaintiff's antitrust claims (Counts I through VI) also fail to satisfy the additional standard for antitrust standing, which requires Plaintiff to fulfill "a number of 'prudential considerations aimed at preserving the effective enforcement of the antitrust laws.'" *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010). In particular, Plaintiff must allege (1) an "antitrust injury" harming competition, and (2) that Plaintiff is "an efficient enforcer of the antitrust laws." *Id*. The Complaint fails to plead either element.

With respect to the first element, Plaintiff has failed to plead any injury,

much less an "injury of the type the antitrust laws were intended to prevent and that flows from [the conduct that] makes [the] acts [of a defendant] unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). An antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* Pleading such an injury requires "'allegations plausibly suggesting (not merely consistent with)' antitrust injury." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557). The Complaint contains no such facts. It does not allege, for example, an appreciable reduction in the number of competitors, reduced output, or an increase in prices for lenders or consumers. *See, e.g., Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344 (1990).

Plaintiff also does not, and cannot, plead facts establishing the second element of antitrust standing, which requires that Plaintiff is an "efficient enforcer of the antitrust laws." *Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 U.S. Dist. LEXIS 22266, at *10 (S.D. Fla. Mar. 28, 2007). Plaintiff does not qualify as an "efficient enforcer" for antitrust purposes, because it is not the "consumer" of the mortgage, nor is it a "competitor" of UWM. *Id.* Rather, as a mortgage broker between wholesale mortgage lenders and mortgage consumers, Plaintiff serves as a "commercial intermediary." *Serpa Corp. v. McWane, Inc.,* 199 F.3d 6, 11 (1st Cir. 1999); Compl. ¶ 5 (mortgage brokers are intermediaries). As such, Plaintiff's purported injuries "do not qualify as antitrust injuries," necessitating dismissal. *Vitacost.com, Inc.*, 2007 U.S. Dist. LEXIS 22266, at *8

(injuries to distributors generally do not qualify as antitrust injuries); *Med. Savs. Ins. Co. v. HCA Inc.*, No. 2:04-cv-156, 2005 U.S. Dist. LEXIS 20206, *17 (M.D. Fla. June 24, 2005) (dismissing antitrust claims). Counts I through VI should therefore be dismissed for lack of standing.[4]

###### B.   This Court Lacks Personal Jurisdiction Over Mr. Ishbia.

Plaintiff's sole basis for naming Mr. Ishbia individually as a Defendant in this action is his announcement of the Amendment, which Plaintiff asserts was "directed" to mortgage brokers, including those in Florida like Plaintiff. Compl. ¶¶ 11, 17-19, 27-30, 39. That is plainly insufficient to hale Mr. Ishbia into Florida in his individual capacity. Plaintiff concedes Mr. Ishbia is a citizen of Michigan and alleges no personal jurisdictional connection to Florida outside of his official acts as President and CEO of UWM. *Id.* ¶¶ 11, 17. Florida's corporate shield doctrine "prohibit[s] the exercise of jurisdiction under the Florida long-arm statute over corporate employees whose only conduct in Florida was in furtherance of a corporation's interests." *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678 (11th Cir. 2009) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). Because Plaintiff's Complaint fails to allege any facts demonstrating that Mr. Ishbia acted in his individual capacity, the Court lacks personal jurisdiction over Mr. Ishbia under the corporate shield doctrine and the Complaint against him

---

[4] Defendants explicitly reserve all rights to challenge the class allegations in the event any of Plaintiff's claims survive this motion to dismiss, including but not limited to Plaintiff's failure to establish subject matter jurisdiction based upon its demonstrated inability to establish injury, and thus, the requisite $5 million amount in controversy required by the Class Action Fairness Act. *See* 28 U.S.C. 1332(d)(2).

must be dismissed pursuant to Rule 12(b)(2). *See Divcic v. Am. Mortg. Consultants, Inc.*, No. 8:09-CV-2233, 2010 WL 11629138, at \*1 (M.D. Fla. Feb. 22, 2010) (dismissing for lack of personal jurisdiction pursuant to corporate shield doctrine); *Klayman v. Jud. Watch, Inc.*, No. 07-22413-CIV, 2008 WL 11333054, at \*2 (S.D. Fla. Feb. 22, 2008) (same). Indeed, the conduct at issue in this case centers on the terms of the Amendment—not its announcement by Mr. Ishbia— leaving no factual basis to discern why Plaintiff sued Mr. Ishbia at all, nor certainly any basis for personal jurisdiction over him.[5]

### C.   Each Count of Plaintiff's Complaint Fails to State a Claim.

1.   <u>Plaintiff Fails to State a Claim for Unlawful Restraint of Trade Under Section 1 of the Sherman Act (Count I).</u>

UWM is not obliged to do business with Plaintiff, and its decision to cease doing so when Plaintiff declined the Amendment is not an antitrust violation. Plaintiff's boilerplate characterization of the Amendment as a "contract, combination, or conspiracy in restraint of trade to jointly boycott" Rocket and Fairway has no basis in fact or law. The Amendment is nothing more than a lawful exercise of UWM's right to contract with whom it chooses on the terms it chooses, with no anticompetitive effects.

---

[5] Plaintiff's failure to allege any conduct by Mr. Ishbia in his personal capacity is further illustrated by the fact that each and every Count of Plaintiff's Complaint lumps UWM and Mr. Ishbia together, and fails to distinguish the factual bases for purported liability against either. *See* Compl. ¶¶ 60, 73, 83, 93, 106, 116, 128, 136, 149. This failure to distinguish the acts of Defendants, in violation of Rule 8, likewise warrants dismissal. *See, e.g.*, *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at \*5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Lane's Complaint fails to satisfy the minimum standard of Rule 8.").

a.   *The Amendment Is Facially Lawful and Does Not Restrain Trade.*

UWM is permitted to choose the terms on which it is willing to conduct business, so long as it does so independently. The federal antitrust laws "do[ ] not restrict the long recognized right of [a party] engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). A party "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). Here, UWM announced its Amendment, and mortgage brokers are "free to acquiesce in the [defendants'] demand" if they wish to continue working with UWM—or to refuse if they do not. *Vitacost.com v. Oregon Freeze Dry, Inc.*, No. 09-80367-CIV, 2009 U.S. Dist. LEXIS 74347 at *17 (granting motion to dismiss); *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-cv-310-Orl-31TBS, 2015 U.S. Dist. LEXIS 184070, *282-83 (M.D. Fla. 2015) (dismissing Section 1 claims because the Sherman Act allows parties to exercise independent discretion regarding with whom they will deal).

Lacking any factual basis to fetter UWM's right to contract on its own terms, Plaintiff recites legal jargon instead, mischaracterizing the Amendment in conclusory fashion as a "naked horizontal conspiracy and restraint of trade that is

*per se* illegal under antitrust law....”[6] Compl. ¶¶ 63, 96. Yet the parties are in a vertical relationship, not horizontal; Plaintiff is a mortgage broker marketing mortgages originated by mortgage lenders to consumers. *Id.* ¶¶ 2, 3, 5. Vertical restraints are generally not *per se* violations of the Sherman Act, but rather, are “assessed under the rule of reason.” *Ohio v Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018).

Plaintiff cannot state a claim under the rule of reason, because it does not plead any facts setting forth unreasonable effects on competition. *See YMD Records, LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258, 1265 (S.D. Fla. 2019). ***First***, as described above, the Amendment is not an exclusive dealing contract. It includes no minimum requirement or obligation to submit loans to UWM, and in fact permits brokers to submit loans to more than 70 other wholesale lenders in addition to UWM. That is a facially lawful relationship that “generally pose[s] little threat to competition.” *ZF Meritor, LLC v. Eaton Corp.,* 696 F.3d 254, 270 (3d Cir. 2012); *see also Beverage Mgmt., Inc. v. Coca-Cola Bottling Corp.,* 653 F. Supp. 1144, 1146, 1154 (S.D. Ohio 1986) (providing incentives in exchange for exclusive promotion does not constitute exclusive dealing).

***Second***, UWM’s Broker Agreements, as amended, “are of relatively short duration and, crucially, can be terminated upon short notice,” and thus “do not—

---

[6] Aside from asserting twice in identical verbiage that the Amendment “implemented a naked horizontal conspiracy” (Compl. ¶¶ 63, 96), Plaintiff literally pleads no facts and makes no allegations indicating the existence of such a conspiracy. To the extent Plaintiff means to assert an antitrust conspiracy, therefore, it plainly fails to state a plausible claim.

by themselves—sustain the Sherman Act claims." *Pro Search Plus, LLC v. VFM Leonardo, Inc.,* No. 8:12-cv-02102, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013) (granting motion to dismiss). The Broker Agreement not only has a short term of one year, but either party may terminate for any reason upon seven days prior written notice, and the notice of termination immediately terminates the obligation not to submit loans to Rocket and Fairway. *See* § II.C, *supra*. These are precisely the types of short term, easily terminable contracts that cannot foreclose competition, and which are not anticompetitive as a matter of law. *See PNY Techs., Inc. v. Sandisk Corp.*, No. 11-CV-04689, 2014 U.S. Dist. LEXIS 58108, at *24-27 (N.D. Cal. Apr. 25, 2014) (dismissing because easy terminability and short duration negate the ability of a contract to substantially foreclose competition).

b. *Plaintiff Fails to Adequately Allege Anticompetitive Effects.*

Plaintiff's restraint of trade claim also fails because it does not allege, as it must, that UWM's challenged acts had an anticompetitive effect on the market either by (1) showing "the potential for genuine adverse effects on competition"; or (2) through "actual detrimental effects." *Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1551 (11th Cir. 1996).

i. Plaintiff Fails to Allege the Potential for Genuine Adverse Effects on Competition.

To plead the potential for genuine adverse effects on competition, Plaintiff must allege that UWM exercises market power in a proper market. *Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*, 376 F.3d 1065, 1073 (11th Cir. 2004). It

must further allege the Amendment substantially foreclosed competition in that market. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

Plaintiff attempts to define the relevant market as the "wholesale market," and asserts that UWM has "34% market share of the wholesale market." Compl. ¶ 6. But it is well established under the Sherman Act that "market share at or less than 50% is inadequate as a matter of law" to constitute sufficient market power. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1250 (11th Cir. 2002); *see also Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.,* 108 F.3d 1147, 1154 (9th Cir. 1997) ("[a] mere showing of substantial or even dominant market share alone cannot establish market power..."). Thus, even accepting *arguendo* Plaintiff's characterization of the "wholesale market" as the relevant market—though it is not, as discussed below—UWM's alleged 34% market share is insufficient to support an unreasonable restraint on trade. *See Hanicomp, Inc. v. U.S. Golf Ass'n,* 2000 WL 426245, at *3-4 (3d Cir. 2000) (72% market share insufficient); *Maxon Hyundai Mazda v. Carfax, Inc.,* 2016 U.S. Dist. LEXIS 171418, at *87-88 (S.D.N.Y. Sept. 30, 2016) (90% market share insufficient) (citation omitted), *aff'd*, 726 Fed. Appx. 66 (2d Cir. 2018).

Moreover, Plaintiff fails to include "enough information in [its] complaint to plausibly suggest the contours of the relevant geographic and product markets." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). Plaintiff asserts, in conclusory fashion, that "the relevant sub-market...is the market for wholesale lending for mortgages sold through mortgage brokers." Compl. ¶ 3. This

self-serving definition does not comport with Plaintiff's own acknowledgment that both wholesale lenders like UWM and lenders that operate in both the wholesale and (predominantly) retail channels like Rocket and Fairway sell the same product—residential mortgages—to consumers. *See* Compl. ¶¶ 4, 7-8. In determining the relevant product market, a court must consider all commodities which are reasonably interchangeable for the purposes for which they are produced, and the alleged "sub-market" fails to do so because it excludes residential mortgages originated by retail lenders. *See United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 394-95 (1956) (requiring consideration of interchangeable products). Where, as here, the product sold is functionally indistinguishable to consumers regardless of the channel, the broader market is the relevant one. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, No. 4:07-CV-02, 2007 U.S. Dist. LEXIS 91241, at *12 (N.D. Ga. Dec. 11, 2007) (granting motion to dismiss because relevant market was mattresses, rather than narrower "visco-elastic foam mattresses"). According to Plaintiff's own allegations, UWM's share of the relevant residential mortgage market is just 5.4%, which is clearly insufficient for pleading market power. Compl. ¶ 6 (alleging UWM's wholesale mortgage market share is 34%, and the wholesale market is only 15.8% of the larger residential mortgage market, yielding a total market share of 5.372% according to Plaintiff's allegations).

Lastly, Plaintiff has not alleged that the Amendment has foreclosed competition in the relevant market. "[F]or exclusive dealing to run afoul of the antitrust statutes," the exclusivity arrangements must substantially foreclose the

relevant market—*i.e.*, they must significantly limit the ability of other competitors to enter or remain in the market. *McWane, Inc. v. Fed. Trade Comm'n*, 783 F.3d 814, 837 (11th Cir. 2015). Plaintiff fails to allege non-conclusory facts showing that the Amendment has foreclosed competition. Plaintiff's bare assertions that its ability to offer access to the "best-suited" products has been "foreclosed" (Compl. ¶¶ 66, 77, 99), and the Amendment was "designed" to foreclose competing mortgage loan products (*id.* ¶¶ 67, 100) are insufficient as a matter of law (as well as unfounded and false). *See Jacobs*, 626 F.3d at 1333 (quoting *Iqbal*) (affirming dismissal of Section 1 claims because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Appleton v. Intergraph Corp.*, 627 F. Supp. 2d 1342, 1353 (M.D. Ga. 2008) (dismissing plaintiff's counterclaim because, among other reasons, "[t]he vast majority of the factual allegations in the Complaint are not only exceedingly vague, but any conduct they allege is unilateral").

Indeed, Plaintiff cannot plausibly allege foreclosure of competition because, according to Plaintiff's own allegations, mortgage brokers are free to decline the Amendment (as Plaintiff did) and to work with 70+ other wholesale lenders aside from UWM, including Rocket and Fairway. *See* Herbert Hovenkamp, *Federal Antitrust Policy* § 10.8 at 391 (1994) (foreclosure of even "a large percentage of one mode of distribution will have little anticompetitive effect if another mode is available"). Preventing mortgage brokers from working with just one or two of more than 70 lenders cannot possibly foreclose competition. That is especially so

where, as here, the Amendment is short-term, imposes no minimum obligations, remains available to those (like Plaintiff) that initially declined its terms, and is easily and immediately terminable on written notice. *See* § II.C, *supra*; *Paddock Pubs., Inc. v. Chicago Tribune Co.*, 103 F.3d 42, 44 (7th Cir. 1996) (affirming dismissal of Section 1 claim challenging exclusive contracts "terminable at will or on short notice" of thirty days to one year).

ii. Plaintiff Fails to Allege Actual Detrimental Effects.

Plaintiff likewise does not plead, and is unable to plead, actual detrimental effects on competition as a result of UWM's Amendment. The Complaint fails to allege an "actual increase in the price of the good or service, a decrease in output, or a decline in quality," the hallmarks of an actual detrimental effect. *EnviroPak Corp. v Zenfinity Capital, LLC*, No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770, *39 (E.D. Mo. Jan. 23, 2015). Plaintiff asserts only that it was forced to apply for non-competitive mortgage loan products at worse prices from UWM and is entitled to "commissions lost" and refunds for financial penalties imposed by UWM. Compl. ¶¶ 61-64; 68-29. Putting aside that these allegations are facially implausible because Plaintiff **declined** the Amendment, Plaintiff alleges **no** price increases, **no** effect on output, and **no** decline in quality of mortgage products. To the contrary, Plaintiff alleges that its selection of Rocket and Fairway over UWM has had positive competitive benefits for consumers and prospective borrowers. *See id.* ¶ 10.

Additionally, even if Plaintiff's implausible assertion of lost commissions or financial penalties constituted harm to competition, though they do not, Plaintiff fails to allege the nature of the commissions lost, when they were lost, how much was lost, or how Plaintiff has incurred or could incur any financial penalties after electing to refuse UWM's Amendment. Indeed, Plaintiff does not even set forth the applicable terms pertaining to mortgage broker compensation, or whether and how those terms differed for UWM, Rocket, and Fairway, making it impossible to draw any plausible inference that Plaintiff lost money on mortgages sent to Rocket and Fairway instead of UWM. Plaintiff's reliance on "[b]road, unsupported allegations of actual detrimental effects" is "inadequate to withstand a motion to dismiss." *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 884 (D. Minn. 2017); *see also Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084-85 (11th Cir. 2016) ("[A] plaintiff may not meet its burden of showing actual anticompetitive effects with mere conclusory assertions" but rather must "point to specific facts demonstrating harm to competition"); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1074; *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989).

2.   <u>Plaintiff Fails to State a Claim for "Steering" Under Section 1 of the Sherman Act (Count II).</u>

Count II of the Complaint, which alleges that Defendants have unlawfully restrained trade by "steering" Plaintiff's clients away from loan products offered by Rocket or Fairway, is duplicative of Count I and invokes an inapposite theory.

Although Plaintiff labels Count II as "anti-steering," it is not even a separate claim, but rather a description sometimes applied to contract provisions challenged as unreasonable restraints under Section 1. Count II merely parrots Count I and is premised on the same conduct involving UWM's Amendment. *See* Compl. ¶¶ 72-81. It thus fails for the same reasons. *See* § IV.C.1, *supra*. In particular, UWM cannot have "steered" Plaintiff away from Rocket and Fairway, because Plaintiff alleges it declined the Amendment and chose Rocket and Fairway over UWM. *See Am. Express Co.*, 138 S. Ct. at 2289-90 (finding "nothing inherently anticompetitive about Amex's antisteering provisions" because they "do not prevent Visa, MasterCard, or Discover from competing against Amex...").

### 3.   Plaintiff Fails to State a Claim for Attempted Monopolization Under Section 2 of the Sherman Act (Count III).

Count III of the Complaint fails to state a claim for attempted monopolization because Plaintiff cannot allege: (1) Defendants engaged in "anticompetitive conduct," (2) with the "specific intent to monopolize," and (3) "a dangerous probability of achieving monopoly power." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 733 F. Supp. 2d 1348, 1366 (N.D. Ga. 2010) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, (1993)). Plaintiff also fails to allege Defendants possess enough power or potential power in the relevant market to harm competition. *See Spanish Broad. Sys. of Fla.*, 376 F.3d at 1074.

#### a.   *Plaintiff Fails to Allege Anticompetitive Conduct or a Specific Intent to Monopolize.*

Plaintiff's Section 2 claim is duplicative of its Section 1 claim, alleging again

in conclusory fashion that Defendants committed "overt exclusionary acts" by purportedly imposing the Amendment and by making baseless misrepresentations. Compl. ¶ 84. Like Plaintiff's Section 1 claim, its Section 2 claim fails at the outset because, as articulated in § IV.C.1.b., *supra*, this conduct is not anticompetitive. Accordingly, Count III fails to plead anticompetitive conduct, which "is arguably the single most important aspect" of attempted monopolization. *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1075 (citing *Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981)).

Plaintiff cannot cure this fatal deficiency through its unsupported and conclusory allegation that "UWM will monopolize the wholesale mortgage market." Compl. ¶ 85. That naked assertion cannot overcome the absence of plausible factual allegations regarding: (1) the Amendment's impact on competition, (2) the Amendment's impact on market share (*i.e.*, whether the Amendment has impacted market share at all), or (3) how UWM—just one of over 70 mortgage lenders—can possibly gain a monopoly simply because it will not do business with brokers who also work with just two other mortgage lenders. Without such allegations, Plaintiff's claim is unsustainable. *See LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994, 2007 U.S. Dist. LEXIS 43739, *50 (C.D. Cal. June 4, 2007) (granting motion to dismiss in part because "[h]arm to one or more competitors is not sufficient … unless a plaintiff alleges harm to the competitive process.").

Similarly, beyond a boilerplate recitation of the elements of an attempted

26

monopolization claim, Plaintiff does not allege that Defendants had a specific intent to monopolize the wholesale lending market. Compl. ¶ 82. Indeed, Plaintiff concedes it and every other broker remain free to submit loans to 70+ other lenders regardless of whether they agree to the Amendment, and every broker who consents to the Amendment can terminate the obligation not to submit loans to Rocket and Fairway immediately upon notice. While one can plead intent through an attempt to "drive up prices" or "some other illegal goal," Plaintiff fails to plead any such facts. *Mr. Furniture Warehouse, Inc. v. Barclays Am./Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990). The fact that UWM made a contractual choice to dispute the market practices of Rocket and Fairway, which UWM views as specifically harmful to the wholesale market for the reasons expressed in its announcement of the Amendment, hardly gives rise to a plausible inference of any intent to monopolize the wholesale market. *See, e.g.*, Compl. ¶¶ 27-30.

      b.   *Plaintiff Fails to Allege a Dangerous Probability of Achieving Monopoly Power.*

Count III also lacks any factual allegations demonstrating a dangerous probability that Defendants will attain monopoly power. A "dangerous probability of success arises when the defendant comes close to achieving monopoly power in the relevant market." *Gulf States Reorg. Grp., Inc. v. Nucor Corp.*, 721 F.3d 1281, 1285 (11th Cir. 2013). Whether an entity has a dangerous probability of achieving monopoly power in a particular market can only be evaluated if one first properly defines the relevant market. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986,

994 (11th Cir. 1993) ("Defining the market is a necessary step in any analysis of market power"). As with Plaintiff's Section 1 claim, *see* § IV.C.1.b.i *supra,* Plaintiff improperly attempts to define the market as "the market for wholesale lending for mortgages sold through mortgage brokers," rather than the relevant market of residential mortgage lending.

But even accepting Plaintiff's improper and truncated definition of the relevant market *arguendo*, Plaintiff fails to allege Defendants have sufficient market power to pose a danger of monopolization. Plaintiff's allegation that UWM has a 34% market share falls well short of a "dangerous probability" as a matter of law. *See, e.g.*, *Gulf States Reorg. Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1237 (N.D. Ala. 2011) (where the "alleged monopolist's market share is 'less than 50% of the market...there was no dangerous probability of success...as a matter of law'") (citations omitted) *aff'd*, 721 F.3d 1281 (11th Cir. 2013). A "mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Paycargo, LLC v. CargoSprint, LLC*, No. 3:19-cv-85, 2019 U.S. Dist. LEXIS 195391, at *10-15 (N.D. Ga. 2019) (granting motion to dismiss Sherman Act § 2 claim because even though defendant had at least 50% market share, plaintiff must show that new rivals are barred from entering the market). Plaintiff alleges no facts demonstrating that UWM's conduct even establishes a dominant market share, much less excludes new rivals from entering the market. Thus, Count III necessarily fails.

      4.    <u>Plaintiff Fails to State a Claim for Violation of the Florida Antitrust Act (Counts IV–VI).</u>

Counts IV, V, and VI of the Complaint assert violations of the Florida Antitrust Act, mirroring Plaintiff's Sherman Act claims in Counts I, II, and III. In interpreting the Florida Antitrust Act, the body of federal case law interpreting the Sherman Act is determinative. *See All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.,* 135 F.3d 740, 745 n. 11 (11th Cir. 1998) ("Federal and Florida antitrust laws are analyzed under the same rules and case law."); *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.,* 457 So. 2d 1028, 1032 (Fla. Dist. Ct. App. 1984) ("The Florida legislature has, in effect, adopted as the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act."). Accordingly, for the reasons articulated above, *see* §§ IV.C.1-3, *supra*, Plaintiff also fails to state a claim under the Florida Antitrust Act, and Counts IV, V and VI should likewise be dismissed.

      5.    <u>Plaintiff Fails to State a Claim for Tortious Interference with Business Relationships (Count VII).</u>

Plaintiff's tortious interference claim fails for a very basic reason: because Plaintiff declined the Amendment in favor of its relationships with Rocket and Fairway, there is no plausible claim of "interference" in its relationships with Rocket and Fairway. To state a claim for tortious interference with a business

relationship under Florida law,[7] Plaintiff must plead "(1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015).

Count VII is glaringly deficient with respect to the third element. Plaintiff does not and cannot allege that UWM "interfered" with Plaintiff's putative business relationships with Rocket and Fairway, or procured a breach of Plaintiff's contract with either entity. To the contrary, Plaintiff admits it ***declined*** the Amendment and elected to continue working with Rocket and Fairway, not UWM. No "interference" is discernable.

Even if Plaintiff had a plausible theory of interference (it does not), it must further allege facts demonstrating Defendants had both "the intent to damage [Plaintiff's] business relationship and a lack of justification for doing so." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Yet the Complaint expressly incorporates the March 15, 2021 announcement of the Amendment, in which Mr. Ishbia enumerated UWM's numerous lawful justifications for its actions, including that Rocket and Fairway were "hurting the

---

[7] Defendants assume, without conceding, that Florida law governs Plaintiff's tortious interference claim. *See* Compl. ¶¶ 14, 16-17; *Fla. Steel Corp. v. Whiting Corp.*, 677 F. Supp. 1140, 1141 (M.D. Fla. 1988).

wholesale channel," "soliciting loan officers," "talking negatively about brokers," "going after real estate agents," "trying to cut the loan officers," and "solicit[ing] your past clients." Ex. B at 12:14-13:16. A company "may take steps to protect its business interests without liability for tortious interference" so long as the company "does not engage in improper conduct." *Romika-USA, Inc.,* 514 F. Supp. 2d at 1339.

In short, UWM presented brokers with a straightforward and justified business decision. Those who did not accept the Amendment and elected to continue working with Rocket and Fairway were precluded from working with UWM—not Rocket and Fairway. *See* Compl. ¶¶ 12-13. And those who did accept the Amendment did so voluntarily, making the decision to continue working with UWM and to discontinue submitting loans to Rocket and Fairway (or to pay the contracted fee)—with no minimum obligation, and with the option to change their election immediately upon written notice. *Id.*

Count VII also fails on the first and fourth elements of a tortious interference claim. With respect to the first element (an existing business relationship), Plaintiff's boilerplate allegation that "Plaintiff and Class Members had a business relationship with Fairway Mortgage and/or Rocket Pro TPO" (Compl. ¶ 126) is insufficient because it does not identify "a business relationship evidenced by an actual and identifiable understanding or agreement[.]" *Med. Sav. Ins. Co. v. HCA, Inc.*, No. 2:04-CV-156, 2005 WL 1528666, at *9 (M.D. Fla. June 24, 2005), aff'd, 186 F. App'x 919 (11th Cir. 2006). That ambiguity is likely intentional. If Plaintiff's

purported relationships with Rocket and Fairway were terminable at will, like UWM's Broker Agreement, that would be fatal to Plaintiff's claim, inasmuch as "an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will." *Greenberg, M.D. v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. 3d DCA 1993); *see also Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980).

As for the fourth element (resulting damages), Plaintiff's conclusory allegation that it "suffered, and will continue to suffer damages in the future" (Compl. ¶ 136), is not only insufficient to survive a motion to dismiss, but is belied by the remaining allegations of the Complaint. Because Plaintiff chose to maintain its allegedly preferable relationships with Rocket and Fairway, it lacks plausible damages from UWM's non-existent "interference" with those relationships. *See, e.g.*, Compl. ¶¶ 31, 61, 64. A plaintiff that has not incurred damages cannot state a claim for tortious interference with a business relationship. *See Pediatric Servs. of Am. Inc. v. Kendrick*, No. 3:18-cv-1372, 2020 WL 6336127, at *3 (N.D. Fla. Sept. 30, 2020); *Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2019 WL 3890253, at *3 (M.D. Fla. Aug. 19, 2019).

6.    <u>Plaintiff Fails to State a Claim for Violations of FDUTPA (Count VIII).[8]</u>

Plaintiff's claim for violation of FDUTPA, like its tortious interference claim, relies on a facially insufficient conclusion that "Plaintiff and Class Members have suffered, and will continue to suffer damages in the future." Compl. ¶ 146. That assertion is unsupported by any allegations of fact and, once again, is belied by the balance of Plaintiff's Complaint. Plaintiff has not suffered and cannot suffer damages under FDUTPA where it voluntarily refused to enter into the Amendment and instead elected to continue working with its preferred lenders, Rocket and Fairway. Count VIII thus fails to allege "actual damages," one of the essential elements of a FDUTPA claim. *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Where conclusory allegations fail to specify actual damages, dismissal is required. *See Alcon Labs, Inc. v. Allied Vision Grp., Inc.*, No. 18-CV-61638, 2019 WL 2245584, at *11 (S.D. Fla. Mar. 7, 2019), report and recommendation adopted sub nom. *Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-61638-CIV, 2019 WL 2245262 (S.D. Fla. Apr. 2, 2019) (dismissing where "Defendants' conclusory allegations in the FDUTPA counterclaim fail[ed] to specify actual damages"); *Mukamal v. Bakes*, No. 07-20793-CIV, 2008 WL 11391157, at *5 (S.D. Fla. May 20, 2008), aff'd, 378 F. App'x 890 (11th Cir. 2010)

---

[8] To the extent the Court finds Plaintiff's FDUTPA claim sounds in fraud by virtue of Plaintiff's allegation that Defendants made "false Misrepresentations to Plaintiff and Class Members" (*see* Compl. p. 28), Plaintiff's failure to comply with Rule 9(b) presents additional grounds for dismissal. *See Fid. Nat'l Fin., Inc. v. Attachmate Corp.*, No. 3:15-CV-01400, 2017 WL 3726687, at *3 (M.D. Fla. Mar. 1, 2017) ("claims arising under FDUTPA must satisfy the more rigorous pleading requirements of Rule 9(b) when the complaint sounds in fraud").

(dismissing FDUTPA claim with prejudice where Plaintiff "failed to adequately plead actual damages incurred [] as a result of the allegedly deceptive trade practice").

Plaintiff also fails to allege the other two elements of a claim under FDUTPA: a "deceptive act or unfair practice," and causation. *City First Mortg. Corp.*, 988 So. 2d at 86. As previously discussed, the Amendment presented Plaintiff with a transparent business decision—one that is short-term and readily terminable—which Plaintiff chose to decline, in favor of submitting loans to Rocket and Fairway. The Complaint contains no facts reflecting how this contractual choice was deceptive or unfair as to Plaintiff or caused Plaintiff damages in light of its election.

7.  Plaintiff Fails to State a Claim for Declaratory Relief (Count IX).

Lastly, Plaintiff's claim for declaratory relief is facially defective because it lacks plausible allegations of damages and is wholly duplicative of Plaintiff's other claims. To state a claim for declaratory judgment, Plaintiff must establish: (i) it has personally suffered some actual or threatened injury as a result of Defendants' conduct; (ii) Plaintiff's injury can be traced to Defendants' actions; and (iii) Plaintiff's injury is likely to be redressed by a favorable decision. *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1279 (M.D. Fla. 2017). Here, Plaintiff has not plausibly alleged that it suffered any actual or threatened injury or sustained any damages owing to its decision to reject the Amendment and to allow its Broker Agreement with UWM to be terminated in favor of continuing to

work with Rocket and/or Fairway.

Moreover, Plaintiff's declaratory relief claim should be dismissed as duplicative of its other claims. *See Del Prado Mall Pro. Condo. Ass'n, Inc. v. Voyager Indem. Ins. Co.*, No. 2:20-CV-838, 2021 WL 1578758, at *1 (M.D. Fla. Apr. 22, 2021) (dismissing declaratory relief claim as duplicative); *Auto Dealer Sols., Inc. v. S.-Owners Ins. Co.*, No. 8:17-CV-2525, 2018 WL 4600674, at *3 (M.D. Fla. Jan. 25, 2018) (dismissing declaratory judgment claim as "subsumed by the breach of contract claim"). Plaintiff seeks a declaration that the Amendment is "unlawful and unenforceable," "*per se* illegal under federal antitrust law," "unenforceable" against "those who did not acknowledge acceptance of it," and "a penalty and … therefore unenforceable by law." Compl. ¶¶ 67, 153. Because Plaintiff is not a party to the Amendment, these requested declarations are meaningless as to Plaintiff and would merely constitute an advisory opinion by the Court on allegations that duplicate Plaintiff's other, unsuccessful claims in Counts I through VIII of the Complaint. Count IX thus fails for the same reasons.

## V.   <u>**Conclusion**</u>

Wherefore, for the foregoing reasons, Defendants respectfully request that the Court grant this Motion; dismiss the Complaint against UWM in its entirety; dismiss the Complaint with prejudice as to Defendant Mat Ishbia; and grant Defendants any other relief it deems necessary including, without limitation, an award of attorneys' fees in accordance with the provisions of Section 542.22(1), Florida Statutes, and FDUTPA.

Dated: June 18, 2021

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone: 954-765-0500
Telefax: 954-765-1477

By:     /s/ *Glenn E. Goldstein*
          **Glenn E. Goldstein, Esquire**
          Florida Bar No. 435260
          Email: GoldsteinG@gtlaw.com
                    depasqualem@gtlaw.com
                    FLService@gtlaw.com

          **Avi Benayoun, Esquire**
          Florida Bar No. 0151696
          Email: benayouna@gtlaw.com
                    yeargina@gtlaw.com

and

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717
**Stephanie Peral, Esquire**
Florida Bar No. 119324
Email: perals@gtlaw.com
          collazoe@gtlaw.com

***Attorneys for Defendants UWM Holdings Corporation and Mat Ishbia***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Glenn E. Goldstein*
GLENN E. GOLDSTEIN
