# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

     Plaintiff,

                                         CASE NO.  3:21-CV-00448

v.

UNITED WHOLESALE MORTGAGE, LLC and
MATHEW ISHBIA, individually,

     Defendants.

_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, The Okavage Group, LLC, ("The Okavage Group" or "Plaintiff"), on behalf of itself and all others similarly situated, by and through its attorneys, files this first amended complaint against Defendants United Wholesale Mortgage LLC, a Michigan limited liability ("UWM") and Matthew Ishbia ("Ishbia"), and states as follows:

**INTRODUCTION**

1.     This is a class action brought by Plaintiff on behalf of all mortgage brokers ("the Class" or "Class Members") that currently are or have been clients of mortgage lenders UWM and either Fairway Independent Mortgage ("Fairway Mortgage") or Rocket Pro TPO (a division of Rocket Mortgage) and have been affected by Defendants' ultimatum (the "Ultimatum") requiring them to cease doing business with Fairway Mortgage and Rocket Pro TPO, or face termination of their business relationship with UWM and/or exorbitant and unconscionable monetary penalties in the minimum amount of $50,000 imposed by UWM.

2.      Plaintiff and Class Members are mortgage brokers who currently are and/or have been clients of UWM and Fairway Mortgage and/or Rocket Pro TPO.

3.      Within the market for residential mortgage lending in the United States, the relevant sub-market for this case is the market for wholesale lending for mortgages sold through mortgage brokers. UWM is a "Wholesale Mortgage Lender."  Wholesale mortgage lenders offer mortgage loans through independent third parties, such as mortgage brokers.  As such, wholesale mortgage lenders do not work directly with consumers/borrowers until after a loan has been funded, if at all.  Wholesale mortgage lenders generally fund and, in some instances, service loans, including collecting payments after funding.

4.      By comparison, a "Retail Mortgage Lender" deals directly with consumers/prospective borrowers from the beginning, including providing loan applications and collecting completed loan applications, performing income verification and collecting other required documentation, as well as quoting interest rates.

5.      For wholesale lending, third parties, such as mortgage brokers, provide loan applications to the consumer/prospective borrower, collect completed loan applications, perform income verification and collect other required documentation.  Additionally, mortgage brokers advise the customer of available interest rates and loan terms and select the wholesale mortgage lender to submit the loan application and other documentation in order to find the best mortgage loan product and pricing for their client, the consumer/prospective borrower. The center pillar of the mortgage broker business is independence – the ability of the broker to choose from a variety of wholesale lenders to select the mortgage product and experience that best matches the specific needs of the broker's client.

6.      As of March 31, 2020, mortgage lending originated through independent brokers

controlled 15.8% of residential mortgage loan originations in the U.S., while direct-to-buyer lending represented 57.5%. (*See* UWM Holdings Corporation Prospectus, Registration No. 333-252422, https://sec.report/Document/0001193125-21-032462/ ("UWMC Prospectus")), at Risk Factors, p. 14). UWM is the largest Wholesale Mortgage Lender, with approximately 34% market share of the wholesale market. *Id*. at Summary of the Prospectus, p. 1. UWM boasts that it has over 10,000 mortgage brokers under contract with it---all but 600 having acquiesced in the coercive horizontal group boycott described herein.

7.    Fairway Mortgage offers retail mortgage lending through its retail mortgage lending division, as well as wholesale mortgage lending through its Fairway Wholesale Lending division.

8.    Rocket Mortgage offers retail mortgage lending through its retail mortgage lending division. Rocket Mortgage also offers wholesale mortgage lending through its wholesale mortgage lending division, Rocket Pro TPO.

9.    As UWM competes exclusively in the wholesale mortgage lending market, UWM recognizes its growth in market share is dependent on growth in the market share controlled by the wholesale channel. (*See* UWMC Prospectus, Summary of the Prospectus, at p. 14). UWM also recognizes that active competition for mortgage brokers "who are not contractually obligated to sell [its] products and who may also sell or promote competitors' loan products" was a risk to its ability to maintain its market share. *Id*.

10.    Fairway Mortgage, Wholesale Lending Division, and Rocket Pro TPO are direct competitors of UWM in the wholesale/broker channel.

11.    On January 21, 2021, pursuant to a business combination agreement with Gore Holdings IV, Inc., (now known as UWM Holdings Corporation, "UWMC"), UWM's managing member, SFS Holding Corporation, contributed its 100% interest in UWM to UMW Holdings LLC, ("UWMH") and agreed that UWMC would be the sole managing member of UWMH. On January 22, 2021,  UWMC became a publicly traded company on the New York Stock Exchange

(NYSE symbol: UWMC).    Since that time and before implementation of the Ultimatum described herein, UWMC's share price had been declining, and UWM's competitors in the wholesale lending market, including Fairway Mortgage and Rocket Pro TPO, expanded their market share in wholesale mortgage lending, including through innovative product offerings, better pricing and lower rates quoted to mortgage brokers.    This, in turn led to lower rates for consumers/prospective borrowers.

12.    To mitigate its acknowledged risk of losing market share in the wholesale mortgage lending channel, and in a desperate attempt to force mortgage brokers to cease doing business with UWM's competitor, Fairway Mortgage and Rocket Pro TPO, on March 4, 2021, UWM orchestrated an anticompetitive scheme.    At a virtual event hosted by UWM, UWM's CEO, Matthew Ishbia publicly announced its Ultimatum via a video posted on UWM's Facebook page. (*See* https://www.facebook.com/97640871999/videos/ 845176203005957 beginning at 9 min; 10 sec mark). Many brokers in attendance at the event explicitly heeded Mr. Ishbia's clarion call to boycott UWM's closest competitors.    One broker respondent to Mr. Ishbia and his fellow brokers, saying:    "We are ALL IN"  "unstoppable together…" "We are all family! Brokers are better when we work together"; "Brokers are family.  We don't go against our family"; "All in…..with us or out"; "You're either with the captain [UWM or off the boat"; "with us or against us"; and "all for one and one for all."

13.    To implement the Ultimatum and coerce a boycott of Fairway Mortgage and Rocket Pro TPO, Defendants advised their broker clients who also did business with Fairway Mortgage and Rocket Pro TPO that they were required to consent to a contract addendum ("Addendum"). The Addendum sent to the mortgage brokers provided, in pertinent part:

> United Wholesale Mortgage, LLC ("UWM") is amending its broker,
> correspondent and financial institution agreements by adding a
> representation and warranty that its clients will not submit loans to either
> Rocket Mortgage or Fairway Independent Mortgage. Client acknowledges
> and agrees, that until client provides written notice terminating its

agreement with UWM, client and its employees will not submit mortgage loan applications or mortgage loans to either Rocket Mortgage or Fairway Independent Mortgage for review, underwriting, purchase and/or funding (unless such loan was locked with Rocket Mortgage or Fairway Independent Mortgage prior to March 15, 2021). If client or client's employees breach this representation and warranty, client agrees to pay liquidated damages to UWM of: (i) Five Thousand Dollars ($5,000.00) per loan closed with UWM, or (ii) Fifty Thousand Dollars ($50,000.00), whichever is greater.

The call to boycott was successful. UWM shortly thereafter announced that 93% of the brokers, who had been presented with the Addendum, agreed to join the boycott. UWM further facilitated the boycott by providing forums for mortgage brokers to join the boycott in plain sight, assisting each other with terminating their relationships with Rocket and Fairway. UWM joined in facilitating these terminations.

Defendants engaged in a contract, combination, or conspiracy in restraint of trade to jointly boycott Fairway Mortgage and Rocket Pro TPO to suppress competition in the relevant markets. The Addendum is a *per se* antitrust violation expressly inviting or engaging mortgage brokers to boycott Fairway Mortgage and Rocket Pro TPO and restrain competition. Defendants' illegal scheme is pernicious, or manifestly anticompetitive, because, regardless of whether any broker agreed to the Ultimatum, it limits the choice of lending options available to brokers, and ultimately the loan options available to consumers, in the relevant market.

14.     The Ultimatum is further unlawful, and its penalties are unenforceable inasmuch as the Ultimatum is:

A. Coercive, a contract of adhesion, because the Ultimatum required, as part of its implementation, acquiescence to a unilateral contract amendment imposed by UWM upon Plaintiff and the Class Members based on UWM's superior bargaining strength and the Class Members' inability to make a free and fair decision to adhere to, reject or modify it;

B. Procedurally unconscionable, because the Ultimatum is oppressive due to unequal

bargaining power and the exorbitant penalties for non-compliance; and

C.  Substantively unconscionable because the Ultimatum provides overly harsh, one-sided results to UWM, illegally restrains trade, violates anti-steering statutes and attempts to monopolize the wholesale mortgage lending market, all of which go against public policy.

**PARTIES, JURISDICTION AND VENUE**

15.    Plaintiff, The Okavage Group, LLC ("The Okavage Group"), is, and at all times relevant hereto has been, a Florida limited liability company organized under the laws of the State of Florida, with its principal place of business in St. Augustine, Florida.

16.    The Okavage Group, LLC's sole member is Daniel Okavage, who is a citizen of Florida, thereby making The Okavage Group, LLC a citizen of Florida.

17.    Defendant UWM, is a limited liability company organized July 16, 1986, under the laws of Michigan with its principal place of business in Pontiac Michigan.   During all times relevant hereto, UWM has conducted and continues to regularly conduct business in, and with mortgage brokers located in the State of Florida.

18.    Defendant, Ishbia, is a citizen of the State of Michigan.  During all times relevant hereto, Ishbia has conducted and continues to regularly conduct business in and with mortgage brokers located in the State of Florida.

19.    Defendant, Ishbia, knowingly and intentionally directed communications announcing the unlawful Ultimatum and false statements to mortgage brokers in order to justify and convince mortgage brokers to acquiesce to and not contest the Ultimatum, including Plaintiff and Class Members located in the State of Florida.

20.    Defendant, Ishbia's, communications announcing the unlawful Ultimatum and false statements were received by mortgage brokers, including Plaintiff and Class Members located in the State of Florida.

21.    Plaintiff brings this private right of action for treble damages under Section 15(a) of the Clayton Act, 15 U.S.C. § 15(a), for violation of the federal antitrust laws, sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. This Court has direct federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and pendent and supplemental jurisdiction over all related claims pursuant to 28 U.S.C. § 1337.

22.    Plaintiff also brings this action under the Florida Antitrust Act, Fla. Stat. § 542, *et seq.*, and Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, to obtain restitution, statutory damages and injunctive relief. This Court has supplemental jurisdiction over these pendent Florida state law claims under 28 U.S.C. §§ 1332(d) and 1367 because the claims arise from the same nucleus of operative facts as the federal antitrust law claims, and as such, are so related that they form the same case or controversy.

23.    The Court also has subject matter jurisdiction over Plaintiff's class claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5 million, Defendants and Plaintiff are citizens of different states, and there are at least 3,000 members of the putative class. Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

24.    This Court has general and specific personal jurisdiction over the Defendants because they engage in substantial and not isolated activity in this State within the meaning of Florida's long-arm statute, Florida Statutes § 48.193(2), and both defendants intentionally committed the illegal and tortious conduct alleged herein within the State of Florida making them subject to personal jurisdiction under Florida's long-arm statute, Florida Statutes § 48.193(1)(b) .

25.    Each of the Defendants named in this Amended Complaint either transacted business in the Middle District of Florida, Jacksonville Division, or has sufficient contacts with said district and division to confer jurisdiction thereupon or venue is otherwise proper as to each Defendant because the claim arose in such district or division.  The unlawful activities alleged herein were carried out, in part, within the Middle District of Florida, Jacksonville Division, and the interstate trade and commerce alleged herein was carried on, in part, within the Middle District of Florida, Jacksonville Division.

26.    Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

27.    All conditions precedent to this action have occurred, been performed, or have been waived.

## **FACTUAL BACKGROUND**

### *A. Common Allegations*

28.    UWM regularly accepts and processes mortgage loan applications submitted by Plaintiff and each of the Class Members. Additionally, UWM regularly funds mortgage loans based on such mortgage loan applications.

29.    On March 4, 2021, Defendants issued the Ultimatum, and Ishbia exclaimed "if you work with them (Fairway Mortgage and Rocket Pro TPO), you can't work with UWM, effective immediately."   Ishbia further made the astonishing admission that UWM is "not trying to be the best priced." (*See* https://www.facebook.com/97640871999/videos/845176203005957 at 5 min; 27 second mark and 11 min; 27 second mark.)

30.     Ishbia falsely accused Fairway Mortgage and Rocket Pro TPO of undermining mortgage brokers, and the wholesale mortgage market overall, and used such false statements as the justification for the Ultimatum and to convince mortgage brokers to acquiesce to and not contest the Ultimatum, and to boycott Fairway Mortgage and Rocket Pro TPO.

31.     Ishbia falsely accused Fairway Mortgage of acting unfairly toward mortgage brokers and converting them to loan officers under onerous restrictions.

32.     Ishbia falsely accused Rocket Mortgage of paying real estate agents to cut out competing brokers and instead refer clients to Rocket Mortgage. Additionally, Ishbia falsely accused Rocket Mortgage of soliciting mortgage brokers' past clients and dissuading them from working with those mortgage brokers.

33.     During the live event at which the Ultimatum was issued, mortgage brokers joined UWM, and each other, to join the boycott.  Among those comments reflecting an agreement to boycott were the following:   "Team Broker!"; Let's kill it fam---you know it's going to be good"; BROKERS---WAKE UP!!! Stop sending files to the enemy!  Protect your book of business"  "This is what we have been waiting for broker community": "We are ALL IN" "unstoppable together"; "We are all family!  Sign on the line that is dotted"; "All in "; "With us or out" "You're either with the captain [UWM[ or off the boat"; "with us or against us" and "all for one and one for all."

34.     Inasmuch as Fairway Mortgage and Rocket Pro TPO consistently offer better-suited and/or lower priced mortgage loans in connection with mortgage loan applications submitted by mortgage brokers as compared to UWM, Defendants' Ultimatum limits the ability of Plaintiff and Class Members to offer to their clients (consumers/prospective borrowers) the best-suited mortgage loan products to fit their clients' (consumers/prospective borrowers) needs, thereby restraining trade and limiting competition.

35.     Plaintiff and Class Members were advised that they had until 11:59 P.M. on March 15, 2021 to accept Defendants' Ultimatum or face termination of their business relationship with UWM.

36.     In a further effort to pressure and induce mortgage brokers to accept Defendants' Ultimatum, UWM's Account Executives, whose job involves communicating with mortgage brokers, contacted Plaintiff and other Class Members and falsely asserted that that mortgage broker was the only one who had not yet accepted Defendants' Ultimatum.

37.     After the Ultimatum deadline of March 15, 2021 passed, UWM, through its Account Executives, communicated false statements to mortgage brokers, including Plaintiff and/or Class Members, that Rocket Mortgage "was stealing rate locks from mortgage brokers and transferring them to realtors" and it "literally STOLE the lock and pricing from my broker so the Realtor's loan would work."

38.     UWM, through its Account Executives, communicated to mortgage brokers, including Plaintiff and Class Members that Rocket Mortgage "was lying to them," and "is not to be believed."

39.     UWM, through its Account Executives, communicated to mortgage brokers, including Plaintiff and Class Members, false statements that denigrated Rocket Mortgage corporate officers and even went so far as to denigrate Rocket Mortgage Chairman, Dan Gilbert's, health.

40.     The statements referenced in Paragraphs 30-39 will be referred to collectively hereinafter as "the Misrepresentations".

41.     After the unilaterally imposed deadline passed for accepting Defendants' Ultimatum, the Class Members who had not acknowledged acceptance of Defendants' Ultimatum received notice from UWM that their UWM Wholesale Lending Agreement was terminated or that the mortgage broker was suspended from doing business with UWM.

42.    Inasmuch as a large percentage of Class Members did not initially acknowledge
acceptance of Defendants' Ultimatum, UWM Account Executives continued to contact mortgage
brokers and made additional false and misleading statements in an effort to pressure and coerce
the mortgage brokers to accept the Ultimatum, and Ishbia continued to make additional false and
misleading statements publicly to put additional pressure on mortgage brokers.

### *B.*    Plaintiff's Experiences Resulting from the Ultimatum

43.    The experience of the named Plaintiff is representative of the uniform nature of
Defendants' unlawful business practices as to the Class.

44.    The Okavage Group is a mortgage brokerage company that advises and assists clients
(consumers/prospective borrowers) with applying for and obtaining residential mortgages. Like
Class Members, The Okavage Group has had a business relationship of submitting mortgage
loan applications on behalf of clients to UWM and Fairway Mortgage and/or Rocket Pro TPO
since approximately October 2018.

45.    The Okavage Group has brought a substantial number of clients to UWM, Fairway
Mortgage and/or Rocket Pro TPO.

46.    Subsequent to March 15, 2021, after The Okavage Group refused to accept
Defendants' Ultimatum, UWM arbitrarily terminated its Wholesale Lending Agreement with
the Okavage Group, refusing to accept mortgage applications by customers of The Okavage
Group.  Because of Defendants' Ultimatum, The Okavage Group has lost customers who were
interested in loans from UWM, but from who The Okavage Group could not offer since doing
so would mean losing customers seeking loan products from Rocket and Fairway.

47.    The Okavage Group has suffered direct financial injury, including lost sales and lost
commissions.

### C.    Anticompetitive Effects of Defendants' Conduct

48.    Defendant's group boycott is an illegal hub-and-spoke conspiracy that organizes mortgage brokers into a horizontal group boycott of Rocket and Fairway.

49.    As the hub, UWM hosted a live event, calling on mortgage brokers in attendance to boycott is competitors, and further facilitated that boycott by assisting brokers in terminating their relationships with Rocket and Fairway.    UWM coerced and enforced the boycott by asking the boycotting brokers to sign the Addendum that would penalize brokers who continued to do business with Rocket and Fairway.

50.    Mortgage brokers, as the spokes, joined the boycott in plain sight.    Their concerted actions formed the rim of a conspiracy.    The brokers' agreement to participate in the boycott immediately restructured the market by preventing mortgage brokers from conducting business in which they submitted loan applications to UWM, Rocket and Fairway on behalf of their clients.

51.    In so doing, UWM lessened competition with Rocket and Fairway on innovation, price and quality of product.    The choice imposed on mortgage brokers prevented mortgage brokers and prospective home buyers from achieving the lowest price and/or better suited loan products.

52.    At all relevant times, Matthew Ishbia actively and knowingly directed and participated in the illegal scheme to boycott UWM's competitors.

### CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action individually and as representative of all similarly situated mortgage brokers, pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of the below-defined Class:

All mortgage brokers who were subject to Defendants' Ultimatum requiring them to cease doing business with Fairway Mortgage and Rocket Pro TPO and imposing financial penalties for submitting any loan application to Fairway Mortgage or Rocket Pro TPO, or in the alternative, face termination of their business relationship with UWM.

54.    Excluded from the above-defined Class are Defendants and its officers, directors, and employees; any entity in which the Defendants have a controlling interest, Defendants' affiliates, legal representatives, attorneys, heirs or assigns; Defendants' immediate family members; any federal, state, or local government entity, any judge, justice, or judicial officer presiding over this matter, the members of their immediate families, their judicial staffs, persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, Plaintiff's counsel and Defendants' counsel, and the legal representatives, successors, and assigns of any such excluded person.

55.    Plaintiff reserves the right to modify or amend the definition of the proposed class and/or sub-classes before the Court determines whether certification is appropriate.

56.    Cases such as this, which involve one ultimatum made to a group, are particularly well-suited for class treatment because the Class Members face the same common questions of fact and law which include, but are not limited to:

a.    Whether Defendants' actions and Ultimatum are violative of federal and state antitrust acts, including the Sherman Act and The Florida Antitrust Act;

b.    Whether Defendants' actions and Ultimatum tortiously interfered with business relationships;

c.    Whether Defendants' actions and Ultimatum are violative of various consumer protection acts and/or deceptive and unfair trade practices acts;

d. Damages, including whether Defendants' violations allow Plaintiff and Class

Members to recover treble damages, punitive damages and attorneys' fees.

57.    Upon information and belief, Defendants have utilized the same, identical form

Addendum as the document Defendants demanded brokers, including Plaintiff and Class

Members, accept as part of the Ultimatum.

58.    Plaintiff's claims are typical of the claims of other Class Members.  The factual and legal

bases of Defendants' liability to Plaintiff and the other Class Members are the same inasmuch as

Defendants violated the Sherman Act, the Florida Antitrust Act, the Florida Deceptive and

Unfair Trade Practices Act and tortiously interfered with Plaintiff's and Class Members'

business relationships with known third parties as further described herein.

59.    Plaintiff will fairly and adequately protect the interests of the Class Members.

60.    Class action treatment is superior to the alternatives for the fair and efficient application

of the controversy alleged herein.  Such treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently

and without duplication of effort and expense that numerous individual actions would entail.

There are, on information and belief, thousands of Class Members such that joinder of all Class

Members is impracticable. The precise number of Class Members and their addresses are

presently unknown to Plaintiff, but may be reasonably ascertained from UWM's records and

files. Similarly, Class Members may be notified of the pendency of this action by recognized,

Court-approved notice dissemination methods, which may include U.S. mail, electronic mail,

internet postings, and/or published notice. As such, class action is the more efficient procedure

for determining liability and damages in a case such as this, where each Class Member

acquiesced or refused to acquiesce to the same Ultimatum and where damages can be determined

formulaically.

61.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of itself and the other Class Members. Similar or identical violations, business practices, and injuries are involved, and the contractual rights involve uniform, objective questions of fact and law, both for the prosecution and for the defense. The common questions of fact and law existing as to all Class Members predominate over questions affecting only individual Class Members. Such common questions of fact and law include, but are not limited to, the proper interpretation of the Ultimatum; whether Defendants can unilaterally enforce the provisions thereof; and whether Plaintiff is entitled to damages and other monetary relief and, if so, in what amount. Individual questions, if any, pale by comparison, both in quality and quantity, to the numerous common questions that predominate in this action. Thus, the elements of commonality and predominance are both met.

62.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

63.     Typicality exists inasmuch as class representatives who, in their role as mortgage brokers, have been forced to accept Defendants' Ultimatum to cease doing business with Fairway Mortgage and Rocket Pro TPO, or face financial penalties imposed by UWM or termination of their business relationship with UWM. Furthermore, Plaintiff's claims are typical of those of the members of the Class because, among other things, all Class Members have been comparably injured through Defendants' common course of unlawful conduct and seek the same kind of relief.

64.     To be sure, there are no defenses available to Defendants that are unique to the Plaintiff. The injury and causes of actions are common to the Class Members as all arise from the same existing contractual relationship and involve the same unlawful Ultimatum.

65.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff

can prove the elements of its claims on a class-wide basis using the same evidence as would be

used to prove those elements in individual actions alleging the same claims.

66.  Defendants have acted and failed to act on grounds generally applicable to Plaintiff and

other Class Members, thereby making relief appropriate with respect to the Class Members as a

whole.  Prosecution of separate actions by individual Class Members, should they even realize

that their rights have been violated, would likely create the risk of inconsistent or varying

adjudications with respect to individual Class Members.

67.  Plaintiff will adequately represent the Class. It has no interests that are in conflict with

those of the Class. In addition, it has retained counsel competent and experienced in complex, as

well as class action litigation, and it will prosecute this action vigorously. The interests of the

Class will be fairly and adequately protected by Plaintiff and its counsel.

68.  In the event unforeseen issues preclude class certification under Fed.R.Civ.P. 23(b)(3),

the case is still appropriate for class certification under Fed.R.Civ.P. 23(c)(4), as to the particular

issues of liability.

## COUNT I
## RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. § 1
## (SECTION 1 OF THE SHERMAN ACT - UNLAWFUL  RESTRAINT OF TRADE)

69.  Plaintiff repeats and realleges paragraphs 1 through 68 of this Complaint as though fully

set forth herein.

70.  The wholesale mortgage lending business and the business of mortgage brokers who

participate in that market are conducted in interstate commerce.  Both the lending extended by

the wholesale mortgage lenders and the applications and other business submitted by mortgage

brokers on behalf of their customer borrowers to such lenders move in interstate commerce

without regard to any state of origin.   According to Defendants, Defendants' Ultimatum was

issued to more than 10,000 independent mortgage brokers competing with each other in virtually all 50 states of the country. All but 600 acquiesced in Defendants' unlawful demands.

71.    Beginning in 2021, and continuing today and the foreseeable future, Defendants combined, conspired, contracted, threatened and coerced, and otherwise engaged in concerted action and course of conduct with its acquiescing mortgage brokers to effectively boycott and force its competitors, Fairway Mortgage and Rocket Pro, out of business, to suppress and eliminate competition in the wholesale lending market, and thereby restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. By coercing mortgage brokers to boycott the wholesale lending business of is competitors, and other acts and agreements which are currently unknown to Plaintiff but well known to the Defendants, Defendants created a classic "hub-and-spoke" horizontal conspiracy between itself and mortgage brokers who would otherwise compete with each other for new sources of wholesale lending, in order to force UWM's competitors out of the wholesale lending business and deprive mortgage customers of competing sources for mortgage loans. In furtherance of this unlawful conspiracy between UWM and its acquiescing mortgage brokers, Defendants committed overt acts, including but not limited to the following: (a) imposing the Ultimatum upon all mortgage brokers doing business with defendants; (b) making false and misleading representations to Plaintiff and other Class Members; (c) engaging in coercive and illegal conduct designed to force Plaintiff and other Class Members to acquiesce in and join Defendants' group boycott of its direct competitors, Fairway Mortgage and Rocket Pro TPO, or face exorbitant and unconscionable penalties imposed by UWM or termination of their business relationship with UWM, and other acts not currently known to Plaintiff but well-known to Defendants. These overt acts are described more specifically in paragraphs 29-42, 46 and 48-52 above.

72.    Defendants' acts have imposed on the market restrictions that otherwise would not have existed. UWM's Ultimatum immediately restructured the market by eliminating the ability of

Plaintiff and other members of the Class to offer their clients the full array of loan products that existed before the Ultimatum was issued. This prevents prospective home buyers from obtaining potentially better-suited and/or lower-priced mortgage loan products.

73.    At all times UWM has had market power to force and coerce Plaintiff and other Class Members to include UWM in their product offerings to clients (consumers/prospective borrowers) as UWM is, by its market share, the dominant wholesale lender in the U.S. for mortgages sold through mortgage brokers.

74.    Defendants' Ultimatum implemented a naked horizontal conspiracy and restraint of trade to jointly boycott Rocket and Fairway to suppress competition. Defendants' concerted action and agreements are *per se* unreasonable under antitrust law, regardless of Defendants' justification. Alternatively, Defendants' Ultimatum as implemented is so likely to have anticompetitive effects that an observer with even rudimentary understanding of economics could conclude harm to customers and the wholesale mortgage market, warranting this Court to condemn Defendants' anticompetitive conduct under a "quick-look" review. However, if this Court applies the rule-of-reason approach, Defendants' Ultimatum achieves no legitimate efficiency benefits to counterbalance their express and demonstrated anticompetitive effects, including the obstruction of competition from UWM's competitors, Fairway Mortgage and Rocket Pro TPO, who have had significant market share in the wholesale lending market.

75.    The foregoing unlawful contract, combination, conspiracy, concert of action and course of conduct, has had the effect of increasing the costs of mortgage loans with the wholesale lending market in interstate commerce, and has increased the cost of operations of Plaintiff and other Class Members, to an artificially high, non-competitive level, and has been designed to terminate Fairway Mortgage and Rocket Pro as a viable competitive entity in the wholesale lending market. By controlling the independent business decisions of wholesale mortgage brokers who would otherwise compete against each other, Defendants would strip mortgage

brokers of their autonomy, and make them functionally equivalent to mere agents of Defendants, exacting higher prices, increased margins, restrictions on lending applications and those with whom mortgage brokers may conduct business, and otherwise disable them from functioning independently and in their best interests.  Those acquiescing in the Ultimatum, are now confined to non-competitive mortgage loan products from UWM at non-competitive prices instead of making application for and obtaining better-suited and/or lower-priced mortgage loan products from Fairway Mortgage and Rocket Pro TPO on behalf of their clients (consumers/prospective borrowers).

76.    As a direct and proximate cause of Defendants' conspiracy, Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commissions.

77.    The ability of borrowers in the wholesale lending market to utilize better-suited and/or lower-costs non-UWM mortgage loan products has been restricted and/or obstructed by Defendants' anticompetitive acts. The ability of mortgage brokers in the wholesale lending market to effectively offer their clients (consumers/prospective borrowers) access to the best-suited and/or best priced mortgage loan products has been substantially reduced, limited and/or foreclosed.

78.    Defendants' Ultimatum has been designed to substantially reduce, limit and/or foreclose competing mortgage loan products in the wholesale lending market.

79.    As a direct and proximate result of Defendants' violation of Section 1 of the Act, Plaintiff and Class Members have been injured in their business and property in the millions of dollars prior to trebling.

80.    Plaintiff, and by definition the Class, are persons who are entitled to commissions lost and/or refunds of any financial penalties imposed by Defendants.

81.    As a direct and proximate result of Defendants' violation of Section 1 of the Act,
Plaintiff and Class Members have suffered, and will continue to suffer damages in the future,
including compensatory and consequential damages, plus interest, in an amount in excess of
$75,000.

82.    Plaintiff, and Class Members, are entitled to recover treble damages and attorneys'
fees pursuant to statute in an amount to be determined, as provided for by 15 U.S.C. §15(a).

## COUNT II
## RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. § 1
## (SECTION 1 OF THE SHERMAN ACT - UNLAWFUL STEERING)

83.    Plaintiff repeats and realleges paragraphs 1 through 82 of this Complaint as if fully
set forth herein.

84.    Defendants have combined, conspired and illegally agreed to engage in a
horizontal group boycott which is unreasonable per se  in violation of Section 1 of the
Sherman Act, 15 U.S.C. § 1, including forcing mortgage brokers in the wholesale lending
market to  steer their clients (consumers/prospective borrowers) away from what are often-
times better-suited and/or lower-priced mortgage loan products offered by Fairway Mortgage
and Rocket Pro TPO and/or forcing and coercing mortgage brokers in the wholesale lending
market to steer their clients to often-times ill-suited and/or higher-priced  mortgage loan
products offered by UWM. *(See attached Exhibit A)*

85.    At all times, UWM has had market power to force mortgage brokers to steer their
clients (consumers/prospective borrowers) away from what are often-times better-suited
and/or lower-priced mortgage loan products offered by Fairway Mortgage and Rocket Pro
TPO and/or forcing and coercing mortgage brokers in the wholesale lending market to steer
their clients to often-times ill-suited and/or higher-priced mortgage loan products offered by

UWM.

86. The continued use of the anti-steering provisions achieves no legitimate efficiency benefits to counterbalance their demonstrated anticompetitive effects, including the foreclosure of competition from UWM's competitors, Fairway Mortgage and Rocket Pro TPO, who have had significant market share in the wholesale lending market.

87.    The Plaintiff and Class Members have been forced to steer their clients (consumers/prospective borrowers) to often-times ill-suited and/or higher-priced mortgage loan products offered by UWM and/or prevented from steering to often-times better-suited and/or lower-priced mortgage loan products offered by Fairway Mortgage and Rocket Pro TPO.

88.    The ability of Plaintiff and Class Members to have their clients (consumers/prospective borrowers) access better-suited and/or lower-cost, non-UWM mortgage loan products has been restricted, obstructed and/or foreclosed.

89.    The ability of Plaintiff and Class Members to effectively offer their clients (consumers/prospective borrowers) access to the best-suited and/or best priced mortgage loan products has been substantially reduced, limited and/or foreclosed.

90.    As a direct and proximate result of Defendants' violation of Section 1 of the Act, Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commissions in choice, and have been injured in their business and property in the millions of dollars prior to trebling.

91.    As a direct and proximate result of Defendants' violation of Section 1 of the Act, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future, including compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

92.     Plaintiff, and Class Members, are entitled to recover treble damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by 15 U.S.C. §15(a).

### COUNT III
### RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. § 2
### (SECTION 2 OF THE SHERMAN ACT - ATTEMPTED MONOPOLY)

93.     Plaintiff repeats and realleges paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     In violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Defendants have willfully, knowingly and with specific intent, attempted to monopolize the wholesale mortgage market.

95.     This attempt to monopolize the wholesale mortgage market has been effectuated by overt exclusionary acts, including imposing Defendants' Ultimatum and making false and misleading Misrepresentations to Plaintiff and Class Members, designed to force and coerce the Plaintiff and Class Members to steer clients (consumers/prospective borrowers) away from often-times better-suited and/or lower-priced mortgage loan products offered by Fairway Mortgage and Rocket Pro TPO to often-times ill-suited and/or higher-priced mortgage loan products offered by UWM. *(See attached Exhibit A)*

96.     There exists a dangerous probability that UWM will monopolize the wholesale mortgage market as a result of Defendants' overt acts.   UWM's 34% market share is currently the largest share of the market.   Prior to the illegal conduct alleged herein, Rocket Pro had the second largest share of the market, and Fairway had the eighth largest share of the market.   Collectively, UWM's illegal conduct has been designed to eliminate over 50% of the competition in the wholesale lending market.

97.     Defendants' exclusionary practices achieve no legitimate efficiency benefits to counterbalance their demonstrated anticompetitive effects, including the restriction and

obstruction of competition from UWM's competitors, Fairway Mortgage and Rocket Pro TPO, who have had significant market share in the wholesale lending market.

98.      Plaintiff and Class Members have been forced and coerced to make application for and obtain non-competitive mortgage loan products from UWM at non-competitive prices instead of making application for and obtaining better-suited and/or lower-priced mortgage loan products from Fairway Mortgage and Rocket Pro TPO on behalf of their clients (consumers/prospective borrowers).

99.      Defendants' exclusionary conduct has restricted and obstructed competition with significant competitors of UWM in the wholesale mortgage market.

100. As a direct and proximate result of Defendants' violation of Section 2 of the Act, Plaintiff and Class Members in choice, lost customers and commissions and have been injured in their business and property in the millions of dollars prior to trebling.

101. As a direct and proximate result of Defendants' violation of Section 2 of the Act, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future, including compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

102.      Plaintiff, and Class Members, are entitled to recover treble damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by 15 U.S.C. §15(a).


**COUNT IV**
**RESTRAINT OF TRADE IN VIOLATION OF FLA. STAT. § 542.18**
**(FLORIDA ANTITRUST ACT - UNLAWFUL RESTRAINT OF TRADE)**


103.      Plaintiff repeats and realleges paragraphs 1 through 102 of this Complaint as if
   fully set forth herein.

104.     Defendants have knowingly combined, conspired and illegally contracted with their independent mortgage brokers within the State of Florida in a horizontal group boycott which is unreasonable per se in violation of the Florida Antitrust Act, Fla. Stat. § 542.18. By coercing mortgage brokers to boycott the wholesale lending business of its competitors and other acts and agreements which are currently unknown to Plaintiff but well known to the Defendants, Defendants created a classic "hub-and-spoke" horizontal conspiracy between themselves and mortgage brokers who would otherwise compete with each other for new sources of wholesale lending.in order to force UWM's competitors out of the wholesale lending business and deprive mortgage customers of competing sources of mortgage loans.  In furtherance of this combination, conspiracy and illegal contracts, Defendants committed overt acts, including but not limited to the following:  (a) imposing the Ultimatum upon all mortgage brokers doing business with Defendants designed to force them to acquiesce to and join Defendants' group boycott and cease doing business with Fairway Mortgage and Rocket Pro TPO, or face exorbitant and unconscionable financial penalties imposed by UWM, or face termination of their business relationship with UWM. *(See attached Exhibit A);* (b) making the false and misleading Misrepresentations to Plaintiff and other Class Members; (c) engaging in coercive and illegal conduct designed to force Plaintiff and other Class Members to acquiesce in and join Defendants' group boycott of their direct competitors, and other acts not currently known to Plaintiff but well known to Defendants. These overt acts are described more specifically in paragraphs 29-42, 46, and 48-52 above.

105.     Defendants' acts have eliminated the ability of the Plaintiff and other members of the Class doing business in Florida to offer better-suited and/or lower-priced mortgage loan products to their clients (consumers/prospective borrowers) compared to often-times ill-suited and/or higher-priced mortgage loan products offered by UWM.

106.     At all times UWM has had market power to force and coerce Plaintiff and other

Class Members to join its group boycott as UWM is, by its market share, the dominant

wholesale lender in the U.S. and Florida for mortgages sold through mortgage brokers,

and through its exclusionary and illegal conduct, it would eliminate Rocket Pro and

Fairway, constituting 50% of the relevant market.

107. Defendants' Ultimatum implemented a naked horizontal conspiracy and restraint of

trade that is *per se* illegal under antitrust law, regardless of Defendants' justification.

Alternatively, Defendants' Ultimatum as implemented is so likely to have anticompetitive

effects that an observer with even rudimentary understanding of economics could conclude

harm to customers and the wholesale mortgage market, warranting this Court to condemn

Defendants' anticompetitive conduct under a "quick-look" review. However, if this Court

applies the rule-of-reason approach, Defendants' Ultimatum achieves no legitimate

efficiency benefits to counterbalance their express and demonstrated anticompetitive effects,

including the obstruction of competition from UWM's competitors, Fairway Mortgage and

Rocket Pro TPO, who have had significant market share in the wholesale lending market.

108.     As a result of the Ultimatum, Plaintiff and Class Members have been

forced and coerced to make application for and obtain non-competitive mortgage loan

products from UWM at non-competitive prices instead of making application for and

obtaining better-suited and/or lower-priced mortgage loan products from Fairway Mortgage

and Rocket Pro TPO on behalf of their clients (consumers/prospective borrowers).

109.     The ability of Plaintiff and Class Members to utilize better-suited and/or lower-

cost non-UWM products has been and will be restricted and/or obstructed by Defendant's

anticompetitive acts.

110.     The ability of Plaintiff and Class Members to effectively offer their clients

(consumers/prospective borrowers) access to the best-suited and/or best-priced mortgage loan products has been and will be substantially reduced, limited and foreclosed.

111.    Defendants' Ultimatum has been designed to substantially reduce, limit and/or foreclose competing mortgage loan products in the wholesale lending market.

112.    As a direct and proximate result of UWM's violation of Fla. Stat. § 542.18, Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commission and have been injured in their business and property in the millions of dollars prior to trebling.

113.    Plaintiff, and by definition the Class, are persons who are entitled to commissions lost and/or or refunds of any financial penalties imposed by Defendants.

114.    As a direct and proximate result of Defendants' violation of Fla. Stat. § 542.18, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future, including compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

115.    Plaintiff, and Class Members, are entitled to recover treble damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by Fla. Stat. § 542.22.

**COUNT V**
**RESTRAINT OF TRADE IN VIOLATION OF FLA. STAT. § 542.18**
**(FLORIDA ANTITRUST ACT - UNLAWFUL STEERING)**

116.    Plaintiff repeats and realleges paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117.    Defendants have combined, conspired and illegally contracted with their acquiescing mortgage brokers to engage in a horizontal group boycott which is per se unreasonable in violation of the Florida Antitrust Act, Fla. Stat. § 542.18, including

forcing Plaintiff and the Class Members to  steer their clients (consumers/prospective

borrowers) away from what are often-times better-suited and/or lower-priced mortgage

loan products offered by Fairway Mortgage and Rocket Pro TPO and/or forcing and

coercing Plaintiff and the Class Members to steer their clients to often-times ill-suited

and/or higher-priced loan products offered by UWM.  ***(See attached Exhibit A)***

118.    At all times, UWM has had market power to force mortgage brokers to steer their

clients (consumers/prospective borrowers) away from what are often-times better-suited

and/or lower-priced mortgage loan products offered by Fairway Mortgage and Rocket

Pro TPO and/or forcing and coercing Plaintiff and the Class Members to steer their

clients to often-times ill-suited and/or higher-priced mortgage loan products offered by

UWM.

119.    The continued use of the anti-steering provisions achieves no legitimate efficiency

benefits to counterbalance their demonstrated anticompetitive effects, including the

obstruction of competition from UWM's competitors, Fairway Mortgage and Rocket Pro

TPO, who have had significant market share in the wholesale lending market.

120.    The Plaintiff and Class Members have been forced to steer their clients

(consumers/prospective borrowers) to often-times ill-suited and/or higher-priced mortgage

loan products offered by UWM and/or prevented from steering to often-times better-suited

and/or lower-priced mortgage loan products offered by Fairway Mortgage and Rocket Pro

TPO.

121.    The ability of Plaintiff and Class Members to have their clients

(consumers/prospective borrowers) access better-suited and/or lower-cost, non-UWM

mortgage loan products has been restricted and obstructed.

122.    The ability of Plaintiff and Class Members to effectively offer their clients

(consumers/prospective borrowers) access to the best-suited and/or best priced mortgage loan products has been substantially reduced, limited and/or foreclosed.

123.    As a direct and proximate result of Defendants' violation of Fla. Stat. § 542.18, Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commissions and have been injured in their business and property in the millions of dollars prior to trebling.

124.    As a direct and proximate result of Defendants' violation of Fla. Stat. Fla. Stat. § 542.18, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future, including compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

125.    Plaintiff, and Class Members, are entitled to recover treble damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by Fla. Stat. § 542.22.

**COUNT VI**
**RESTRAINT OF TRADE IN VIOLATION OF FLA. STAT. § 542.19**
**(FLORIDA ANTITRUST ACT - ATTEMPTED MONOPOLY)**

126.    Plaintiff repeats and realleges paragraphs 1 through 125 of this Complaint as if fully set forth herein.

127.    In violation of the Florida Antitrust Act, Fla. Stat. § 542.19, Defendants have willfully, knowingly and with specific intent, attempted to monopolize the wholesale mortgage market.

128.    This attempt to monopolize the wholesale mortgage market has been   effectuated by overt exclusionary acts, including imposing Defendants' Ultimatum and making false and misleading Misrepresentations to Plaintiff and Class Members, designed to force and coerce the Plaintiff and Class Members to steer clients (consumers/prospective borrowers) away from often-times better-suited and/or lower-priced mortgage loan products offered by

Fairway Mortgage and Rocket Pro TPO to often-times ill-suited and/or higher-priced mortgage loan products offered by UWM. *(See Exhibit A)*

129.    There exists a dangerous probability that UWM will monopolize the wholesale mortgage market in the State of Florida as a result of these overt acts given the fact that UWM is the dominant and largest wholesale mortgage lender in Florida, and its exclusionary, illegal combination, conspiracy and illegal contracts would foreclose more than 50% of the competition in this market.

130.    Defendants' exclusionary practices achieve no legitimate efficiency benefits to counterbalance their demonstrated anticompetitive effects, including the restriction and obstruction of competition from UWM's competitors, Fairway Mortgage and Rocket Pro TPO who have had significant market share in the wholesale lending market.

131.    Plaintiff and Class Members have been forced and coerced to make application for and obtain non-competitive mortgage loan products from UWM at non-competitive prices instead of making application for and obtaining better-suited and/or lower-priced mortgage loan products from Fairway Mortgage and Rocket Pro TPO on behalf of their clients (consumers/prospective borrowers).

132.    Defendants' exclusionary conduct has restricted and obstructed competition with significant competitors of UWM in the wholesale mortgage market.

133.    As a direct and proximate result of Defendants' violation of Fla. Stat. § 542.19, Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commissions and have been injured in their business and property in the millions of dollars prior to trebling.

134.    As a direct and proximate result of Defendants' violation of Fla. Stat. § 542.19, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future,

including compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

135.    Plaintiff, and Class Members, are entitled to recover treble damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by Fla. Stat. § 542.19.

## COUNT VII
## TORTIOUS INTERFERENCE WITH BUSINESS CONTRACTS AND PROSPECTIVE ECONOMIC ADVANTAGE

136.    Plaintiff repeats and realleges paragraphs 1 through 135 of this Complaint as if fully set forth herein.

137.    Plaintiff and Class Members had and were likely to maintain business contracts and/or prospective economic advantage with borrowers desiring mortgage loans from Fairway Mortgage and/or Rocket Pro TPO.

138.    Defendants knew of the business relationships and/or prospective economic advantage between mortgage brokers in the wholesale lending market and their clients.

139.    Defendants maliciously, intentionally and knowingly engaged in wrongful, unlawful, and/or fraudulent acts designed to interfere with Plaintiff's and Class Members' business relationships and expectancies with their clients by making false statements and representations, coercing mortgage brokers to engage in a boycott and exacting penalties and/or termination and enforcing a coercive contract of adhesion which, to the extent a broker did not agree, that broker would be subject to penalties and/or termination of their business relationship with UWM (meaning that any customers who wanted to work with UWM would not be able to do so) or, to the extent if a broker did agree, that broker was precluded from offering competing loan products offered by Fairway Mortgage and/or

31

Rocket Pro TPO (meaning that any customers who wanted to work with Fairway Mortgage or Rocket would not be able to do so). *(See attached Exhibit A)*

140.    Defendants intentionally and knowingly communicated false and misleading Misrepresentations to Plaintiff and Class Members to coerce mortgage brokers to engage in a boycott and exact penalties and/or termination and enforce a coercive contract of adhesion which, to the extent a broker did not agree, that broker would be subject to penalties and/or termination of their business relationship with UWM (meaning that any customers who wanted to work with UWM would not be able to do so) or, to the extent if a broker did agree, that broker was precluded from offering competing loan products offered by Fairway Mortgage and/or Rocket Pro TPO (meaning that any customers who wanted to work with Fairway Mortgage or Rocket would not be able to do so).

141.    Defendants intended that the Plaintiff and Class Members rely on the false and misleading Misrepresentations to coerce mortgage brokers to engage in a boycott and exact penalties and/or termination and enforce a coercive contract of adhesion which, to the extent a broker did not agree, that broker would be subject to penalties and/or termination of their business relationship with UWM (meaning that any customers who wanted to work with UWM would not be able to do so) or, to the extent if a broker did agree, that broker was precluded from offering competing loan products offered by Fairway Mortgage and/or Rocket Pro TPO (meaning that any customers who wanted to work with Fairway Mortgage or Rocket would not be able to do so).

142.    Plaintiff and Class Members justifiably relied on the false and misleading Misrepresentations, to their detriment.

143.    Defendants' false and misleading Misrepresentations were knowingly and maliciously used to induce Plaintiff and Class Members into acquiescing in Defendants' illegal group boycott which Defendants knew or should have known would interfere with the

business contracts and future business relationships between Plaintiff and the Class Members
and their customers.

144.    Defendants' wrongful, unlawful and/or fraudulent acts are/were designed to
interfere with Plaintiff's and Class Members' business relationships and expectancies with
their respective borrowers and in fact do/did interfere with such business relationships and
expectancies.

145.    As a direct and proximate result of Defendants' actions, Plaintiff and Class
Members and financially damaged by the reduction in choice, lost customers and
commissions and have been injured in their business and property with millions of dollars in
losses.

146.    As a direct and proximate result of Defendants' actions, Plaintiff and Class
Members have suffered, and will continue to suffer damages in the future, including
compensatory and consequential damages, plus interest, in an amount in excess of $75,000.

147.    Plaintiff, and Class Members, are entitled to recover damages as a result of
Defendants' actions.

148.    Defendants' actions were willful, knowing and intentional, entitling Plaintiff and
Class Members to punitive damages.

**COUNT VIII**
**VIOLATION OF FLA. STAT § 501.201**
**(FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

149.    Plaintiff repeats and realleges paragraphs 1 through 148 of this Complaint as if
fully set forth herein.

150.    Plaintiff and Class Members are "consumers" as defined under Florida's
Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203(7) which term is broadly
defined to include business entities: "Consumer means an individual; … *business*; firm;

association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary;

*corporation*; *any commercial entity, however denominated; or any other group or*

*combination*." (emphasis added).

151.    Fla. Stat. § 501.202 provides as follows:

> **501.202   Purposes; rules of construction.**—The provisions of this part shall be construed
> liberally to promote the following policies:
> (1)   To simplify, clarify, and modernize the law governing consumer protection, unfair methods
> of competition, and unconscionable, deceptive, and unfair trade practices.
> (2)   To protect the consuming public and legitimate business enterprises from those who engage
> in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the
> conduct of any trade or commerce.
> (3)   To make state consumer protection and enforcement consistent with established policies of
> federal law relating to consumer protection.

152.    Fla. Stat. § 501.204 provides as follows:

> **501.204   Unlawful acts and practices.**—
> (1)   Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts
> or practices in the conduct of any trade or commerce are hereby declared unlawful.
> (2)   It is the intent of the Legislature that, in construing subsection (1due consideration and great
> weight shall be given to the interpretations of the Federal Trade Commission and the federal
> courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July
> 1, 2017.

153.    Fla Stat. § 501.211 provides in part as follows:

> **501.211   Other individual remedies.**—
> (1)   Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved
> by a violation of this part may bring an action to obtain a declaratory judgment that an act or
> practice violates this part and to enjoin a person who has violated, is violating, or is otherwise
> likely to violate this part.
> (2)   In any action brought by a person who has suffered a loss as a result of a violation of this
> part, such person may recover actual damages, plus attorney's fees and court costs as provided in
> s. 501.2105.

154.    Defendants have engaged in unlawful and unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct with any

trade or commerce within the scope of Fla. Stat. § 501.204(1) by among other things:

> (A)    Imposing the Ultimatum upon Plaintiff and Class Members
> unlawfully restraining trade in violation of the Sherman Antitrust Act,
> unlawfully pressuring and forcing Plaintiff and Class Members to
> steer their clients to UWM in violation of the Sherman Antitrust Act,
> unlawfully attempting to create an illegal monopoly in the wholesale
> mortgage market in violation of the Sherman Antitrust Act,

unlawfully restraining trade in violation of the Florida Antitrust Act, unlawfully pressuring and forcing Plaintiff and Class Members to steer their clients to UWM in violation of the Florida Antitrust Act, and unlawfully attempting to create an illegal monopoly in the wholesale mortgage market in violation of the Florida Antitrust Act; and

(B)    Intentionally, maliciously and knowingly making the false Misrepresentations to Plaintiff and Class Members, as more specifically alleged in paragraphs 30-42, 46 and 48-52 above.

155.    To remedy these violations, it is requested that this Court award damages for the injuries and losses sustained by Plaintiff and Class Members as a result of Defendants' unlawful, deceptive and unfair trade practices and reasonable attorneys' fees pursuant to Florida's Deceptive and Unfair Trade Practices Act.

156.    As a direct and proximate result of Defendants' violation of Fla. Stat. § 501.204(1), Plaintiff and Class Members have been injured and financially damaged by the reduction in choice, lost customers and commissions and have been injured in their business and property in the millions of dollars, as alleged more specifically in paragraphs 43-47, 72, 75-76, 87-91, 98-101, 108-114, 120-124, 131-134, and 145-47 above.

157.    As a direct and proximate result of Defendants' actions, Plaintiff and Class Members have suffered, and will continue to suffer damages in the future, including compensatory damages, plus interest, in an amount in excess of $75,000.

158.    Plaintiff, and Class Members, are entitled to recover damages and attorneys' fees pursuant to statute in an amount to be determined, as provided for by Fla. Stat. § 501.211(2).

## <u>COUNT IX</u>
## <u>(DECLARATORY RELIEF, 28 U.S.C. §§ 2201-2202)</u>

Plaintiff, and Class Members, seek declaratory relief against Defendants and allege:

159.    Plaintiff repeats and realleges paragraphs 1 through 158 this Complaint as

if fully set forth herein.

160.     An actual controversy now exists between Plaintiff and UWM regarding the validity and enforceability of Defendants' Ultimatum, its implementing Addendum, and rights and liabilities related thereto.

161.     Defendants have, or have threatened to, terminate or suspend the business relationships with Plaintiff and Class Members who refuse to accept Defendants' Ultimatum and/or impose exorbitant and unconscionable financial penalties for Plaintiff and Class Members who accept the Ultimatum but subsequently submit a client's (consumer/prospective borrower) mortgage loan application to Fairway Mortgage or Rocket Pro TPO.

162.     The exorbitant and unconscionable financial penalties called for in connection with Defendants' Ultimatum have been labelled by Defendants as "Liquidated Damages" and have been described by Defendants as a "penalty" for failing to acquiesce to the Ultimatum and comply with the boycott against Fairway Mortgage and Rocket Pro TPO.

163.      The Liquidated Damages provided for in the Addendum are clearly designed as a penalty that bears no relationship to actual damages that may be incurred by UWM even if the Addendum itself was enforceable (which it is not).  The Liquidated Damages were arbitrarily and solely determined by Defendants and are admittedly penalties. *(See attached Exhibit A)*

164.     Plaintiff requests: 1) a declaration that the Ultimatum and implementing Addendum are *per se* illegal under federal antitrust law; 2) a declaration that the Addendum is unlawful and unenforceable; 3) a declaration that the rights and obligations under the Addendum for those who did not acknowledge acceptance of it as unenforceable; and 4) a declaration that the Liquidated Damages provision in the Addendum is a penalty and is therefore unenforceable by law.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff and the Class Members pray for relief and judgment as follows:

A.  For an order certifying the Class, appointing Plaintiff as representative for the Class, and appointing Plaintiff's counsel as Class counsel;

B.  That Defendants bear the cost of any notice sent to the Class;

C.  For an order awarding Plaintiff and the Members of the Class actual damages;

D.  For an order awarding Plaintiff and the Members of the Class treble damages;

E.  For an order awarding Plaintiff and the Members of the Class punitive damages;

F.  For an order awarding Plaintiff and the Members of the Class pre- and post-judgment interest and attorney fees;

G.  For an order declaring the Addendum to be unlawful and unenforceable;

H.  For an order declaring that the rights and obligations under the Addendum for Plaintiff and Class Members who did not acknowledge acceptance of the Addendum to be unenforceable;

I.  For an order declaring that the Liquidated Damages provision in the Addendum is a penalty and is therefore unenforceable by law;

J.  For an order awarding attorneys' fees and costs of suit, including experts' witness fees as permitted by law; and

K.  Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury.

Respectfully Submitted,
**PARRISH & GOODMAN, PLLC**
*/s/ Robert H. Goodman* _____

ROBERT H. GOODMAN
Florida Bar No.: 1008059
13031 McGregor Blvd., Suite 8
Fort Myers, Florida 33919
Phone: (813) 643-4529
Facsimile: (813) 315-6535
Primary: rgoodman@parrishgoodman.com
Secondary: admin@parrishgoodman.com
AND
JOSEPH E. PARRISH
Florida Bar. No: 690058
Primary: jparrish@parrishgoodman.com
Secondary: admin@parrishgoodman.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of August, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: August 2nd , 2021

/s/ Robert H. Goodman
*Attorney for Plaintiff*