# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## Case No. 3:21-cv-00448-BJD-JRK

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

       *Plaintiff,*

        v.

UNITED WHOLESALE MORTGAGE, LLC
and MATHEW ISHBIA, individually,

       *Defendants.*

_____/

## DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(B)(1), 12(B)(2), AND 12(B)(6), AND MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

**Page(s)**

I.    Introduction ........................................................................................... 1

II.   Summary of Factual Allegations ......................................................... 4

      A.    Plaintiff Is a Mortgage Broker in a Vertical Relationship with
            Mortgage Lenders Like UWM, Rocket, and Fairway....................... 4
      B.    UWM Announced the Amendment to Combat Practices It
            Believes Are Harmful to the Wholesale Mortgage Lending
            Channel. ......................................................................................... 5
      C.    Plaintiff and Other Brokers Remain Free to Choose Their
            Lenders. .......................................................................................... 7

III.  Standard of Review ............................................................................... 8

      A.    Rule 12(b)(1) ................................................................................... 8
      B.    Rule 12(b)(2) ................................................................................... 8
      C.    Rule 12(b)(6) ................................................................................... 9

IV.   Argument................................................................................................ 9

      A.    Plaintiff Lacks Article III and Antitrust Standing on All Claims. ......... 9

            1.    Plaintiff Lacks Article III Standing Because It Fails to
                  Allege an Injury in Fact and a Causal Connection to
                  Defendants' Actions.................................................................. 9

                  a.    Plaintiff Fails to Allege an Injury in Fact...................... 10
                  b.    Plaintiff Fails to Allege a Causal Connection ............... 12

            2.    Plaintiff Lacks Antitrust Standing Because It Fails to
                  Allege Antitrust Injury or That It Is an "Efficient
                  Enforcer." ............................................................................ 15

      B.    This Court Lacks Personal Jurisdiction Over Mr. Ishbia.................... 17
      C.    Each Count of Plaintiff's Complaint Fails to State a Claim................ 18

            1.    Plaintiff Fails to Allege a Horizontal Boycott or Hub-and-
                  Spoke Conspiracy (Counts I-II, IV-V). .................................... 18

                  a.    Plaintiff Does Not Allege a Horizontal Boycott............. 19

b. Plaintiff Does Not Allege a Hub-and-Spoke Conspiracy ................................................... 20

2. Plaintiff Fails to State a Claim for Unlawful Restraint of Trade Under Section 1 of the Sherman Act (Count I). ............. 23

a. The Amendment is Facially Lawful and Does Not Restrain Trade. ............................................. 23

b. Plaintiff Fails to Adequately Allege Anticompetitive Effects. ......................................................... 25

i. Plaintiff Fails to Allege the Potential For Genuine Adverse Effects on Competition............ 25

ii. Plaintiff Fails to Allege Actual Detrimental Effects. ............................................... 28

3. Plaintiff Fails to State a Claim for "Steering" Under Section 1 of the Sherman Act (Count II). ................................ 29

4. Plaintiff Fails to State a Claim for Attempted Monopolization Under Section 2 of the Sherman Act (Count III). ........................................................... 30

a. Plaintiff Fails to Allege Anticompetitive Conduct or a Specific Intent to Monopolize. ................................... 30

b. Plaintiff Fails to Allege a Dangerous Probability of Achieving Monopoly Power. ........................................ 32

5. Plaintiff Fails to State a Claim for Violation of the Florida Antitrust Act (Counts IV–VI). ................................. 33

6. Plaintiff Fails to State a Claim for Tortious Interference with Business Contracts and Prospective Economic Advantage (Count VII). ......................................... 34

7. Plaintiff Fails to State a Claim for Violations of FDUTPA (Count VIII). ...................................................... 37

8. Plaintiff Fails to State a Claim for Declaratory Relief (Count IX)............................................................ 39

V. Conclusion ........................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*,
No. 6:14-cv-310, 2015 U.S. Dist. LEXIS 184070 (M.D. Fla. 2015) .................. 23

*Alcon Labs., Inc. v. Allied Vision Grp., Inc.*,
No. 18-61638-CIV, 2019 WL 2245262 (S.D. Fla. Apr. 2, 2019) ....................... 38

*Alcon Labs, Inc. v. Allied Vision Grp., Inc.*,
No. 18-CV-61638, 2019 WL 2245584 (S.D. Fla. Mar. 7, 2019)........................ 38

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
135 F.3d 740 (11th Cir. 1998)....................................................................... 19, 33

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l
Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997)........................................................................... 25

*Appleton v. Intergraph Corp.*,
627 F. Supp. 2d 1342 (M.D. Ga. 2008)............................................................ 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 9, 35

*Atlantic Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ......................................................................................... 16

*Auto Dealer Sols., Inc. v. S.-Owners Ins. Co.*,
No. 8:17-CV-2525, 2018 WL 4600674 (M.D. Fla. Jan. 25, 2018)..................... 39

*Bailey v. Allgas, Inc.*,
284 F.3d 1237 (11th Cir. 2002)........................................................... 20, 25, 33

*BBX Capital v. Fed. Deposit Ins. Corp.*,
956 F.3d 1304 (11th Cir. 2020)....................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 9, 21

*Bolinger v. First Multiple Listing Serv., Inc.*,
838 F. Supp. 2d 1340 (N.D. Ga. 2012) ........................................................... 21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ......................................................................................... 16

*City First Mortg. Corp. v. Barton*,
988 So. 2d 82 (Fla. 4th DCA 2008) ................................................................. 38

iii

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...................................................................... 15

*Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*,
    710 F.2d 752 (11th Cir. 1983) ....................................................... 21

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ..................................................... 15

*Daleo v. McCray*,
    No. 8:11-CV-2521, 2012 WL 6733091 (M.D. Fla. Dec. 28, 2012) ...................... 9

*Del Prado Mall Pro. Condo. Ass'n, Inc. v. Voyager Indem. Ins. Co.*,
    No. 2:20-CV-838, 2021 WL 1578758 (M.D. Fla. Apr. 22, 2021) ...................... 39

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    733 F. Supp. 2d 1348 (N.D. Ga. 2010) ........................................... 30

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ........................................................ 22

*In re Disposable Contact Lens Antitrust Litig.*,
    215 F. Supp. 3d 1272 (M.D. Fla. 2016) .......................................... 22

*Divcic v. Am. Mortg. Consultants, Inc.*,
    No. 8:09-CV-2233, 2010 WL 11629138 (M.D. Fla. Feb. 22, 2010) .................. 18

*Doe v. Pryor*,
    344 F.3d 1282 (11th Cir. 2003) .................................................... 13

*Doe v. Thompson*,
    620 So. 2d 1004 (Fla. 1993) ......................................................... 18

*EnviroPak Corp. v Zenfinity Capital, LLC*,
    No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770 (E.D. Mo. Jan.
    23, 2015) ......................................................................... 28

*Ethan Allen, Inc. v. Georgetown Manor*,
    647 So. 2d 812 (Fla. 1995) ......................................................... 35

*F.T.C. v. Ind. Fed'n of Dentists*,
    476 U.S. 447 (1986) .................................................................. 19

*Fid. Nat'l Fin., Inc. v. Attachmate Corp.*,
    No. 3:15-CV-01400, 2017 WL 3726687 (M.D. Fla. Mar. 1, 2017) .................. 37

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007) ................................................5, 6

*Fla. Steel Corp. v. Whiting Corp.*,
    677 F. Supp. 1140 (M.D. Fla. 1988) ............................................. 35

*Foster Logging, Inc. v. United States,*
    973 F.3d 1152 (11th Cir. 2020)......................................................... 8

*Fru Veg Mktg., Inc. v. Vegfruitworld Corp.,*
    896 F. Supp. 2d 1175 (S.D. Fla. 2012) ........................................... 8

*Greenberg, M.D. v. Mount Sinai Med. Ctr. of Greater Miami, Inc.,*
    629 So. 2d 252 (Fla. 3d DCA 1993) ............................................... 37

*Griffin Indus., Inc. v. Irvin,*
    496 F. 3d 1189 (11th Cir. 2007) ....................................................... 9

*Gulf States Reorg. Grp., Inc. v. Nucor Corp.,*
    721 F.3d 1281 (11th Cir. 2013)....................................................... 32

*Gulf States Reorg. Grp., Inc. v. Nucor Corp.,*
    822 F. Supp. 2d 1201 (N.D. Ala. 2011) *aff'd*, 721 F.3d 1281 (11th
    Cir. 2013)......................................................................................... 33

*Hanicomp, Inc. v. U.S. Golf Ass'n,*
    2000 WL 426245 (3d Cir. 2000) ................................................... 26

*Houston v. Marod Supermarkets, Inc.,*
    733 F.3d 1323 (11th Cir. 2013)....................................................... 8

*Howard v. Murray,*
    184 So. 3d 1155 (Fla. 1st DCA 2015) ........................................... 35

*I Tan Tsao v. Captiva MVP Rest. Partners, LLC,*
    986 F.3d 1332 (11th Cir. 2021)..................................................... 12

*In re Insurance Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010)........................................................... 22

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    626 F.3d 1327 (11th Cir. 2010)............................................... 26, 27

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    No. 4:07-CV-02, 2007 U.S. Dist. LEXIS 91241 (N.D. Ga. Dec. 11,
    2007)................................................................................................. 27

*Jones v. Salvation Army,*
    No. 3:18-CV-804, 2019 WL 6051437 (M.D. Fla. Nov. 15, 2019) ..................... 12

*Klayman v. Jud. Watch, Inc.,*
    No. 07-22413-CIV, 2008 WL 11333054 (S.D. Fla. Feb. 22, 2008)..................... 18

*Kotteakos v. United States,*
    328 U.S. 750 (1946) ....................................................................... 22

*Kovalovsky v. Def. Fin. Acct. Serv.,*
    No. 6:13-CV-1058, 2013 WL 4747091 (M.D. Fla. Sept. 4, 2013) ..................... 15

*L&C Babb Mgmt. v. Am. Home Mortg.*,
    No. 6:15-CV-1209, 2016 WL 2784378 (M.D. Fla. May 13, 2016) .................... 12

*L.A.P.D., Inc. v. General Electric Corp.*,
    132 F.3d 402 (11th Cir. 1997) ......................................................................... 20

*Lamb v. Charlotte Cty.*,
    429 F. Supp. 2d 1302 (M.D. Fla. 2006) .................................................... 10, 12

*Lane v. Capital Acquisitions & Mgmt. Co.*,
    No. 04-60602-CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ..................... 18

*Lane v. XYZ Venture Partners, L.L.C.*,
    322 F. App'x 675 (11th Cir. 2009) ................................................................... 17

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
    884 F.2d 504 (9th Cir. 1989) ........................................................................... 29

*Levine v. Cent. Fla. Med. Affiliates*,
    72 F.3d 1538 (11th Cir. 1996) ......................................................................... 25

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................ 15

*LiveUniverse, Inc. v. MySpace, Inc.*,
    No. CV 06-6994, 2007 U.S. Dist. LEXIS 43739 (C.D. Cal. June 4,
    2007) ................................................................................................................ 31

*Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*,
    No. 14-62216-CIV, 2015 WL 1526177 (S.D. Fla. Apr. 3, 2015) ....................... 37

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 10, 13

*Maxon Hyundai Mazda v. Carfax, Inc.*,
    2016 U.S. Dist. LEXIS 171418 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 726
    Fed. Appx. 66 (2d Cir. 2018) ........................................................................... 26

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*,
    501 F.3d 1244 (11th Cir. 2007) ......................................................................... 8

*McWane, Inc. v. Fed. Trade Comm'n*,
    783 F.3d 814 (11th Cir. 2015) ......................................................................... 27

*Med. Sav. Ins. Co. v. HCA, Inc.*,
    No. 2:04-CV-156, 2005 WL 1528666 (M.D. Fla. June 24, 2005),
    *aff'd*, 186 F. App'x 919 (11th Cir. 2006) ........................................................ 36

*Med. Savs. Ins. Co. v. HCA Inc.*,
    No. 2:04-cv-156, 2005 U.S. Dist. LEXIS 20206 (M.D. Fla. June 24,
    2005) ................................................................................................................ 17

vi

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ............................................................... 23

*Morris v. SSE, Inc.*,
  843 F.2d 489 (11th Cir. 1988)................................................. 8

*Mr. Furniture Warehouse, Inc. v. Barclays Am./Commercial Inc.*,
  919 F.2d 1517 (11th Cir. 1990)............................................... 32

*Mukamal v. Bakes*,
  No. 07-20793-CIV, 2008 WL 11391157 (S.D. Fla. May 20, 2008),
  aff'd, 378 F. App'x 890 (11th Cir. 2010) .............................. 38

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020)................................................. 12

*Nephron Pharms. Corp. v. Hulsey*,
  No. 6:18-cv-1573, 2019 WL 3890253 (M.D. Fla. Aug. 19, 2019) ...... 36

*Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*,
  651 F.2d 76 (2d Cir. 1981) ..................................................... 31

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*,
  472 U.S. 284 (1985) ........................................................... 19, 21

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998)............................................................... 21

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018)...................................................... 24, 30

*Paddock Pubs., Inc. v. Chicago Tribune Co.*,
  103 F.3d 42 (7th Cir. 1996) ................................................... 28

*Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*,
  604 F.3d 1291 (11th Cir. 2010)............................................... 16

*Paycargo, LLC v. CargoSprint, LLC*,
  No. 3:19-cv-85, 2019 U.S. Dist. LEXIS 195391 (N.D. Ga. 2019)...... 33

*Pediatric Servs. of Am. Inc. v. Kendrick*,
  No. 3:18-cv-1372, 2020 WL 6336127 (N.D. Fla. Sept. 30, 2020)...... 36

*Pinson v. JPMorgan Chase Bank*,
  942 F.3d 1200 (11th Cir. 2019)............................................... 10

*PNY Techs., Inc. v. Sandisk Corp.*,
  No. 11-CV-04689, 2014 U.S. Dist. LEXIS 58108 (N.D. Cal. Apr. 25, 2014)..................................................................... 25

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
  No. 8:12-cv-02102, 2013 WL 3936394 (C.D. Cal. July 30, 2013)...... 24

*Procaps S.A. v. Patheon, Inc.*,
  845 F.3d 1072 (11th Cir. 2016)..............................................................29

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
  917 F.3d 1249 (11th Cir. 2019)........................................................20, 21

*Randall v. Scott*,
  610 F.3d 701 (11th Cir. 2010)................................................................9

*Retina Assocs., P.A. v. S. Baptist Hosp. of Fla., Inc.*,
  105 F.3d 1376 (11th Cir. 1997)........................................................19, 20

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*,
  514 F. Supp. 2d 1334 (S.D. Fla. 2007)................................................36, 37

*Rxstrategies, Inc. v. CVS Pharmacy, Inc.*,
  390 F. Supp. 3d 1341 (M.D. Fla. 2019) ....................................................20

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6 (1st Cir. 1999)....................................................................17

*Sherr v. HealthEast Care Sys.*,
  262 F. Supp. 3d 869 (D. Minn. 2017) .....................................................29

*Sierra v. City of Hallandale Beach*,
  904 F.3d 1343 (11th Cir. 2018)..............................................................9

*Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*,
  376 F.3d 1065 (11th Cir. 2004).................................................25, 29, 30, 31

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ..........................................................................30

*Stay Fresh Vape Co. v. Vape Storm Labs LLC*,
  No. 619CV00371CEMLRH, 2020 WL 10502622, at *4 (M.D. Fla. Mar.
  16, 2020) ......................................................................................8

*St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*,
  457 So. 2d 1028 (Fla. 2d DCA 1984) .......................................................33

*Sunbeam Television Corp. v. Nielsen Media Research, Inc.*,
  711 F.3d 1264 (11th Cir. 2013).............................................................16

*Swann v. Sec'y of Ga.*,
  668 F.3d 1285 (11th Cir. 2012).............................................................15

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961) ..........................................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................6

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................................ 15

*Total Benefits Planning v. Anthem Blue Cross*,
   552 F.3d 430 (6th Cir. 2008) ....................................................................... 22

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
   7 F.3d 986 (11th Cir. 1993) ................................................................... 19, 32

*United States v. Chandler*,
   388 F.3d 796 (11th Cir. 2004) ...................................................................... 22

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919) ................................................................................ 23

*United States v. E. I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) ................................................................................ 26

*Vitacost.com v. Oregon Freeze Dry, Inc.*,
   No. 09-80367-CIV, 2009 U.S. Dist. LEXIS 74347 (S.D. Fla. July 21,
   2009)................................................................................................ 23

*Vitacost.com, Inc. v. Gaia Herbs, Inc.*,
   No. 06-81141-CIV, 2007 U.S. Dist. LEXIS 22266 (S.D. Fla. Mar.
   28, 2007).................................................................................... 16, 17

*Wackenhut Corp. v. Maimone*,
   389 So. 2d 656 (Fla. 4th DCA 1980) .............................................................. 37

*Wang v. United States*,
   No. 8:16-CV-2050, 2016 WL 6582900 (M.D. Fla. Nov. 7, 2016) ...................... 15

*Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*,
   247 F.3d 1262 (11th Cir. 2001) ...................................................................... 10

*YMD Records, LLC v. Ultra Enters., Inc.*,
   361 F. Supp. 3d 1258 (S.D. Fla. 2019) ........................................................... 24

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012)......................................................................... 24

*Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*,
   248 F. Supp. 3d 1268 (M.D. Fla. 2017) ......................................................... 39

## Statutes

28 U.S.C. § 1332(d)(2) .................................................................................. 17

Fla. Stat. § 542.22(1)..................................................................................... 40

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................. 18

Fed. R. Civ. P. 9(b) ............................................................................. 37

Fed. R. Civ. P. 12(b)(1)....................................................................1, 8

Fed. R. Civ. P. 12(b)(2)....................................................................1, 8

Fed. R. Civ. P. 12(b)(6)....................................................................1, 9

Herbert Hovenkamp, *Federal Antitrust Policy* § 10.8 (1994) ...................................... 28

Defendants United Wholesale Mortgage, LLC ("UWM") and Mathew Ishbia ("Mr. Ishbia") (collectively, "Defendants") submit their motion to dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint") filed by Plaintiff The Okavage Group, LLC ("Plaintiff"), pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), and their memorandum of law in support thereof, as follows:

## I.     Introduction

Plaintiff cannot rescue its patently implausible claims by merely repeatedly adding the catchphrases "coercive," "horizontal group boycott," and "hub-and-spoke conspiracy" to its allegations. This lawsuit was filed as a publicity stunt, and so it remains. Federal and state antitrust and tort laws do not confer a blanket entitlement for Plaintiff to do business with UWM on the exact terms it prefers. If Plaintiff does not like UWM's offer, Plaintiff is free to say no—as it did—and instead originate loans with the 70+ other mortgage lenders in the diverse and highly competitive wholesale mortgage market. Plaintiff's dissatisfaction with UWM's business model simply is not an actionable wrong. And Plaintiff's inability to cure its defects of lack of standing, personal jurisdiction, and facial implausibility after notice and an opportunity to amend confirms its claims are, and always have been, meritless. The Court should dismiss the Amended Complaint with prejudice.

This dispute has its origins in UWM's decision to confront the conduct of two entities, Rocket Pro TPO ("Rocket") and Fairway Independent Mortgage ("Fairway"), whose practices UWM believes threaten the vibrant network of wholesale mortgage brokers that originate loans with UWM in the pro-consumer, pro-

small business wholesale mortgage lending channel. Wholesale mortgage lending allows customers to access a wide array of better mortgages at more favorable rates than they are most often able to obtain through retail mortgage lenders. UWM believes Rocket and Fairway harm mortgage brokers by originating loans through brokers on the wholesale side, and then converting those brokers' customers to the retail side— leeching customers from the wholesale lending channel. To address these practices, UWM announced its "All-In Initiative" on March 4, 2021, stating it had decided to end its business relationship with brokers who chose to continue originating loans with Rocket and Fairway.

What the Amended Complaint melodramatically refers to (more than 60 times) as UWM's "Ultimatum" was in reality a simple amendment to UWM's Broker Agreement (the "Amendment"), which UWM presented to some of its contracted mortgage brokers in accordance with its contractual right to amend. Under the Amendment, brokers represent and warrant that they are not submitting loans to Rocket and Fairway. Each broker had the free and voluntary choice to accept the Amendment by sending loans to UWM, or to decline. UWM asked some mortgage brokers to execute an "Addendum" indicating their intentions. For those mortgage brokers that agreed to the new term, either by submitting loans to UWM or by signing the Addendum, business with UWM continued in the normal course. For the minority of brokers that elected not to do so, UWM honored any existing loans already in the pipeline and exercised its contractual right to terminate their Broker Agreements going forward. These brokers maintained access to more than 70 mortgage lenders other

than UWM, and consumers retained their full spectrum of choices across all brokers, lenders, and channels. Those brokers who agreed to the Amendment undertook no minimum commitment to submit loans to UWM, and remain free to terminate their Broker Agreements at any time, and without consequence.

Plaintiff declined the Amendment, as it was free to do. The only "injury" Plaintiff asserts as a consequence of its voluntary decision not to accept UWM's offer to do business is its inability to originate loans *with UWM* going forward. The Amended Complaint rests solely upon the untenable legal theory that federal and state laws oblige UWM to do business with Plaintiff on the terms Plaintiff prefers—without regard to UWM's own judgment that its business interests are ill-served by making its technology, services, and products available to individuals it believes are hurting the wholesale mortgage lending channel by sending loans to Rocket and Fairway.

The Amended Complaint is steeped in the rhetoric of the propaganda campaign waged by opponents of the All-In Initiative. But hyperbole cannot replace facts. UWM's decision to contract with mortgage brokers accepting its offered terms and not those declining its offered terms is no more "coercive," a "boycott," or a "conspiracy" than the decision of some retail lenders (*e.g.*, major retail banks) to offer loans to consumers only through captive loan officers, and not to work with independent mortgage brokers like Plaintiff at all. UWM has chosen to fight for mortgage brokers, and by extension, consumers. Courts will not interject federal or state law to order a private company to do business with entities it views unfavorably, or on terms it has independently concluded are to the detriment of itself, its clients, and its industry. The

3

Amended Complaint should be dismissed for multiple independent reasons.

*First*, Plaintiff lacks both Article III and antitrust standing because it does not and cannot allege a plausible injury in fact, much less an antitrust injury, or a causal connection between Defendants' alleged actions and any injury to Plaintiff.

*Second*, Plaintiff fails to allege facts supporting this Court's personal jurisdiction over Mr. Ishbia, and the corporate shield doctrine precludes personal jurisdiction over Mr. Ishbia individually, requiring his dismissal with prejudice.

*Third*, Plaintiff's purported antitrust claims (Counts I–VI) fail to state a claim because: (i) the Amendment is not a horizontal boycott or a "hub-and-spoke" conspiracy; (ii) the Amendment is facially lawful; (iii) Plaintiff fails to adequately allege actual or potential anticompetitive effects on a properly defined market; and (iv) Plaintiff fails to adequately allege any plausible risk of monopolization.

*Fourth*, Plaintiff's tortious interference claim (Count VII) fails to allege any intentional or unjustified interference with Plaintiff's contractual business relationships, and/or its reasonable business expectancies.

*Fifth*, Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim (Count VIII) fails to state a claim.

*Sixth*, Plaintiff's declaratory relief claim (Count IX) is wholly duplicative.

## II.   Summary of Factual Allegations

### A.   Plaintiff Is a Mortgage Broker in a Vertical Relationship with Mortgage Lenders Like UWM, Rocket, and Fairway.

UWM is a wholesale residential mortgage lender, as are Rocket and Fairway.

Am. Compl. ¶¶ 3, 7-8. Plaintiff is a mortgage broker who did minimal business with UWM for less than a year pursuant to a Broker Agreement signed with UWM on or about November 20, 2020.  *See* Broker Agreement, attached as **Exhibit A**.[1] Plaintiff alleges it also has a business relationship with Rocket and/or Fairway.  Am. Compl. ¶ 44.

Wholesale mortgage lenders like UWM offer mortgage loans through independent third parties, including mortgage brokers, and do not work directly with borrowers until after a loan has been funded, if at all. *Id.* ¶ 3. Plaintiff alleges mortgage brokers deal directly with the borrower, and the broker selects the lender based upon the broker's judgment as to which lender offers the best value for the borrower. *Id.* ¶ 5. Thus, the relationship between Plaintiff and lenders like UWM, Rocket, and Fairway is vertical: Plaintiff submits loans to *its chosen* lenders and acts as a commercial intermediary between the lender and the borrower.

### B.    UWM Announced the Amendment to Combat Practices It Believes Are Harmful to the Wholesale Mortgage Lending Channel.

This lawsuit arises out of the March 4, 2021 announcement by Mr. Ishbia, in his capacity as President and CEO of UWM, that UWM was amending its Broker Agreement to require a representation and warranty that mortgage brokers who submit loans to UWM will not also submit loans to Rocket or Fairway. Am. Compl. ¶ 12. Some brokers were asked to sign an Addendum confirming their assent to the

---

[1] This Court may take judicial notice of and rely on the Broker Agreement and its amendments because they are referred to in the Amended Complaint and neither party challenges their authenticity. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007).

Amendment. *Id.* ¶ 13. UWM had the contractual right to amend the Broker Agreement, and a broker's submission of any mortgage loan application to UWM after the date of the Amendment constitutes acceptance. Ex. A § 7.08.

The Amended Complaint expressly incorporates Mr. Ishbia's announcement. Am. Compl. ¶¶ 12, 29; *see also* Transcript of Mar. 15, 2021 Facebook Live Video Announcement, attached as **Exhibit B**.[2] Mr. Ishbia explained UWM's view that Rocket and Fairway were "out there hurting the wholesale channel" by "soliciting loan officers," "talking negatively about brokers," "going after real estate agents," "trying to cut the loan officers," and "solicit[ing] your past clients." Ex. B at 12:14-16:11. He emphasized that "[w]hatever they want to do they can do [] as long as they play by the rules," but "that's not my business model," which is "helping you win" and "[b]eing all in for brokers." *Id.* at 13:18-24.

Mr. Ishbia said there would be "no hard feelings" and brokers could "close out your loans" and "take care of consumers [e]ven if you [] decline[.]" *Id.* at 15:10–15:18. He emphasized this was a decision "going forward," and that UWM would not "support[] brokers with our technology [and] with our service … to hurt the rest of the broker channel by funding the competition of brokers [and] the competition of the wholesale channel[.]" *Id.* at 15:23-16:4. He noted there were "73 other lenders," and brokers would "have options" with or without the "two [lenders] that are out there

---

[2] The Court may consider Mr. Ishbia's comments in ruling on Defendants' motion to dismiss because they are relied upon and incorporated into the Amended Complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (documents incorporated in the complaint by reference may be considered by the court on a motion to dismiss).

hurting the channel," because "there's nothing that those two lenders do for brokers that the other 73 lenders don't do." *Id.* at 16:9-18.

### C. Plaintiff and Other Brokers Remain Free to Choose Their Lenders.

Plaintiff alleges it declined UWM's Amendment to maintain its relationship with Rocket and Fairway. Am. Compl. ¶¶ 34, 46. As a result, Plaintiff alleges its Broker Agreement with UWM was terminated. *Id.* ¶ 46. Plaintiff asserts this somehow inflicted injury on Plaintiff and other putative class members "in the millions of dollars prior to trebling." *Id.* ¶¶ 79, 90, 100, 112, 123, 133. Plaintiff also repeatedly insists Rocket and Fairway "consistently offer better-suited and/or lower priced mortgage loans … as compared to UWM." *Id.* ¶ 34; *see also id.* ¶¶ 11, 51, 72, 75, 77, 84-85, 87-88, 95, 98, 105, 108-09, 118, 120-21, 128, 131. Yet, in direct contradiction, Plaintiff inexplicably asserts it has "lost customers who were interested in loans from UWM," resulting in "lost sales and lost commissions." *Id.* ¶¶ 46-47.

Each broker had the same freedom as Plaintiff to accept or decline the Amendment.[3] *Id.* ¶ 41; Ex. B. Likewise, every broker contracting with UWM could exit the Broker Agreement at any time, and utilize any of the 70 wholesale mortgage lenders throughout the pendency of the contract term with UWM. No brokers are required to submit a single loan to UWM during the pendency of their Broker Agreements. The Broker Agreement contains one-year renewable terms, but either

---

[3] Of course, some lenders (like major retail banks) have ceased working with mortgage brokers altogether, offering mortgages only through their own captive loan officer employees. Plaintiff does not allege these lenders are engaged in anticompetitive conduct.

party can terminate "for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice[.]" Ex. A §§ 7.05, 7.06. A notice of termination immediately releases the broker from its commitment not to submit loans to Rocket or Fairway, without waiting for the notice period to elapse. *See* Amended Broker Agreement § 3.05, attached hereto as **Exhibit C**.

## III.   Standard of Review

### A.   Rule 12(b)(1)

A Rule 12(b)(1) motion tests the basis for the Court's subject matter jurisdiction, and "'can be based upon either a facial or factual challenge to the complaint.'" *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1170 (11th Cir. 2020) (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). Defendants' facial challenge here requires the Court to "'look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction[.]'" *Id.* (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013)).

### B.   Rule 12(b)(2)

Plaintiff has "the burden of establishing personal jurisdiction over the defendant." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1180 (S.D. Fla. 2012) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). Dismissal is required "[w]hen a plaintiff fails to include sufficient allegations in his complaint to establish a prima facie case of personal jurisdiction[.]" *See Stay Fresh Vape Co. v. Vape Storm Labs LLC*, No. 619CV00371CEMLRH, 2020 WL 10502622, at *4 (M.D. Fla. Mar. 16, 2020).

## C.     Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, Plaintiff "must state a claim for relief that is 'plausible on its face.'" *Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1353 n. 9 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not required to "ignore specific factual details ... in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F. 3d 1189, 1205-06 (11th Cir. 2007). Legal conclusions "are not entitled to an assumption of truth" and "must be supported by factual allegations." *Daleo v. McCray*, No. 8:11-CV-2521, 2012 WL 6733091, at *2 (M.D. Fla. Dec. 28, 2012) (quoting *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)).

## IV.   <u>Argument</u>

### A.     **Plaintiff Lacks Article III and Antitrust Standing on All Claims.**

1.   <u>Plaintiff Lacks Article III Standing Because It Fails to Allege an Injury in Fact and a Causal Connection to Defendants' Actions.</u>

Plaintiff's theory of Article III standing remains incoherent, because its claims are based on implausible injuries with no causal connection to Defendants' purported actions. The Amended Complaint asserts in conclusory fashion that Plaintiff has "lost" unspecified customers and commissions—but alleges no plausible facts demonstrating the "loss" or establishing a causal connection between the "loss" and Defendants' challenged conduct. These assertions, long on conclusions but short on facts, fail to allege a basis for Article III standing.

Plaintiff "has the burden of proving" standing, which "is an essential and

unchanging part of the case-or-controversy requirement of Article III." *BBX Capital v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To satisfy Article III standing, Plaintiff "must establish that [it] has suffered an injury in fact, that the injury was causally connected to the defendant's actions, and that the injury would be redressed by a judgment in the plaintiff's favor." *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1307 (M.D. Fla. 2006).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof" at each "successive stage[] of the litigation." *Lujan*, 504 U.S. at 561. Accordingly, at the dismissal stage, Plaintiff must supply allegations "specific enough" for the Court "to conclude [Plaintiff] plausibly suffered an injury traceable to [Defendants'] conduct." *Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200, 1207 (11th Cir. 2019). Each claim "must be analyzed separately" and "cannot be asserted on behalf of a class" unless the named plaintiff "has suffered the injury that gives rise to that claim." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001) (quotation marks omitted).

a.   Plaintiff Fails to Allege an Injury in Fact

The Amended Complaint fails to allege facts satisfying the injury in fact requirement. An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). Here, all of Plaintiff's claims rely on the same theory of "injury"—that Plaintiff supposedly suffered "direct financial injury, including lost sales and lost commissions," and has

"been injured and financially damaged" by a "reduction in choice, lost customers and commissions." Am. Compl. ¶¶ 47, 76, 90, 100, 112, 123, 133, 145, 156. That theory of "injury," however, is conclusory and facially implausible.

Plaintiff does not allege any actual, identifiable lost customer, sale, or commission—just a conclusory assertion that Plaintiff "has lost customers who were interested in loans from UWM, but from who [sic] The Okavage Group could not offer since doing so would mean losing customers seeking loan products from Rocket and Fairway." *Id.* ¶ 46. That blanket assertion of harm is facially implausible in light of Plaintiff's concession that wholesale lenders "***do not work directly with consumers/borrowers*** until after a loan has been funded, if at all." *Id.* ¶ 3 (emphasis added). Plaintiff alleges that "mortgage brokers advise the customer of available interest rates and loan terms ***and select the wholesale mortgage lender to submit the loan application and other documentation in order to find the best mortgage loan product and pricing for their client, the consumer/prospective borrower***." *Id.* ¶ 5 (emphasis added). Thus, Plaintiff itself admits its customers do ***not*** pick the lender—whether UWM, Rocket, Fairway, or any other lender.

Plaintiff's allegations further reflect that Plaintiff's election to forfeit its relationship with UWM in favor of Rocket and Fairway was not injurious. The Amended Complaint asserts that Rocket and Fairway offer "innovative product offerings" with "better pricing and lower rates quoted to mortgage brokers." Am. Compl. ¶ 11. Plaintiff also insists in paragraph after paragraph that Rocket and

Fairway "consistently" offer "better-suited and/or lower priced mortgage loans" as compared to UWM. *Id.* ¶¶ 11, 34, 51, 72, 75, 77, 84-85, 87-88, 95, 98, 105, 108-09, 118, 120-21, 128, 131. Plaintiff's insistence that Rocket and Fairway offer more "innovative," "better," and "lower rate[]" mortgages than UWM flatly contradicts Plaintiff's entire theory of injury. It is Plaintiff that selects the lender—and according to Plaintiff's own Amended Complaint, it prefers Rocket and Fairway to UWM.

Plaintiff's bare assertion of a financial injury and blanket reference to unidentified lost customers, sales, and commissions is no substitute for factual allegations of a concrete, particularized, and actual or imminent injury in fact. "[C]onclusory allegations of injury are not enough to confer standing." *I Tan Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 928 (11th Cir. 2020); *Jones v. Salvation Army*, No. 3:18-CV-804, 2019 WL 6051437, at *8 (M.D. Fla. Nov. 15, 2019). A plaintiff who does not allege facts establishing an injury in fact lacks standing to pursue its claims. *See L&C Babb Mgmt. v. Am. Home Mortg.*, No. 6:15-CV-1209, 2016 WL 2784378, at *3 (M.D. Fla. May 13, 2016).

b.   Plaintiff Fails to Allege a Causal Connection

Each count of the Amended Complaint also fails to allege an injury ***to Plaintiff*** that is "causally connected" to Defendants' purported conduct. *Lamb*, 429 F. Supp. 2d at 1307. Each of Plaintiff's claims focuses almost exclusively on the effect of Defendant's supposed actions on Rocket and Fairway—not  Plaintiff. The absence of allegations establishing a causal connection between Defendants' challenged conduct

and an injury *to Plaintiff* is fatal to Plaintiff's standing. *See Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (quoting *Lujan*, 504 U.S. at 560) (holding standing requires plaintiff's injuries to be "fairly traceable" to the "challenged action of the defendant").

Count I, for example, alleges that UWM conspired to "force" and "coerce" mortgage brokers to "boycott the wholesale lending business of its competitors," and created a "horizontal conspiracy" and "restraint of trade" to "force UWM's competitors out of the wholesale lending business," and to "terminate" Rocket and Fairway as competitors. Am. Compl. ¶¶ 71-79. These allegations fail to trace any injury *from* Defendants *to* Plaintiff. Plaintiff is not a "competitor" of UWM, declined UWM's "Ultimatum," and does not allege it was the target of the supposed "boycott," "conspiracy," or "restraint." *Id.* ¶¶ 46, 71, 74. While Count I recites the phrase "direct and proximate cause" multiple times, and pastes boilerplate assertions of injury "in their business and property," Plaintiff fails to allege any facts identifying an injury *to Plaintiff* caused by Defendants' supposed efforts to "force" out Rocket and Fairway.

Plaintiff's other claims reprise similar assertions and identical causation boilerplate allegations. Count II is essentially identical to Count I, just substituting allegations that Defendants sought to "steer" consumers to UWM and away from Rocket and Fairway. *Id.* ¶¶ 84-91. These allegations have no causal connection to any supposed "injury" to Plaintiff, as Plaintiff chose to continue sending consumers to its preferred lenders, Rocket and Fairway; not UWM. *Id.* ¶ 46.

Count III asserts an attempted monopolization through "exclusionary" acts,

including "imposing" the "Ultimatum" and making supposed "misrepresentations" to "force and coerce" brokers to "steer" consumers away from Rocket and Fairway and towards UWM. *Id.* ¶¶ 94-101. Again, however, Plaintiff has chosen Rocket and Fairway over UWM, leaving no monopolization "injury" to Plaintiff (it is not inconsequential to note that Rocket is the largest retail mortgage lender in the country, and the second-largest wholesale mortgage lender in the country).

Counts IV, V, and VI are state law counterparts to Counts I, II, and III under the Florida Antitrust Act, and thus likewise lack a causal connection. *Id.* ¶¶ 116-35.

Count VII asserts that Defendants communicated "misrepresentations" to "coerce mortgage brokers" to do business with UWM and to "preclude" brokers from offering "competing loan products" from Rocket and Fairway, thereby "interfering" in "business relationships and expectancies" between mortgage brokers and "borrowers desiring mortgage loans" from Rocket and Fairway. *Id.* ¶¶ 137-46. Once more, however, Plaintiff elected to keep its "business relationships and expectancies" with Rocket and Fairway, precluding any such interference. *Id.* ¶ 46.

Count VIII asserts "unlawful and unfair methods of competition" under FDUTPA, derived from Plaintiff's earlier antitrust claims and equally lacking a causal connection to any putative injury to Plaintiff. *Id.* ¶¶ 149-58.

Count IX seeks declaratory relief to declare the Amendment and Addendum unenforceable—relief irrelevant to Plaintiff since it rejected these terms. *Id.* ¶¶ 149-64.

As this claim-by-claim analysis reflects, at best Plaintiff has recited (invalid) claims involving supposed conduct directed at Rocket and Fairway, with no causal

connection between Defendants' actions and Plaintiff's vague assertions of injury. Plaintiff's business decision to choose Rocket and Fairway over UWM is not an "injury" traceable to UWM's so-called "boycott" or "conspiracy"; it is just Plaintiff's contractual choice. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (holding that a "self-inflicted injury" does not support Article III standing); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (quoting *Swann v. Sec'y of Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012) (finding an injury is not "fairly traceable" when "a plaintiff independently caused his own injury")); *Wang v. United States*, No. 8:16-CV-2050, 2016 WL 6582900, *4 (M.D. Fla. Nov. 7, 2016) (finding plaintiff's voluntary choice is insufficient to allege an injury in fact).

Likewise, Plaintiff's attempt to assert injuries on behalf of others—whether unnamed class members (*e.g.* other mortgage brokers) or non-parties (*e.g.* Rocket and Fairway)—is insufficient to confer standing. "Class allegations that others suffered injuries giving rise to claims 'add … nothing to the question of standing.'" *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Plaintiff's Amended Complaint should thus be dismissed for lack of subject matter jurisdiction. *Kovalovsky v. Def. Fin. Acct. Serv.*, No. 6:13-CV-1058, 2013 WL 4747091, at *1 (M.D. Fla. Sept. 4, 2013).

      2.    <u>Plaintiff Lacks Antitrust Standing Because It Fails to Allege Antitrust Injury or That It Is an "Efficient Enforcer."</u>

Plaintiff's antitrust claims (Counts I through VI) also fail to satisfy the additional standard for antitrust standing, which "reflects prudential concerns and is designed to

avoid burdening the courts with speculative or remote claims." *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 711 F.3d 1264, 1270 (11th Cir. 2013). It "involves consideration of the nexus between the antitrust violation and the plaintiff's harm and whether the harm alleged is of the type for which Congress provides a remedy." *Id.* at 1271. To satisfy antitrust standing, Plaintiff must allege (1) an "antitrust injury" harming competition, and (2) that Plaintiff is "an efficient enforcer of the antitrust laws." *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010). The Amended Complaint fails to plead either element.

With respect to the first element, Plaintiff has failed to allege an "injury of the type the antitrust laws were intended to prevent and that flows from [the conduct that] makes [the] acts [of a defendant] unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Amended Complaint does not allege, for example, any actual reduction in the number of competitors, reduced output, or an increase in prices for lenders or consumers—nor could it, as mortgage rates in fact declined immediately following UWM's announcement of the All-In Initiative. *See, e.g., Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). And as discussed in § IV.A.1.b, *supra*, Plaintiff does not identify any "anticompetitive effect" ***to Plaintiff*** arising out of Defendants' conduct.

Plaintiff also fails to allege the second element of antitrust standing, which requires Plaintiff to be an "efficient enforcer of the antitrust laws." *Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 06-81141-CIV, 2007 U.S. Dist. LEXIS 22266, at *14 (S.D. Fla.

Mar. 28, 2007). Plaintiff does not qualify, because it is neither the "consumer" of the mortgage nor a "competitor" of UWM. *Id.* Rather, as a mortgage broker, Plaintiff serves as a "commercial intermediary" between mortgage lenders and mortgage consumers. *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 11 (1st Cir. 1999); Am. Compl. ¶ 5 (mortgage brokers are intermediaries). As such, Plaintiff's purported injuries "do not qualify as antitrust injuries," and Plaintiff cannot efficiently enforce against any antitrust violation. *Vitacost.com, Inc.*, 2007 U.S. Dist. LEXIS 22266, at \*9; *Med. Savs. Ins. Co. v. HCA Inc.*, No. 2:04-cv-156, 2005 U.S. Dist. LEXIS 20206, at \*26 (M.D. Fla. June 24, 2005). Counts I through VI should therefore be dismissed.[4]

### B.      This Court Lacks Personal Jurisdiction Over Mr. Ishbia.

Plaintiff's sole basis for naming Mr. Ishbia as a Defendant is his announcement of the Amendment, which Plaintiff asserts was "directed" to and "received" by mortgage brokers, including those in Florida like Plaintiff. Am. Compl. ¶¶ 12, 19-20, 29-32, 42, 52. That is plainly insufficient. Mr. Ishbia is a citizen of Michigan and Plaintiff alleges no personal jurisdictional connection to Florida outside of Mr. Ishbia's official acts as President and CEO of UWM. *Id.* ¶¶ 12, 18. Florida's corporate shield doctrine "prohibit[s] the exercise of jurisdiction under the Florida long-arm statute over corporate employees whose only conduct in Florida was in furtherance of a corporation's interests." *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678

---

[4] Defendants reserve all rights to challenge the class allegations if any of Plaintiff's claims survive this motion to dismiss, including Plaintiff's failure to establish subject matter jurisdiction based upon its demonstrated inability to establish injury, and thus, the requisite $5 million amount in controversy required by the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2).

(11th Cir. 2009) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). The Court thus lacks personal jurisdiction over Mr. Ishbia and the Amended Complaint against him must be dismissed with prejudice. *See Divcic v. Am. Mortg. Consultants, Inc.*, No. 8:09-CV-2233, 2010 WL 11629138, at \*2 (M.D. Fla. Feb. 22, 2010); *Klayman v. Jud. Watch, Inc.*, No. 07-22413-CIV, 2008 WL 11333054, at \*2 (S.D. Fla. Feb. 22, 2008).[5]

### C.    Each Count of Plaintiff's Complaint Fails to State a Claim.

### 1.    Plaintiff Fails to Allege a Horizontal Boycott or Hub-and-Spoke Conspiracy (Counts I-II, IV-V).

The Amended Complaint attempts to shore up Plaintiff's purported antitrust claims by repeating the words "coerce," "boycott," and "conspiracy," and invoking "horizontal group boycott" and "hub-and-spoke conspiracy" antitrust theories in an attempt to evade the rule of reason. *See* Am. Compl. ¶¶ 6, 12-14, 30, 33, 48-50, 52, 71, 74, 84, 104, 106, 117, 139-41, 143, 162. But Plaintiff's amended allegations and antitrust claims remain facially and fatally insufficient.

Plaintiff's frequent repetition of the phrases "group boycott" and "horizontal conspiracy" does not, as Plaintiff insists, confer "unreasonable *per se*" status upon its claims and banish the rule of reason. *See id.* ¶¶ 13, 74, 84, 104, 106, 117, 164. The U.S. Supreme Court and the Eleventh Circuit have both strongly cautioned "against the haphazard expansion of the 'group boycott label' and the concomitant imposition of

---

[5] Plaintiff's failure to allege any conduct by Mr. Ishbia personally is further confirmed by the fact that every count of the Amended Complaint impermissibly lumps UWM and Mr. Ishbia together. *See* Am. Compl. ¶¶ 71, 84, 99, 104, 117, 127, 139, 154, 161. This "lumping" of Defendants and their acts in violation of Rule 8 likewise warrants dismissal. *See, e.g., Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602-CIV, 2006 WL 4590705, at \*5 (S.D. Fla. Apr. 14, 2006).

*per se* liability." *Retina Assocs., P.A. v. S. Baptist Hosp. of Fla., Inc.*, 105 F.3d 1376, 1381 (11th Cir. 1997) (quoting *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986)). "[E]asy labels do not always supply ready answers," and the Court should be wary of "pigeonhole[s]" to invoke the *per se* rule. *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 746 (11th Cir. 1998) (quotation marks and citations omitted).

a.   <u>Plaintiff Does Not Allege a Horizontal Boycott</u>

To guard against capricious attempts like this to invoke the "group boycott" label where *per se* treatment "is not warranted," courts limit its application to cases in which "the conspirators imposing the group boycott possess 'market power or exclusive access to an element essential to effective competition[.]'" *Retina Assocs.*, 105 F.3d at 1381 (quoting *Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 296 (1985)). Plaintiff alleges no such "market power" or "exclusive access," and in fact the allegations of the Amended Complaint preclude either finding.

With respect to market power, "the principal judicial device for measuring actual or potential market power remains market share[.]" *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993). Plaintiff alleges mortgage lending through independent brokers comprises only 15.8% of residential mortgage loan originations, and UWM has "approximately 34% market share" of that wholesale lending channel. Am. Compl. ¶¶ 6, 96. Thus, Plaintiff's allegation that 93% of brokers presented with UWM's Addendum agreed to it, *see id.* ¶ 13, at most represents less than 5% (15.8% x 34% x 93%) of the residential mortgage loan origination market. A market share that low falls well short of "market power." *See Retina Assocs.*,105 F.3d at 1384 (holding

that defendants' 15% market share was insufficient as a matter of law to show market power for § 1 claim); *L.A.P.D., Inc. v. General Electric Corp.*, 132 F.3d 402, 405 (11th Cir. 1997) (finding "[a] 5% or 10% or 15% share of a normal market" does not imply market power for § 1 claim). *See also Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1250 (11th Cir. 2002) ("A market share at or less than 50% is inadequate as a matter of law to constitute monopoly power.") (collecting cases). UWM's lack of market power is particularly clear here, where Plaintiff alleges that Rocket and Fairway control a ***larger*** share of wholesale mortgage lending than UWM—a combined 50% versus UWM's 34%. *Id.* ¶¶ 6, 96, 106, 129. Because Plaintiff's allegations "do not establish the requisite market power," Counts I, II, IV, and V should be dismissed. *Rxstrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019).

The Amended Complaint also contains no allegations of "exclusive access." Nor could it. There are more than 70 wholesale mortgage lenders available to all mortgage brokers. *See* § II.B, *supra*. And Plaintiff alleges that Rocket's and Fairway's mortgage products are favorable to UWM's mortgage products. *See* Am. Compl. ¶¶ 11, 34, 51, 72, 75, 77, 84-85, 87-88, 95, 98, 105, 108-09, 118, 120-21, 128, 131. These allegations are flatly incompatible with any theory that UWM has "exclusive access" to some "essential" element of competition.

          b.    <u>Plaintiff Does Not Allege a Hub-and-Spoke Conspiracy</u>

Plaintiff also has not alleged facts establishing the most basic element of a group boycott, a "'horizontal agreement among direct competitors.'" *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1271 (11th Cir. 2019)

(quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998)). Plaintiff does not allege that mortgage brokers agreed amongst themselves to boycott Rocket and Fairway; just that UWM offered each contracted mortgage broker an Amendment to its respective vertical contract, representing and warranting that each would not submit loans to Rocket or Fairway, with an unconditional right to terminate upon written notice. Am. Compl. ¶ 13. According to Plaintiff, 93% of UWM's brokers presented with the Addendum agreed to this arrangement—with some expressing their support enthusiastically. *Id.* ¶¶ 12-13, 33. Enthusiasm is not a hallmark of conspiracy.

Multiple brokers picking one lender over two others in a market of more than 70 options is not a horizontal agreement among competitors to restrain trade. "The mere allegation of a concerted refusal to deal does not suffice because not all concerted refusals to deal are predominantly anticompetitive." *Nw. Wholesale Stationers*, 472 U.S. at 298. Plaintiff has alleged no facts demonstrating any "uniformity that would be unexpected or idiosyncratic" or "rule out the possibility" that the brokers "were acting independently" for their individual best interests. *Quality Auto*, 917 F.3d at 1271 (quoting *Twombly*, 550 U.S. at 553-54). "The Court cannot infer such an agreement from what is simply a unilateral business decision." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1361 (N.D. Ga. 2012). A market participant "may choose with whom he will do business and with whom he will not do business," and a "unilateral exercise of business judgment" to "refuse to deal" will "not give rise to antitrust liability without proof of actual competitive injury." *Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*, 710 F.2d 752, 772-73 (11th Cir. 1983).

Plaintiff attempts to remedy this failure by characterizing the supposed "group boycott" as a "hub-and-spoke conspiracy." Am. Compl. ¶¶ 48-50, 71, 104. That theory also fails on the face of the pleadings, because Plaintiff's "hub-and-spoke" is a "rimless wheel":  it alleges one entity (UWM) as the "hub" and *vertical* agreements between the hub and each "spoke" (the mortgage brokers), but no accompanying *horizontal* agreement between the spokes to form the "rim" of the wheel. *See United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004) (quoting *Kotteakos v. United States*, 328 U.S. 750,  755 (1946)); *In re Disposable Contact Lens Antitrust Litig.*, 215 F. Supp. 3d 1272, 1291 (M.D. Fla. 2016). Because "a wheel without a rim is not a single conspiracy," it cannot supply the basis for an antitrust conspiracy claim. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002); *see also In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) (rejecting "rimless wheel" conspiracy because "one cannot plausibly infer a horizontal agreement" from "nothing more than a series of vertical relationships"); *Total Benefits Planning v. Anthem Blue Cross*, 552 F.3d 430, 435-36 (6th Cir. 2008) (rejecting hub-and-spoke conspiracy when "the rim holding everything together is missing").

Thus, the Amended Complaint lacks plausible factual allegations in support of the two linchpins of Plaintiff's antitrust claims—a "horizontal group boycott" and a "hub-and-spoke conspiracy." Because Counts I, II, IV, and V fail to state a plausible antitrust claim on the theories asserted, they should be dismissed with prejudice.

2.   Plaintiff Fails to State a Claim for Unlawful Restraint of Trade Under Section 1 of the Sherman Act (Count I).

Each of Plaintiff's antitrust claims also fails on its elements. Count I should be dismissed because UWM is not obliged to do business with Plaintiff, and its decision to cease doing so when Plaintiff declined the Amendment is not an antitrust violation. The Amendment is a lawful exercise of UWM's right to contract with whom it chooses on the terms it chooses, with no anticompetitive effects.

a.   The Amendment is Facially Lawful and Does Not Restrain Trade.

UWM is permitted to choose the terms on which it is willing to conduct business. The federal antitrust laws "do[] not restrict the long recognized right of [a party] engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). A party "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). Here, UWM announced its Amendment, and mortgage brokers are "free to acquiesce in the [defendants'] demand" if they wish to continue working with UWM—or, like Plaintiff, to refuse if they do not. *Vitacost.com v. Oregon Freeze Dry, Inc.*, No. 09-80367-CIV, 2009 U.S. Dist. LEXIS 74347, at *17 (S.D. Fla. July 21, 2009); *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-cv-310, 2015 U.S. Dist. LEXIS 184070, at *282-83 (M.D. Fla. 2015) (dismissing Section 1 claims because parties may exercise independent discretion regarding with

whom they deal).

Plaintiff's mischaracterization of the Amendment as a "naked horizontal conspiracy and restraint of trade to jointly boycott Rocket and Fairway" and as "*per se* unreasonable under antitrust law," Am. Compl. ¶¶ 74, fails because Plaintiff's allegations fail to plead a horizontal boycott or hub-and-spoke conspiracy. *See* § IV.C.1, *supra*. That leaves Plaintiff with nothing but the vertical relationship between itself and UWM. Am. Compl. ¶¶ 2, 3, 5. Alleged vertical restraints are "assessed under the rule of reason." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018).

Plaintiff cannot state a claim under the rule of reason, because it does not plead any facts setting forth unreasonable effects on competition. *See YMD Records, LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258, 1265 (S.D. Fla. 2019). ***First***, the Amendment is not an exclusive dealing contract. It includes no minimum requirement or obligation to submit loans to UWM, and permits brokers to submit loans to more than 70 other wholesale lenders while under contract with UWM. That is a facially lawful relationship that "generally pose[s] little threat to competition." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012).

***Second***, UWM's Broker Agreements, as amended, "are of relatively short duration and, crucially, can be terminated upon short notice," and thus "do not—by themselves—sustain the Sherman Act claims." *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. 8:12-cv-02102, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013). The Broker Agreement's short term (one year) and easy terminability (for any reason upon

seven days prior written notice with immediate termination of obligation not to submit loans to Rocket and Fairway) preclude a finding that it is anticompetitive as a matter of law. *See PNY Techs., Inc. v. Sandisk Corp.*, No. 11-CV-04689, 2014 U.S. Dist. LEXIS 58108, at *24-27 (N.D. Cal. Apr. 25, 2014) (dismissing because easy terminability and short duration negate the ability of a contract to substantially foreclose competition).

### b.   Plaintiff Fails to Adequately Allege Anticompetitive Effects.

Count I also fails because it does not allege, as it must, that UWM's challenged acts had an anticompetitive effect on the market either by (1) showing "the potential for genuine adverse effects on competition," or (2) through "actual detrimental effects." *Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1551 (11th Cir. 1996).

#### i.   *Plaintiff Fails to Allege the Potential For Genuine Adverse Effects on Competition.*

To plead the potential for genuine adverse effects on competition, Plaintiff must allege that UWM exercises market power in a proper market. *Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*, 376 F.3d 1065, 1073 (11th Cir. 2004). It must further allege the Amendment substantially foreclosed competition in that market. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

Here, as discussed, UWM's alleged "34% market share of the wholesale market," which in turn is only 15.8% of the residential mortgage loan market, *see* Am. Compl. ¶¶ 6, 96, falls well short of market power. *See* § IV.C.1.a, *supra*; *Bailey*, 284 F.3d at 1250 ("market share at or less than 50% is inadequate as a matter of law"); *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d

1147, 1154 (9th Cir. 1997) ("[a] mere showing of substantial or even dominant market share alone cannot establish market power..."). Thus, even accepting *arguendo* Plaintiff's characterization of the "wholesale market" as the relevant market—though it is not, as discussed below—UWM's alleged 34% market share falls well short of stating a claim. *See Hanicomp, Inc. v. U.S. Golf Ass'n*, 2000 WL 426245, at *3-4 (3d Cir. 2000) (72% market share insufficient); *Maxon Hyundai Mazda v. Carfax, Inc.*, 2016 U.S. Dist. LEXIS 171418, at *87-88 (S.D.N.Y. Sept. 30, 2016) (90% market share insufficient) (citation omitted), *aff'd*, 726 Fed. Appx. 66 (2d Cir. 2018).

Moreover, Plaintiff fails to include "enough information in [its] complaint to plausibly suggest the contours of the relevant geographic and product markets." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). Plaintiff asserts, in conclusory fashion, that "the relevant sub-market...is the market for wholesale lending for mortgages sold through mortgage brokers." Am. Compl. ¶ 3. This self-serving definition does not comport with Plaintiff's own acknowledgment that wholesale lenders like UWM, and lenders that operate in both the wholesale and (predominantly) retail channels like Rocket and Fairway, all sell the same product—residential mortgages—to consumers, and all compete for the same consumer business. *See* Am. Compl. ¶¶ 4, 7-8. In determining the relevant product market, a court must consider all reasonably interchangeable commodities, and Plaintiff's alleged "sub-market" fails to do so because it excludes residential mortgages originated by retail lenders (including Rocket and Fairway!). *See United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 394-95 (1956) (requiring consideration of

26

interchangeable products). Where, as here, the product sold is functionally indistinguishable to consumers regardless of the channel, the broader market is the relevant one. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, No. 4:07-CV-02, 2007 U.S. Dist. LEXIS 91241, at *12 (N.D. Ga. Dec. 11, 2007) (granting motion to dismiss because relevant market was mattresses, rather than narrower "visco-elastic foam mattresses"). According to Plaintiff's own allegations, UWM's share of the relevant residential mortgage market is less than 5.4% (15.8% x 34%), which is clearly insufficient to plead market power—particularly in a market where Rocket is the largest overall mortgage lender in the country. Am. Compl. ¶¶ 6, 96.

Lastly, Plaintiff has not alleged that the Amendment has foreclosed competition in the relevant market. "[F]or exclusive dealing to run afoul of the antitrust statutes," the exclusivity arrangements must substantially foreclose the relevant market—*i.e.*, they must significantly limit the ability of other competitors to enter or remain in the market. *McWane, Inc. v. Fed. Trade Comm'n*, 783 F.3d 814, 837 (11th Cir. 2015). Plaintiff fails to allege non-conclusory facts showing that the Amendment has foreclosed competition. Plaintiff's "[t]hreadbare recitals" that its ability to offer access to the "best-suited" products has been "foreclosed" (Am. Compl. ¶¶ 77, 88-89), and that the Amendment was "designed" to foreclose competing mortgage loan products (*id.* ¶ 78), are—in addition to being unfounded and false—insufficient as a matter of law. *Jacobs*, 626 F.3d at 1333 (quoting *Iqbal*); *see also Appleton v. Intergraph Corp.*, 627 F. Supp. 2d 1342, 1353 (M.D. Ga. 2008) (dismissing claims based on "exceedingly vague" factual allegations).

Indeed, Plaintiff cannot plausibly allege foreclosure of competition because, according to Plaintiff's own allegations, mortgage brokers are free to decline the Amendment (as Plaintiff did) and to work with 70+ other wholesale lenders, including Rocket and Fairway. *See* Herbert Hovenkamp, *Federal Antitrust Policy* § 10.8 at 391 (1994) (foreclosure of even "a large percentage of one mode of distribution will have little anticompetitive effect if another mode is available"). Competition also cannot be foreclosed where, as here, the Amendment is short-term, imposes no minimum obligations, remains available to Plaintiff and others that initially declined its terms, and is immediately terminable on written notice. *See* § II.C, *supra*; *Paddock Pubs., Inc. v. Chicago Tribune Co.*, 103 F.3d 42, 44 (7th Cir. 1996) (affirming dismissal of Section 1 claim challenging exclusive contracts "terminable at will or on short notice").

        ii.       *Plaintiff Fails to Allege Actual Detrimental Effects.*

Plaintiff likewise does not plead, and is unable to plead, actual detrimental effects on competition as a result of UWM's Amendment. The Complaint fails to allege an "actual increase in the price of the good or service, a decrease in output, or a decline in quality," the hallmarks of an actual detrimental effect. *EnviroPak Corp. v Zenfinity Capital, LLC*, No. 4:14-CV-00754, 2015 U.S. Dist. LEXIS 7770, at *39 (E.D. Mo. Jan. 23, 2015). Plaintiff asserts only that it was forced and coerced to apply for UWM's product offerings on unfavorable terms, and is entitled to "commissions lost" and refunds for financial penalties imposed by UWM. Am. Compl. ¶¶ 73, 75-76, 80. Putting aside that these allegations are facially implausible because Plaintiff ***declined*** the Amendment, Plaintiff alleges no price increases, no effect on output, and no

decline in quality of mortgage products. To the contrary, Plaintiff alleges its selection of Rocket and Fairway over UWM has had positive competitive benefits for consumers and prospective borrowers. *See id.* ¶¶ 11, 34.

Even if Plaintiff's implausible assertion of lost commissions or financial penalties constituted competitive harm, though they do not, Plaintiff fails to allege the commissions lost, when they were lost, how much was lost, or what penalties Plaintiff incurred (or how, since it terminated its relationship with UWM). Plaintiff's "[b]road, unsupported allegations of actual detrimental effects" are "inadequate to withstand a motion to dismiss." *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 884 (D. Minn. 2017); *see also Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016) ("[A] plaintiff may not meet its burden of showing actual anticompetitive effects with mere conclusory assertions" and must "point to specific facts demonstrating harm to competition"); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1074; *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989).

### 3.   Plaintiff Fails to State a Claim for "Steering" Under Section 1 of the Sherman Act (Count II).

Count II is duplicative of Count I and invokes an inapposite theory that Defendants have unlawfully restrained trade by "steering" Plaintiff's clients away from loan products offered by Rocket or Fairway. Although Plaintiff labels Count II as "unlawful steering," it is not a separate claim at all, but rather a description sometimes applied to contract provisions challenged as unreasonable restraints under Section 1. Count II merely parrots Count I, and is premised on the same conduct. *See* Am.

Compl. ¶¶ 83-92. It thus fails for the same reasons. *See* § IV.C.2, *supra*. In particular, UWM cannot have "steered" Plaintiff away from Rocket and Fairway, because Plaintiff alleges it declined the Amendment and chose Rocket and Fairway over UWM. *See Am. Express Co.*, 138 S. Ct. at 2289-90 (finding "nothing inherently anticompetitive about Amex's antisteering provisions" because they "do not prevent Visa, MasterCard, or Discover from competing against Amex…").

    4.   <u>Plaintiff Fails to State a Claim for Attempted Monopolization Under Section 2 of the Sherman Act (Count III).</u>

Count III fails to state a claim for attempted monopolization because Plaintiff cannot allege: (1) Defendants engaged in "anticompetitive conduct," (2) with the "specific intent to monopolize," and (3) "a dangerous probability of achieving monopoly power." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 733 F. Supp. 2d 1348, 1366 (N.D. Ga. 2010) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). Plaintiff also fails to allege Defendants possess enough power or potential power in the relevant market to harm competition. *See Spanish Broad. Sys. of Fla.*, 376 F.3d at 1074.

    a.   <u>Plaintiff Fails to Allege Anticompetitive Conduct or a Specific Intent to Monopolize.</u>

Plaintiff's Section 2 claim alleges again in conclusory fashion that Defendants committed "overt exclusionary acts" by purportedly "imposing" the Amendment and by making "false and misleading" misrepresentations. Am. Compl. ¶ 95. Like Plaintiff's Section 1 claim, its Section 2 claim fails out the outset because, as explained in § IV.C.2.b., *supra*, this conduct is not anticompetitive. Accordingly, Count III fails

to plead anticompetitive conduct, which "'is arguably the single most important aspect'" of attempted monopolization. *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1075 (quoting *Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981)).

Plaintiff cannot cure this fatal deficiency through its unsupported and conclusory allegation that "UWM will monopolize the wholesale mortgage market." Am. Compl. ¶ 96. That naked assertion cannot overcome the absence of plausible factual allegations regarding: (1) the Amendment's impact on competition, (2) the Amendment's impact on market share (or whether it has impacted market share at all), or (3) how UWM—as just one of over 70 mortgage lenders—can possibly gain a monopoly simply by opting not to do business with brokers who also work with Rocket and Fairway, without impacting brokers' ability to work with all others. Plaintiff's claim thus remains unsustainable. *See LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994, 2007 U.S. Dist. LEXIS 43739, at *50 (C.D. Cal. June 4, 2007) (granting motion to dismiss in part because "[h]arm to one or more competitors is not sufficient ... unless a plaintiff alleges harm to the competitive process.").

Similarly, beyond a boilerplate recitation of the elements of an attempted monopolization claim, Plaintiff does not allege that Defendants had a specific intent to monopolize the wholesale lending market. Am. Compl. ¶ 94. Indeed, Plaintiff concedes it and every other broker remain free to submit loans to 70+ other lenders regardless of whether they agree to the Amendment, and every broker who consents to the Amendment can terminate the obligation not to submit loans to Rocket and Fairway immediately upon notice. While one can plead intent through an attempt to

31

"drive up prices" or "some other illegal goal," Plaintiff fails to plead any such facts. *Mr. Furniture Warehouse, Inc. v. Barclays Am./Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990). The fact that UWM made a contractual choice to dispute the market practices of Rocket and Fairway, which UWM views as specifically harmful to the wholesale market for the reasons expressed in its announcement of the Amendment, hardly gives rise to a plausible inference of any intent to monopolize the wholesale market. *See, e.g.*, Am. Compl. ¶ 29; Ex. B at 12-16.

        b.    <u>Plaintiff Fails to Allege a Dangerous Probability of Achieving Monopoly Power.</u>

Count III also lacks any factual allegations demonstrating a dangerous probability that Defendants will attain monopoly power. A "dangerous probability of success arises when the defendant comes close to achieving monopoly power in the relevant market." *Gulf States Reorg. Grp., Inc. v. Nucor Corp.*, 721 F.3d 1281, 1285 (11th Cir. 2013). Whether an entity has a dangerous probability of achieving monopoly power in a particular market can only be evaluated if one first properly defines the relevant market. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993) ("Defining the market is a necessary step in any analysis of market power"). As with Plaintiff's Section 1 claim, *see* § IV.C.2.b.i *supra,* Plaintiff improperly attempts to define the market as "the market for wholesale lending for mortgages sold through mortgage brokers," rather than the relevant market of residential mortgage lending.

But even accepting Plaintiff's improper and truncated definition of the relevant market *arguendo*, Plaintiff fails to allege Defendants have sufficient market power to

pose a danger of monopolization. Plaintiff's allegation that UWM has a 34% market share, *see* Am. Compl. ¶ 96, falls well short of a "dangerous probability" as a matter of law. *See, e.g.*, *Bailey*, 284 F.3d at 1250 (finding a "market share at or less than 50% is inadequate as a matter of law"); *Gulf States Reorg. Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1237 (N.D. Ala. 2011) (where the "alleged monopolist's market share is 'less than 50% of the market...there was no dangerous probability of success...as a matter of law'") (quotation marks omitted) *aff'd*, 721 F.3d 1281 (11th Cir. 2013). A "mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Paycargo, LLC v. CargoSprint, LLC*, No. 3:19-cv-85, 2019 U.S. Dist. LEXIS 195391, at *10-15 (N.D. Ga. 2019) (granting motion to dismiss Sherman Act § 2 claim because even though defendant had at least 50% market share, plaintiff must show that new rivals are barred from entering the market) (quotation marks omitted). Plaintiff alleges no facts demonstrating that UWM's conduct establishes anything like a dominant market share, much less excludes new rivals from entering the market. Thus, Count III necessarily fails.

5.  Plaintiff Fails to State a Claim for Violation of the Florida Antitrust Act (Counts IV–VI).

Counts IV, V, and VI of the Complaint assert violations of the Florida Antitrust Act, mirroring Plaintiff's Sherman Act claims in Counts I, II, and III. In interpreting the Florida Antitrust Act, the body of federal case law interpreting the Sherman Act is determinative. *See All Care*, 135 F.3d at 745 n. 11 ("Federal and Florida antitrust laws are analyzed under the same rules and case law."); *St. Petersburg Yacht Charters, Inc. v.*

*Morgan Yacht, Inc.*, 457 So. 2d 1028, 1032 (Fla. 2d DCA 1984) ("The Florida legislature has, in effect, adopted as the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act."). Accordingly, for the reasons articulated above, *see* §§ IV.C.1-4, *supra*, Plaintiff fails to state a claim under the Florida Antitrust Act, and Counts IV, V and VI should likewise be dismissed.

6.    <u>Plaintiff Fails to State a Claim for Tortious Interference with Business Contracts and Prospective Economic Advantage (Count VII).</u>

Plaintiff's claim for tortious interference fails for a very basic reason: because Plaintiff declined the Amendment in favor of its relationships with Rocket and Fairway, there is no plausible "interference" in its "business contracts and/or prospective economic advantage with borrowers desiring mortgage loans from [Fairway] and/or [Rocket]." Am. Compl. ¶ 137. The new premise of amended Count VII is that UWM used a combination of misrepresentations and coercion to induce brokers to work with UWM instead of Rocket and Fairway. *Id.* ¶¶ 139-41. This supposedly forced brokers to choose between "customers who wanted to work with UWM" and "customers who wanted to work with [Fairway] or Rocket[.]" *Id.* Yet the only "business contracts" and "prospective economic advantage" referenced in the Amended Complaint, albeit without supporting facts, are those between Plaintiff and borrowers "desiring mortgage loans" from Rocket and Fairway, not UWM. Because Plaintiff retained these contracts and relationships by choosing Rocket and Fairway, its tortious interference claim is facially implausible and legally untenable.

***First***, Plaintiff's claim is facially incoherent, because Plaintiff alleges that

wholesale mortgage lenders "do not work directly with consumers/borrowers," and that mortgage brokers "select the wholesale mortgage lender[.]" *Id.* ¶¶ 3, 5. Thus, a mortgage consumer who "wanted to work with" UWM, Rocket, or Fairway is a *non sequitur*; wholesale lenders do not "work with" customers at all. *Id.* Plaintiff's facially implausible claim should therefore be dismissed. *Iqbal*, 556 U.S. at 678.

**Second**, Plaintiff fails to allege an "intentional and unjustified interference with the business relationship or procurement of the contract's breach," a core element of tortious interference. *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015). The Amended Complaint identifies no actual "business contracts" and "prospective economic advantage" breached or interrupted as a consequence of Defendants' actions. It just references broad categories of hypothetical customers—those who "wanted to work with" UWM, Rocket, or Fairway, respectively. Am. Compl. ¶¶ 139-41. Under Florida law,[6] "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1995). Thus, an action for tortious interference requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id. See also Med. Sav. Ins. Co. v. HCA*,

---

[6] Defendants assume, without conceding, that Florida law governs Plaintiff's tortious interference claim. *See* Am. Compl. ¶¶ 15, 17-18; *Fla. Steel Corp. v. Whiting Corp.*, 677 F. Supp. 1140, 1141 (M.D. Fla. 1988).

*Inc.*, No. 2:04-CV-156, 2005 WL 1528666, at *9 (M.D. Fla. June 24, 2005), aff'd, 186 F. App'x 919 (11th Cir. 2006). Plaintiff alleges no such contract or prospective relationship. Even the abstract group identified—borrowers "desiring mortgage loans" from Rocket and Fairway—could not have experienced any interference, because Plaintiff chose to keep its relationship with Rocket and Fairway and thus can satisfy these hypothetical customers.

**Third**, for the same reason, Plaintiff cannot plead a viable theory of damages. Plaintiff could not have "lost" customers or commissions, *see* Am. Compl. ¶ 145, where it retained the ability to serve the same customers and earn the same commissions by maintaining its relationships with Rocket and Fairway. A plaintiff that has not incurred damages cannot state a claim for tortious interference with a business relationship. *See Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2019 WL 3890253, at *3 (M.D. Fla. Aug. 19, 2019); *Pediatric Servs. of Am. Inc. v. Kendrick*, No. 3:18-cv-1372, 2020 WL 6336127, at *3 (N.D. Fla. Sept. 30, 2020).

**Fourth**, Plaintiff fails to allege facts demonstrating Defendants had both "the intent to damage [Plaintiff's] business relationship and a lack of justification for doing so." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (quotation marks omitted). The Amended Complaint expressly incorporates the March 15, 2021 announcement of the Amendment, in which Mr. Ishbia enumerated UWM's numerous lawful justifications for its actions, including that Rocket and Fairway were "hurting the wholesale channel," "soliciting loan officers," "talking negatively about brokers," "going after real estate agents," "trying to cut the loan

36

officers," and "solicit[ing] your past clients." Ex. B at 12:14-16:11. A company "may take steps to protect its business interests without liability for tortious interference" so long as the company "does not engage in improper conduct." *Romika-USA, Inc.*, 514 F. Supp. 2d at 1339; *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14-62216-CIV, 2015 WL 1526177, at *7 (S.D. Fla. Apr. 3, 2015).

*Fifth*, "an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will." *Greenberg, M.D. v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. 3d DCA 1993); *see also Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 658 (Fla. 4th DCA 1980). Plaintiff alleges no facts indicating its customer relationships were anything other than terminable at will.

### 7. Plaintiff Fails to State a Claim for Violations of FDUTPA (Count VIII).[7]

Count VIII for violation of FDUTPA, as amended, is entirely derivative of Plaintiff's earlier claims, asserting that Defendants have committed various "unlawful," "unfair," "unconscionable," or "deceptive" acts. *See* Am. Compl. ¶¶ 154, 155. This claim fails for the same reasons as the incorporated paragraphs of the preceding counts.

Plaintiff's FDUTPA claim also relies on facially insufficient conclusions that

---

[7] To the extent the Court finds Plaintiff's FDUTPA claim sounds in fraud by virtue of Plaintiff's allegation that Defendants made "false and misleading Misrepresentations [to] Plaintiff and Class Members" (*see* Am. Compl. ¶ 143), Plaintiff's failure to comply with Rule 9(b) presents additional grounds for dismissal. *See Fid. Nat'l Fin., Inc. v. Attachmate Corp.*, No. 3:15-CV-01400, 2017 WL 3726687, at *3 (M.D. Fla. Mar. 1, 2017) ("claims arising under FDUTPA must satisfy the more rigorous pleading requirements of Rule 9(b) when the complaint sounds in fraud").

Plaintiff and the putative class members "have been injured and financially damaged" and "have suffered, and will continue to suffer damages in the future"—once again based on vague references to "reduction in choice, lost customers and commissions" and incorporation of earlier paragraphs asserting the same nebulous damages. *Id.* ¶¶ 156-57. These assertions are unsupported by any allegations of fact and, once again, are belied by the balance of Plaintiff's Amended Complaint. Plaintiff has not suffered and cannot suffer damages under FDUTPA where it voluntarily refused to enter into the Amendment and instead elected to continue working with its preferred lenders, Rocket and Fairway. Count VIII thus fails to allege "actual damages," one of the essential elements of a FDUTPA claim. *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Where conclusory allegations fail to specify actual damages, dismissal is required. *See Alcon Labs, Inc. v. Allied Vision Grp., Inc.*, No. 18-CV-61638, 2019 WL 2245584, at *11 (S.D. Fla. Mar. 7, 2019), report and recommendation adopted sub nom. *Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-61638-CIV, 2019 WL 2245262 (S.D. Fla. Apr. 2, 2019) (dismissing where "conclusory allegations in FDUTPA counterclaim fail[ed] to specify actual damages"); *Mukamal v. Bakes*, No. 07-20793-CIV, 2008 WL 11391157, at *5 (S.D. Fla. May 20, 2008), aff'd, 378 F. App'x 890 (11th Cir. 2010) (dismissing FDUTPA claim with prejudice where Plaintiff "failed to adequately plead actual damages incurred [] as a result of the allegedly deceptive trade practice").

Plaintiff also fails to allege the other two elements of a claim under FDUTPA: a "deceptive act or unfair practice," and causation. *City First Mortg. Corp.*, 988 So. 2d

at 86. As previously discussed, the Amendment presented Plaintiff with a transparent business decision—one that is short-term and readily terminable—which Plaintiff chose to decline, in favor of submitting loans to Rocket and Fairway. The Complaint contains no facts reflecting how this contractual choice was deceptive or unfair as to Plaintiff or caused Plaintiff damages in light of its election.

### 8.    Plaintiff Fails to State a Claim for Declaratory Relief (Count IX).

Lastly, Count IX for declaratory relief is facially defective because it lacks plausible allegations of damages and is wholly duplicative of Plaintiff's other claims. To state a claim for declaratory judgment, Plaintiff must establish: (i) it has personally suffered some actual or threatened injury as a result of Defendants' conduct; (ii) Plaintiff's injury can be traced to Defendants' actions; and (iii) Plaintiff's injury is likely to be redressed by a favorable decision. *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017). Here, Plaintiff has not plausibly alleged any injury or damages owing to its decision to reject the Amendment.

Moreover, Plaintiff's declaratory relief claim should be dismissed as duplicative of its other claims. *See Del Prado Mall Pro. Condo. Ass'n, Inc. v. Voyager Indem. Ins. Co.*, No. 2:20-CV-838, 2021 WL 1578758, at *2 (M.D. Fla. Apr. 22, 2021) (dismissing declaratory relief claim as duplicative); *Auto Dealer Sols., Inc. v. S.-Owners Ins. Co.*, No. 8:17-CV-2525, 2018 WL 4600674, at *3 (M.D. Fla. Jan. 25, 2018). Plaintiff seeks a declaration that the Amendment is "unlawful and unenforceable," "*per se* illegal under federal antitrust law," "unenforceable" against "those who did not acknowledge acceptance of it," and "a penalty and … therefore unenforceable by law." Am. Compl.

¶ 164. Because Plaintiff is not a party to the Amendment, these requested declarations are meaningless as to Plaintiff and would merely constitute an advisory opinion by the Court on allegations that duplicate Plaintiff's other, unsuccessful claims.

## V.   <u>Conclusion</u>

Wherefore, for the foregoing reasons, Defendants respectfully request that the Court grant this Motion; dismiss the Amended Complaint against UWM in its entirety; dismiss the Amended Complaint with prejudice as to Mr. Ishbia; and grant Defendants any other relief it deems necessary including, without limitation, an award of attorneys' fees in accordance with the provisions of Section 542.22(1), Florida Statutes, and FDUTPA.

Dated: September 7, 2021                    Respectfully submitted,

                                            **GREENBERG TRAURIG, P.A.**
                                            401 East Las Olas Boulevard
                                            Suite 2000
                                            Fort Lauderdale, Florida 33301
                                            Telephone: 954-765-0500
                                            Telefax: 954-765-1477

                                            By:   /s/ *Glenn E. Goldstein*
                                                  **Glenn E. Goldstein, Esquire**
                                                  Florida Bar No. 435260
                                                  Email: GoldsteinG@gtlaw.com
                                                       depasqualem@gtlaw.com
                                                       FLService@gtlaw.com

                                                  **Avi Benayoun, Esquire**
                                                  Florida Bar No. 0151696
                                                  Email: benayouna@gtlaw.com
                                                       yeargina@gtlaw.com

                                            and

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717
**Stephanie Peral, Esquire**
Florida Bar No. 119324
Email: perals@gtlaw.com
　　　　collazoe@gtlaw.com

*Attorneys for Defendants United Wholesale*
*Mortgage, LLC and Mathew Ishbia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

　　　　　　　　　　　　　　/s/ Glenn E. Goldstein
　　　　　　　　　　　　　　GLENN E. GOLDSTEIN

41