## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 3:21-cv-00448-BJD-JRK

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

       *Plaintiff*,

       v.

UNITED WHOLESALE MORTGAGE, LLC
and MAT ISHBIA, individually,

       *Defendants.*

_____/

### DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

## TABLE OF CONTENTS

**Page(s)**

I.      Introduction ....................................................................................1

II.     Summary of Alleged Facts...........................................................3

III.    Standard of Review .......................................................................5

IV.     Argument........................................................................................6

       A.      Plaintiff's Objection Should Be Denied as Moot..................................6

       B.      The Report Correctly Concluded the Court Lacks Personal
           Jurisdiction Over Mr. Ishbia .................................................................7

       C.      The Report Correctly Concluded the FAC Fails to State a Claim
           Under Section 1 of the Sherman Act ....................................................9

              1.     The FAC Does Not State a Claim for Horizontal Boycott ..........9

                        a.     The Report's *Per Se* Analysis Is Correct ...........................10
                        b.     The Report's Rule-of-Reason Analysis Is Correct ...........12
                        c.     The Objection's Contrary Arguments Fail.....................13

              2.     The FAC Does Not State a Claim for Steering.........................18

       D.      The Report Correctly Concluded the FAC Fails to State a Claim
           Under Section 2 of the Sherman Act ..................................................18

       E.      The Report Correctly Concluded the FAC Fails to State a Claim
           for Violations of FDUTPA .................................................................20

V.      Conclusion ....................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
135 F.3d 740 (11th Cir. 1998) ...........................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 6, 11, 14

*Bolinger v. First Multiple Listing Serv., Inc.*,
838 F. Supp. 2d 1340 (N.D. Ga. 2012) ...................................................... 11, 13

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979)...............................................................................................10

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999).............................................................................6

*City First Mortg. Corp. v. Barton*,
988 So. 2d 82 (Fla. 4th DCA 2008) ..................................................................20

*Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*,
710 F.2d 752 (11th Cir. 1983) ................................................................... 11, 13

*Coventry First, LLC v. McCarty*,
605 F.3d 865 (11th Cir. 2010) ............................................................................6

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010)............................................................................8

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ............................................................................11

*In re Disposable Contact Lens Antitrust*,
215 F. Supp. 3d 1272 (M.D. Fla. 2016) .................................................... 11, 14

*Doe v. Thompson*,
620 So. 2d 1004 (Fla. 1993)................................................................................7

*Dresdner Bank AG v. M/V Olympia Voyager*,
463 F.3d 1210 (11th Cir. 2006)............................................................................6

*In re EpiPen Direct Purchaser Litig.*,
No. 20-cv-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022) ............................16

*F.T.C. v. Ind. Fed'n of Dentists*,
476 U.S. 447 (1986) ........................................................................................10

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ....................................................................3, 4

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
721 F.3d 1281 (11th Cir. 2013) .......................................................................19

*Healthe, Inc. v. High Energy Ozone LLC*,
533 F. Supp. 3d 1120 (M.D. Fla. 2021) ...........................................................8

*Hunter v. Kalmanson*,
No. 5:14-cv-410-Oc-22PRL, 2014 U.S. Dist. LEXIS 146317 (M.D.
Fla. Oct. 14, 2014) ............................................................................................7

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3rd Cir. 2010) ......................................................11, 14, 15, 16

*Jackson v. Stoke*,
No. 4:21-cv-348, 2022 U.S. Dist. LEXIS 135205 (S.D. Ga. July 28,
2022) ..................................................................................................................6

*L.A.P.D., Inc. v. General Elec. Corp.*,
132 F.3d 402 (7th Cir. 1997) ..........................................................................12

*Lane v. XYZ Venture Partners, L.L.C.*,
322 F. App'x 675 (11th Cir. 2009) ....................................................................7

*Mukamal v. Bakes*,
No. 07-20793-CIV, 2008 WL 11391157 (S.D. Fla. May 20, 2008),
aff'd, 378 F. App'x 890 (11th Cir. 2010) ........................................................20

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*,
472 U.S. 284 (1985) ...................................................................................10, 12

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) ........................................................................................10

*Paterson-Leitch Co., Inc., v. Mass. Mut. Wholesale Elec. Co.*,
840 F.2d 985 (1st Cir. 1988) .............................................................................5

*In re Plywood Antitrust Litig.*,
655 F.2d 627 (5th Cir. 1981) ..........................................................................15

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
No. SACV 12-2102 JST (ANx), 2013 WL 3936394, at *4 (C.D. Cal.
July 30, 2013) .............................................................................................13, 18

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019) .............................................................10, 11, 13

*Ramirez v. Grp. Servs.*,
  No. 6:16-cv-1831, 2017 U.S. Dist. LEXIS 95265 (M.D. Fla. June 20, 2017) ................................................................................................................5

*Retina Assocs., P.A. v. S. Baptist Hosp. of Fla., Inc.*,
  105 F.3d 1376 (11th Cir. 1997).............................................10, 12, 13

*Saunders v. Duke*,
  766 F.3d 1262 (11th Cir. 2014)...................................................................4

*Sierra v. City of Hallandale Beach, Florida*,
  904 F.3d 1343 (11th Cir. 2018)...................................................................6

*Smith v. Smith*,
  No. 5:20-CV-0748 (TJM/ML), 2020 U.S. Dist. LEXIS 160035 (N.D.N.Y. Sep. 2, 2020) ......................................................................7

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
  376 F.3d 1065 (11th Cir. 2004)...........................................17, 18, 19

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ....................................................................11

*Toys "R" Us, Inc. v. F.T.C.*,
  221 F.3d 928 (7th Cir. 2000) ....................................................................14

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) .............................................................12, 19

*United States v. Chandler*,
  388 F.3d 796 (11th Cir. 2004) ................................................................11

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009)...................................................................5

*Williams v. McNeil*,
  557 F.3d 1287 (11th Cir. 2009).................................................................5

*YMD Records, LLC v. Ultra Enters., Inc.*,
  361 F. Supp. 3d 1258 (S.D. Fla. 2019).............................................12

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) .............................................................13, 18

**Statutes**

FDUTPA ..................................................................................................2, 20

Sherman Act Section 1 .................................................2, 9, 14, 17, 18

Sherman Act Section 2 .............................................................18, 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)..........................................................................2, 5

Fed. R. Civ. P. 12(b)(6)......................................................................2, 5, 6

Fed. R. Civ. P. 15(a)(2)...........................................................................6

Fed. R. Civ. P. 72(b)(3).............................................................................5

Defendants United Wholesale Mortgage, LLC ("UWM") and Mathew Ishbia ("Mr. Ishbia") ("Defendants") respond to Plaintiffs' Objections to Report and Recommendation on Motion to Dismiss [Dkt. 63] ("Objection" or "Obj."), as follows:

## I.    <u>Introduction</u>

This lawsuit is a publicity stunt dressed up as a putative antitrust and unfair practices class action, in which Plaintiff, The Okavage Group, LLC ("Plaintiff"), attempts to use federal and state law to compel UWM to do business with Plaintiff on Plaintiff's preferred contractual terms. Plaintiff complains of UWM's decision to confront the conduct of two entities, Rocket Pro TPO ("Rocket") and Fairway Independent Mortgage ("Fairway"), whose business practices UWM believes threaten the livelihood of wholesale mortgage brokers by originating loans through wholesale brokers and then converting the customers to retail loans. To address these practices, UWM announced its "All-In Initiative" on March 4, 2021, stating it had decided to end its business relationship with brokers who chose to continue originating loans with Rocket and Fairway. Plaintiff, a mortgage broker having very little prior history with UWM, rejected UWM's offer to continue doing business, as was its right, and remains free to continue originating loans with 70+ other wholesale mortgage lenders besides UWM. Plaintiff then filed its putative class action against UWM and its President and CEO, Mr. Ishbia, asserting various federal and state law theories.

The 50-page Report and Recommendation [Dkt. 61] ("Report" or "Rpt.") entered by Magistrate Judge Lambert (the "Magistrate Judge") on Defendants' motion to dismiss, thoroughly evaluated Plaintiff's First Amended Class Action Complaint

[Dkt. 32] ("FAC"). The Report correctly found the FAC: (1) fails to allege personal jurisdiction against Mr. Ishbia; and (2) fails to state claims against UWM for violations of Sections 1 or 2 of the Sherman Act, tortious interference, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), or declaratory judgment. The Report agreed with Defendants that hyperbole cannot replace facts, and merely using buzzwords like "coercive," "boycott," and "conspiracy" is insufficient where, on the face of the FAC, this was a private contractual matter between UWM, which has chosen to fight for mortgage brokers and consumers, and Plaintiff, which prefers to do business with Rocket and Fairway. The Report recommended dismissal of Mr. Ishbia under Fed. R. Civ. P. 12(b)(2) and dismissal of all counts against UWM under Fed. R. Civ. P. 12(b)(6), and permitted Plaintiff to file a second amended complaint "if it so chooses." Rpt. 49-50.

Plaintiff's Objection paradoxically states Plaintiff plans "very shortly" to seek leave to file a second amended complaint "to supplement the factual allegations in the FAC," yet also objects to all of the Report's conclusions other than dismissal of the tortious interference and declaratory judgment counts. Obj. 2. That alone is sufficient to overrule Plaintiff's Objection as moot, as the impending amendment will supersede the FAC, and the Court will have to undertake a new review of the legal sufficiency of yet another amended complaint regardless of the outcome of this Objection. Plaintiff offers no reason for the Court to waste judicial resources on a purely advisory ruling.

Regardless, the Objection offers no meritorious basis to reject the Magistrate Judge's Report or any of its well-reasoned recommendations. Indeed, Plaintiff largely

abandons its initial arguments and authorities and offers a series of new positions and cases to this Court in the apparent hope that a change in strategy might yield a different outcome. That is both improper and pointless. Each of the Magistrate Judge's rulings is correct, and Plaintiff's new arguments and authorities do nothing to alter the soundness and accuracy of the Report.

## II.    Summary of Alleged Facts

The Report accurately recites the substance of the FAC's allegations. Rpt. 1-7. UWM is a wholesale residential mortgage lender, as are Rocket and Fairway. FAC ¶¶ 3, 7-8. Plaintiff is a mortgage broker who did minimal business with UWM for less than a year pursuant to a Broker Agreement with UWM dated November 20, 2020. *See* Broker Agreement, Motion to Dismiss FAC [Dkt. 46] ("Motion" or "Mot."), Ex. A [Dkt. 46-1] ("Ex. A").[1] Plaintiff also alleges a business relationship with Rocket and/or Fairway. FAC ¶ 41. UWM offers mortgage loans through mortgage brokers, and thus has a vertical relationship with brokers like Plaintiff. *Id.* at ¶¶ 3, 5.

This lawsuit arises out of the March 4, 2021 announcement by Mr. Ishbia, in his capacity as President and CEO of UWM, that UWM was amending its Broker Agreement to require a representation and warranty that mortgage brokers who submit loans to UWM will not also submit loans to Rocket or Fairway (the "Amendment"). FAC ¶ 12. UWM had the contractual right to amend the Broker Agreement, and a

---

[1] This Court may take judicial notice of and rely on the Broker Agreement and its amendments because they are referred to in the Amended Complaint and neither party challenges their authenticity. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007).

broker's submission of any mortgage loan application to UWM after the date of the Amendment constitutes acceptance. Ex. A § 7.08.

In announcing the amendment, Mr. Ishbia explained UWM's view that Rocket and Fairway were "out there hurting the wholesale channel" by "soliciting loan officers," "talking negatively about brokers," "going after real estate agents," "trying to cut the loan officers," and "solicit[ing] your past clients." *See* Transcript of Mar. 15, 2021 Facebook Live Video Announcement, Mot. Ex. B [Dkt. 46-2][2] at 12:14-13:16. He said there would be "no hard feelings" and brokers could "close out your loans" and "take care of consumers [e]ven if you [] decline[.]" *Id.* at 15:10–15:17. He emphasized this was a decision "going forward" and UWM would not "support[] brokers with our technology [and] with our service … to hurt the rest of the broker channel[.]" *Id.* at 15:23-16:4. He noted there were "73 other lenders," and brokers would "have options" regardless of their choice. *Id.* at 16:9-18.

Plaintiff alleges it declined UWM's Amendment and its relationship with UWM was terminated. FAC ¶¶ 34, 46, 72. Each broker had the same freedom to accept or decline the Amendment.[3] *Id.* at ¶ 41; Ex. B. Moreover, every broker contracting with UWM could exit the Broker Agreement at any time "with or without

---

[2] The FAC incorporated Mr. Ishbia's March 15, 2021 statements. FAC ¶¶ 12, 29. The Court may thus consider Mr. Ishbia's statements in ruling on Defendants' motion to dismiss because they are relied upon and incorporated into the FAC. *See Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284-85; *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citation omitted).

[3] Some lenders (like major retail banks) have ceased working with mortgage brokers altogether, offering mortgages only through their own captive loan officer employees. Plaintiff does not allege these lenders are engaged in anticompetitive conduct.

4

cause, breach or other justification, upon seven (7) days prior written notice," and remained free under the Broker Agreement to utilize any of the 70+ other wholesale mortgage lenders with no obligation to submit a single loan to UWM. Ex. A §§ 7.05, 7.06. A notice of termination immediately releases the broker from its commitment not to submit loans to Rocket or Fairway, without waiting for the notice period to elapse. *See* Amended Broker Agreement, Mot. Ex. C [Dkt. 46-3] § 3.05.

## III.  **Standard of Review**

This Court reviews the Magistrate Judge's recommendations on a dispositive motion *de novo*. Fed. R. Civ. P. 72(b)(3). *De novo* review, however, does not require the Court to consider new arguments and authorities never raised before the Magistrate Judge. *See Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009). A litigant is not permitted to "set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Id*. (quoting *Paterson-Leitch Co., Inc.*, *v. Mass. Mut. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988)).

Plaintiff has the initial burden under Rule 12(b)(2) to allege "sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (additional citations omitted). Dismissal is required if Plaintiff does not meet its burden. *Ramirez v. Grp. Servs.*, No. 6:16-cv-1831, 2017 U.S. Dist. LEXIS 95265, at *4 (M.D. Fla. June 20, 2017).

To survive a Rule 12(b)(6) motion, Plaintiff "must state a claim for relief that is 'plausible on its face.'" *Sierra v. City of Hallandale Beach, Florida*, 904 F.3d 1343, 1353

n. 9 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements" will not suffice. *Twombly*, 550 U.S. at 555.

IV.    <u>Argument</u>

A.    **Plaintiff's Objection Should Be Denied as Moot**

The Report permits Plaintiff to file a second amended complaint, and Plaintiff's Objection confirms its intention to do so. Rpt. 50; Obj. 2. All of Plaintiff's objections to the Report are therefore moot. "An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006). Accordingly, Plaintiff's amendment[4] will require the Court to yet again assess the viability of Plaintiffs' claims as re-alleged in the second amended complaint, rendering further consideration of the allegations of the first amended complaint moot. *See Jackson v. Stoke*, No. 4:21-cv-348, 2022 U.S. Dist. LEXIS 135205, at *1 (S.D. Ga. July 28, 2022) (holding plaintiff's objection to report and recommendation moot where plaintiff also submitted proposed amended complaint); *Smith v. Smith*, No. 5:20-CV-0748 (TJM/ML), 2020 U.S. Dist. LEXIS

---

[4] Though Plaintiff states it plans to seek leave to amend, it is unclear whether leave is required where the Report already permits Plaintiff to file an amended pleading. (Rpt. 50). Even assuming leave is required, the same standard of legal sufficiency is applied to test the futility of a motion for leave to amend under Fed. R. Civ. P. 15(a)(2) and a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation omitted) (amendment may be denied as futile "when the complaint as amended would still be properly dismissed."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (noting futility means "inadequacy as a matter of law"). Thus, whatever the procedural posture, Plaintiff's amendment will require a new analysis of the legal sufficiency of the second amended complaint and its superseding allegations.

160035, at *1-2 (N.D.N.Y. Sep. 2, 2020) (similar); *Hunter v. Kalmanson*, No. 5:14-cv-410-Oc-22PRL, 2014 U.S. Dist. LEXIS 146317, at *3 (M.D. Fla. Oct. 14, 2014) (similar). For that reason alone, Plaintiff's Objection should be overruled. The Court should assess the sufficiency of Plaintiff's amended, operative complaint rather than render an advisory opinion.

> **B.    The Report Correctly Concluded the Court Lacks Personal Jurisdiction Over Mr. Ishbia**

The Report correctly determined that the Court lacks personal jurisdiction over Mr. Ishbia. The Magistrate Judge properly assessed the pleadings to determine if the FAC alleges sufficient facts under Florida's corporate shield doctrine to assert personal jurisdiction over a nonresident corporate employee sued for actions taken solely in his corporate capacity. Rpt. 19-20. The Magistrate Judge correctly concluded the FAC's conclusory allegations regarding Mr. Ishbia fail to allege the requisite "personal connection" with Florida. Rpt. 20.

Plaintiff objects that the FAC recounts the "precise substance" of Mr. Ishbia's statements directed to brokers, including brokers "located in Florida." Obj. 24. That misses the point. Florida's corporate shield doctrine "prohibit[s] the exercise of jurisdiction under the Florida long-arm statute over corporate employees whose only conduct in Florida was in furtherance of a corporation's interests." *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678 (11th Cir. 2009) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). The "precise substance" of Mr. Ishbia's words, according to Plaintiff, was that brokers working with Rocket and Fairway (regardless

of location) "can't work *with UWM* anymore, effective immediately." Obj. 24 (emphasis added). That statement is directed to UWM's interests alone. Plaintiff's new cases are inapposite, as they do not address the corporate shield doctrine and deal only with personally self-interested actions subjecting a defendant to personal jurisdiction. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267-68 (11th Cir. 2010) (company's "purposeful contact" subjected it to jurisdiction); *Healthe, Inc. v. High Energy Ozone LLC*, 533 F. Supp. 3d 1120, 1124-25 (M.D. Fla. 2021) (similar).

Plaintiff also objects that the corporate shield doctrine does not apply to intentional torts. Obj. 24-25. Though the Objection does not oppose the Magistrate Judge's recommended dismissal of Plaintiff's tortious interference claim, Plaintiff asserts for the first time in its Objection that an antitrust violation can be deemed an intentional tort. Rpt. 20-21, 45-48. Plaintiff also asserts for the first time that its allegations suffice to establish antitrust liability as to Mr. Ishbia personally because it alleges he conducted the video presentation, explained the Amendment, and thereby "knowingly participated" in the supposed conspiracy. Obj. 22-23. Plaintiff did not argue either point in its Response and Brief in Opposition to Defendants' Motion to Dismiss [Dkt. 53] ("Opposition" or "Opp."). The Court should thus disregard them. *See* § III, *supra*. Regardless, Plaintiff has alleged no viable antitrust violations at all, *see* §§ IV.C-D, *infra*, much less offered any authority for the extraordinary proposition that Mr. Ishbia's speech alone can constitute "knowing participation" in such a violation.

### C.    The Report Correctly Concluded the FAC Fails to State a Claim Under Section 1 of the Sherman Act

The Report also correctly determined the FAC fails to state a claim for violation of Section 1 of the Sherman Act, whether couched as unlawful restraint of trade for an alleged horizontal boycott or unlawful steering. Rpt. 21-41. Plaintiff's objections are invalid and should be overruled.

### 1.    The FAC Does Not State a Claim for Horizontal Boycott

The Report first evaluated and correctly found insufficient Plaintiff's claim that UWM engaged in a "concerted action and course of conduct" with its participating mortgage brokers to boycott Fairway and Rocket, force them out of business, and thereby eliminate competition. Rpt. 22. The Magistrate Judge observed that the FAC is an improper "shotgun" pleading and is "confusing and laden with buzz words," but nevertheless evaluated it under both a *per se* and rule-of-reason analysis, correctly concluding Plaintiff fails to allege a horizontal conspiracy and does not state a claim for violation of Section 1 of the Sherman Act. Rpt. 22-41. The Magistrate Judge's *per se* analysis found the FAC fails to allege a horizontal agreement between UWM and its direct competitors, fails to provide sufficient factual allegations supporting a "hub-and-spoke conspiracy," and fails to allege sufficient market power. Rpt. 28-38. The Magistrate Judge's rule-of-reason analysis found the FAC lacks sufficient factual allegations to plausibly allege that UWM's conduct had the potential for a genuine adverse effect on competition. *Id.* at 38-41. Both analyses are correct, and Plaintiff fails to mount any serious challenge to either determination.

a.    The Report's *Per Se* Analysis Is Correct

The Magistrate Judge correctly heeded the U.S. Supreme Court's and Eleventh Circuit's caution "against the haphazard expansion of the 'group boycott label' and the concomitant imposition of *per se* liability." *Retina Assocs., P.A. v. S. Baptist Hosp. of Fla., Inc.*, 105 F.3d 1376, 1381 (11th Cir. 1997) (quoting *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986)). "[E]asy labels do not always supply ready answers," and the Court should be wary of "pigeonhole[s]" to invoke the *per se* rule. *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 746 (11th Cir. 1998) (quoting *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 8 (1979)). "The mere allegation of a concerted refusal to deal does not suffice because not all concerted refusals to deal are predominantly anticompetitive." *Nw. Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284 (1985). Each of the Report's reasons for rejecting the "boycott" label here is correct.

First, Plaintiff does not allege facts establishing the most basic element of a group boycott, a "horizontal agreement among direct competitors." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1271 (11th Cir. 2019) (quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998)). The relationship between UWM and its brokers is vertical; they are not competitors. *See* FAC ¶¶ 3, 5. Thus, Plaintiff's allegation that 93% of UWM's brokers presented with the Addendum agreed to sign—and some expressed their support enthusiastically—does not establish a horizontal agreement among competitors. FAC ¶¶ 12-13, 33. Plaintiff has alleged no facts demonstrating any "uniformity that would be unexpected or idiosyncratic" or

10

"rule out the possibility" that the brokers "were acting independently" and in their individual best interests. *Quality Auto*, 917 F.3d at 1271 (quoting *Twombly*, 550 U.S. at 553-54). "The Court cannot infer such an agreement from what is simply a unilateral business decision." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1361 (N.D. Ga. 2012). A market participant "may choose with whom he will do business and with whom he will not do business[.]" *Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*, 710 F.2d 752, 772-73 (11th Cir. 1983).

Second, Plaintiff's attempt to re-frame the supposed "group boycott" as a "hub-and-spoke conspiracy" fails. FAC ¶¶ 48-50, 71, 104. As the Report correctly found, Plaintiff's "hub-and-spoke" theory is a "rimless wheel": it alleges one entity (UWM) as the "hub" and ***vertical*** agreements between the hub and each "spoke" (the mortgage brokers), but no accompanying ***horizontal*** agreement to form the "rim" of the wheel. *See* Rpt. 32; *United States v. Chandler*, 388 F.3d 796, 807 (11th Cir. 2004); *In re Disposable Contact Lens Antitrust*, 215 F. Supp. 3d 1272, 1292 (M.D. Fla. 2016). Because "a wheel without a rim is not a single conspiracy," it cannot supply the basis for an antitrust conspiracy claim. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-204 (4th Cir. 2002); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3rd Cir. 2010); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435-36 (6th Cir. 2008).

Third, Plaintiff has not alleged that UWM and its brokers "possess 'market power or exclusive access to an element essential to effective competition,'" meaning

*per se* treatment "is not warranted[.]" *Retina Assocs.*, 105 F.3d at 1381 (quoting *Nw. Wholesale Stationers, Inc.*, 472 U.S. at 296). Market share remains "the principal judicial device for measuring actual or potential market power[.]" *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993). *See* Obj. 14-15. Here, the FAC concedes mortgage lending through independent brokers comprises only 15.8% of residential mortgage loan originations, and UWM only has "approximately 34% market share" of that channel. FAC ¶¶ 6, 96. Thus, Plaintiff's allegation that 93% of brokers presented with UWM's Addendum agreed to it, *see id.* at ¶ 13, at most represents less than 5% (15.8% x 34% x 93%) of the residential mortgage loan origination market. A market share that low falls well short of "market power." *See Retina Assocs.*, 105 F.3d at 1384 (15% market share insufficient); *L.A.P.D., Inc. v. General Elec. Corp.*, 132 F.3d 402, 405 (7th Cir. 1997) (a "5% or 10% or 15% share of a normal market" is insufficient).

### b.    The Report's Rule-of-Reason Analysis Is Correct

The Magistrate Judge also correctly found the FAC fails to allege an unlawful restraint of trade violation under the rule of reason, because it lacks any allegations setting forth unreasonable effects on competition in the relevant market. *See YMD Records, LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258, 1265 (S.D. Fla. 2019). *See also* Rpt. 38-41. The Magistrate Judge appropriately focused on the lack of allegations of UWM's market power and the absence of facts sufficient to show the potential for "genuine adverse effects on competition." Rpt. 39-41. In addition to those grounds, because UWM's Broker Agreements contain no minimum obligation to submit loans to UWM, permit brokers to submit loans to more than 70 other wholesale lenders

while under contract with UWM, are of short duration, and can be terminated upon short notice, they are facially lawful, "pose little threat to competition," *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012), and "do not—by themselves— sustain the Sherman Act claims." *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12-2102 JST (ANx), 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013).

c.    The Objection's Contrary Arguments Fail

The Objection's efforts to counter the Magistrate Judge's analysis are not well-founded. Plaintiff devotes most of its Objection to the *per se* analysis, initially attempting to assert "parallel conduct" among the brokers, communications between the brokers in the form of public expressions of enthusiasm of UWM's initiative, and the brokers' agreement to UWM's so-called "ultimatum" (supposedly against their individual self-interest) as "further factual enhancements" in support of a conspiracy. Obj. 7-12. But Plaintiff fails to show how any of these supposed "enhancements" plausibly tend to rule out unilateral, independent action by self-interested brokers expressing enthusiasm for one wholesale supplier's public stance against two entities that were using detrimental market practices to erode the brokers' customer base. *See Quality Auto*, 917 F.3d at 1271; *Constr. Aggregate Transp.*, 710 F.2d at 772-73; *Bolinger*, 838 F. Supp. 2d at 1361. That is the pleading burden Plaintiff must satisfy to show this is not a mere "haphazard expansion" of the narrow *per se* boycott label to an improper context. *Retina Assocs.*, 105 F.3d at 1381. As the Supreme Court cautioned in *Twombly*, "[a] statement of parallel conduct, even conduct consciously undertaken," without "further circumstances pointing towards a meeting of the minds," is "much like a

naked assertion of conspiracy" and "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" 550 U.S. at 557 (citation omitted).

Indeed, Plaintiff's own cited authorities confirm the "enhancements" asserted here fall well short of what is needed to allege a plausible conspiracy. In *In re Ins. Brokerage*, 618 F.3d at 322-36, the alleged conspiracy concerned numerous competing insurance companies collaborating with brokers to allocate and funnel clients, thereby insulating themselves from competition, yet still *failed* to state a claim under Section 1. In *In re Disposable Contact*, 215 F. Supp. 3d at 1295-1301, the alleged conspiracy concerned *all* of the major competing manufacturers of disposable contact lenses simultaneously adopting Unilateral Pricing Policies that had the effect of raising disposable contact lens prices market-wide. And in *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 932 (7th Cir. 2000), the alleged conspiracy involved *all* major toy suppliers abruptly reducing sales to warehouse clubs following individual meetings with the defendant and contrary to internal documents indicating the suppliers had wanted to expand their retail outlets and reduce their dependence on the defendant. None of these cases remotely resemble what Plaintiff alleges here: a single wholesale residential mortgage lender altering its own individual terms of dealing with its subset of brokers, without committing them to source any loans from UWM, leaving them free to work with 70+ other wholesale lenders, and allowing them to exit at any time with minimal notice. The fact that the brokers were enthusiastic evidences only their individual beliefs that UWM's proposal *was* in their self-interest and points to unilateral,

individual action—not a commitment to a common scheme, a common plan, or a "rimmed" wheel.

Plaintiff's next objection is a new argument, not presented to the Magistrate Judge, that UWM's supposed "coordinating and facilitating" role is "enough" to establish a horizontal conspiracy. Obj. 12. The Court should disregard that argument. *See* § III, *supra*. Even if it does not, Plaintiff's authority is entirely inapposite, as it does not concern a hub-and-spoke conspiracy, but rather a traditional horizontal pricing conspiracy between direct competitors where the record contained direct documentation of planned concerted action among competitors. *See In re Plywood Antitrust Litig.*, 655 F.2d 627, 632-34 (5th Cir. 1981) (detailing documentary proof of a price-fixing conspiracy among softwood plywood manufacturers).

The Objection next attempts to reduce the Magistrate Judge's Report to just two cases, ignoring more than a dozen other cases cited in the Report's *per se* analysis. *Compare* Obj. 13-14 *with* Rpt. 28-38. Even as to the two cases discussed, the Objection is off base. Having previously cited *In re Ins. Brokerage* in support of its position (Obj. 9-10), the Objection now hastens to distinguish it arguing the facts "were far different than in this case[.]" Obj. 13. The facts were different; but the difference is not in Plaintiff's favor. There, the alleged hub-and-spoke conspiracy had far greater market penetration, as plaintiffs alleged "broker-centered conspiracies" where insurance brokers allegedly entered into vertical customer steering schemes with ***multiple*** insurers through contingent commission agreements to reduce competition. *In re Ins. Brokerage*, 618 F.3d at 327. Even faced with a market-wide phenomenon, alleged simultaneous

15

adoption of such agreements among numerous brokers and numerous insurers, and information-sharing between the spokes, the Third Circuit concluded it could not "plausibly infer a horizontal agreement" among the brokers' insurer-partners from the "mere fact" that each insurer entered into a similar contingent commission agreement, because the "obvious explanation" for each insurer's decision was self-interest. *Id.* at 326-28. Likewise, in *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-0827 (ECT/JFD), 2022 WL 1017770, at *7 (D. Minn. Apr. 5, 2022), the court held the spokes' knowledge of one another's deals with the hub did not establish a conspiracy. Each case refutes Plaintiff's suggestion that the brokers' mere enthusiasm evidences conspiracy.

For its last argument on the *per se* analysis, the Objection faults the Report's "market power" analysis by asserting the Magistrate Judge "failed to consider" the "evidence on the video" and UWM's "market power aside from its market share." Obj. 14. Plaintiff posits that if "Rocket and Fairway were cut off from 70%-90% or more of the referrals they received from brokers," they would lose "essential" business. Obj. 14-15. It is unclear where Plaintiff is getting its claim that the so-called "boycotting" brokers represent "70%-90% or more" of referrals to Rocket and Fairway.[5] There is no such allegation in the FAC, nor did Plaintiff present any such argument below. *See* Opp. To the extent the Magistrate Judge "failed to consider" such

---

[5] The Objection refers to "Mr. Ishbia's statements" regarding an "expectation that 70%-90% of referrals would be eliminated by the boycott[.]" Obj. 16. That appears to be a reference to speculation by Mr. Ishbia about what would happen if large numbers of brokers stopped doing business with Rocket and Fairway. *See* Ex. B at 17:2-18:1. Plaintiff does not allege, nor can it, that anywhere close to 70%-90% of Rocket's and Fairway's referring brokers entered into the Amendment with UWM.

16

an argument, it is because Plaintiff neither alleged nor argued the point. Regardless, Plaintiff is not suing the brokers; it is suing UWM, and does not allege UWM has the market power necessary to coerce 70% to 90% of brokers to stop dealing with Rocket and Fairway. Plaintiff also suggests 34% market share may suffice for a Section 1 violation if it would endanger competition. Obj. 15-17. But the FAC alleges no danger to competition. To the contrary, Plaintiff's allegations establish that UWM's overall market share of residential mortgage loan originations is less than 5%. FAC ¶¶ 6, 96. As the Magistrate Judge correctly found, the FAC does not allege UWM's market dominance, nor its ability to cut Plaintiff off from other wholesale mortgage lenders, nor what percentage of brokers in the marketplace joined the putative "boycott," nor what the effect of the "boycott" was vis-à-vis the relevant market. Rpt. 33-38.

As for the Report's rule-of-reason analysis, Plaintiff repeats its flawed criticisms of the Magistrate Judge's market power analysis, discussed above. It then insists the FAC alleges "actual detrimental effects" on competition supporting an unlawful restraint of trade claim, because Rocket and Fairway offer lower prices and more innovative products and the "boycott" interfered with the "autonomy of the marketplace" and consumer choice. Obj. 17-19. But mere conclusory assertions do not constitute actual detrimental effects, nor does "damage to a single competitor, even as a result of deliberate misinformation[.]" *Spanish Broad. Sys. Of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1072 (11th Cir. 2004) (citation omitted). Plaintiff must allege facts demonstrating "actual harm to competition," that is, "specific damage done to consumers in the relevant market." *Id*. Absent "actual damage done to

17

competition," Plaintiff cannot satisfy the "actual detrimental effects" standard under the rule-of-reason analysis. *Id.* at 1073. Here, as the Magistrate Judge found, Plaintiff has not even defined the relevant market, much less alleged facts demonstrating actual harm done to consumers where those brokers entering into the Amendment with UWM still had access to 70+ wholesale residential mortgage lenders. Rpt. 39-40. Moreover, as discussed above, UWM's Broker Agreements are presumptively lawful due to their lack of minimum obligations, non-exclusivity, short duration, and easy terminability. *See ZF Meritor*, 696 F.3d at 270; *Pro Search,* 2013 WL 3936394, at *4.

2.    The FAC Does Not State a Claim for Steering

The Report found Count II of the FAC fails to state a claim for unlawful steering under Section 1 of the Sherman Act. Rpt. 41. Plaintiff's Objection does not challenge that determination, and it should be adopted.

**D.    The Report Correctly Concluded the FAC Fails to State a Claim Under Section 2 of the Sherman Act**

The Report further correctly determined the FAC fails to state a claim for attempted monopolization in violation of Section 2 of the Sherman Act. Rpt. 42-45. The Magistrate Judge found that, even accepting *arguendo* Plaintiff's assumption that the relevant market is the wholesale lending market, the FAC fails to plead facts plausibly suggesting UWM possessed enough market power to pose a danger of monopolization. *Id.* That is plainly right. UWM's alleged 34% of the wholesale lending market—even assuming that is the correct market definition—is insufficient to satisfy the "dangerous probability of achieving monopoly power" element of a Section

18

2 claim. A "dangerous probability of success arises when the defendant comes close to achieving monopoly power in the relevant market." *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 721 F.3d 1281, 1285 (11th Cir. 2013). Thus, Plaintiff must allege UWM possesses "enough power or potential power in this relevant market [to] harm competition." *Spanish Broad. Sys.*, 376 F.3d at 1074. The Magistrate Judge correctly found the FAC lacked factual allegations showing UWM either "comes close to" monopoly power or has "enough power or potential power" to harm competition. *See U.S. Anchor Mfg.*, 7 F.3d at 1001 (holding "less than 50 percent of the market at the time" and "throughout the time" of the alleged predation posed "no dangerous probability of success"); *see also* Rpt. 43-44 (collecting cases).

Plaintiff objects that a "dangerous probability" exists, repeating its new assertion that UWM's "own statements" indicate it could "cut off its two largest competitors' access to more than 70% of brokers." Obj. 20. No such allegation appears in the FAC, nor did Plaintiff present any such argument to the Magistrate Judge. Regardless, UWM's "statements" are not the measure of "dangerous probability"; it is whether UWM comes close to *achieving* monopoly power. Plaintiff does not allege, nor can it, that UWM actually cut off Rocket's or Fairway's access to a substantial share of brokers, or came close to eliminating them from the market. Plaintiff also points to supposed market "risk factors" in the UWM Prospectus, which Plaintiff attaches for the first time to its Objection and never argued to the Magistrate Judge. Obj. 20-21, Ex. B. Not only is that improper, *see* § III, *supra*, but it says nothing to suggest UWM has ever come close to achieving monopoly power.

19

### E.    The Report Correctly Concluded the FAC Fails to State a Claim for Violations of FDUTPA

Finally, the Report correctly concluded the FAC does not state a claim for violations of FDUTPA, because the state statutory claim is predicated on Plaintiff's asserted federal antitrust violations, and thus dismissal of the antitrust claims requires dismissal of the FDUTPA claim. Rpt. 48-49. That is correct. Count VIII for violation of FDUTPA is a derivative claim. *See* FAC ¶¶ 154, 156. It therefore fails for the same reasons as the antitrust claims on which it is predicated. Rpt. 48-49.

Plaintiff incorporates its earlier arguments, and also objects that the Magistrate Judge "failed to address" paragraph 154(B), where Plaintiff alleges Defendants "intentionally and maliciously made false representations," which Plaintiff asserts is a separate and independent basis for a FDUTPA violation. Obj. 23. That is yet another argument the Magistrate Judge "failed to address" only because Plaintiff never made it. *See* Opp. 36-38. Regardless, Plaintiff does not allege it suffered "actual damages" caused by Defendants' supposed "false representations," and thus does not satisfy the elements of FDUTPA. *See City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008); *Mukamal v. Bakes*, No. 07-20793-CIV, 2008 WL 11391157, at *5 (S.D. Fla. May 20, 2008), aff'd, 378 F. App'x 890 (11th Cir. 2010); *see also* Mot. 37-39.

### V.    <u>Conclusion</u>

Wherefore, for the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiff's Objection, accept the Magistrate Judge's Report, dismiss the FAC in its entirety, and grant Defendants any other relief it deems necessary.

Dated: August 24, 2022                          Respectfully submitted,

                                                **GREENBERG TRAURIG, P.A.**
                                                401 East Las Olas Boulevard
                                                Suite 2000
                                                Fort Lauderdale, Florida 33301
                                                Telephone: 954-765-0500
                                                Fax: 954-765-1477

                                                By:    /s/ *Glenn E. Goldstein*
                                                       **Glenn E. Goldstein**
                                                       Florida Bar No. 435260
                                                       Email: GoldsteinG@gtlaw.com
                                                       depasqualem@gtlaw.com
                                                       FLService@gtlaw.com

                                                       **Avi Benayoun, Esquire**
                                                       Florida Bar No. 0151696
                                                       Email: benayouna@gtlaw.com
                                                       yeargina@gtlaw.com
                                                       FLService@gtlaw.com

                                                       **Sabrina D. Niewialkouski**
                                                       Florida Bar No. 0123630
                                                       Email: Niewialkouskis@gtlaw.com
                                                       Anastasiya.Karant@gtlaw.com
                                                       FLService@gtlaw.com

                                                *Attorneys for Defendants United Wholesale*
                                                *Mortgage, LLC and Mat Ishbia*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Glenn E. Goldstein*
GLENN E. GOLDSTEIN