UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

    Plaintiff,

v.

UNITED WHOLESALE
MORTGAGE, LLC and
MATTHEW ISHBIA, individually

    Defendants.

Case No. 3:21-cv-448-BJD-LLL

Hon. Brian J. Davis

Magistrate Judge Laura Lothman Lambert

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ............................................................................................................1

SUMMARY OF SUPPLEMENTAL ALLEGATIONS...................................................1

ARGUMENT ...................................................................................................................3

    I.    Leave to File a Supplemental Complaint Should Be Freely Granted...................................................................................................3

    II.    There Will Be Substantial Efficiencies to Be Derived From Supplementing the SAC ...................................................................................4

    III.    Additional Factors Weigh in Favor of Granting Leave ........................7

        A.    There Was No Unreasonable Delay and Supplementation Would Not Cause Prejudice to Defendants...............................................................................................7

        B.    Supplementation Would Not Be Futile................................... 8

CONCLUSION ............................................................................................................... 8

47204589.11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Harris v. Garner*,
  216 F.3d 970 (11th Cir. 2000) ....................................................................................3

*Henderson v. Stewart*,
  82 F.3d 415 (5th Cir. 1996) ........................................................................................3

*Keith v. Volpe*,
  858 F.2d 467 (9th Cir. 1988) ......................................................................................4

*Kleiner v. First Nat'l Bank of Atlanta*,
  526 F. Supp. 1019 (N.D. Ga. 1981) ............................................................................7

*La Salvia v. United Dairymen of Ariz.*,
  804 F.2d 1113 (9th Cir. 1986) ................................................................................... 8

*Lussier v. Dugger*,
  904 F.2d 661 (11th Cir. 1990) ................................................................................3, 7

*Manning v. City of Auburn*,
  953 F.2d 1355 (11th Cir. 1992) ..................................................................................3

*McWane, Inc. v. FTC*,
  783 F.3d 814 (11th Cir. 2015) ....................................................................................5

*New Amsterdam Cas. Co. v. Waller*,
  323 F.2d 20 (4th Cir. 1963) ........................................................................................4

*Quaratino v. Tiffany & Co.*,
  71 F.3d 58 (2d Cir. 1995) ............................................................................................7

*R.E.B., Inc. v. Ralston Purina Co.*,
  525 F.2d 749 (10th Cir. 1975) ................................................................................... 8

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir.1981) ....................................................................................... 8

*West Alabama Women's Ctr. v. Miller*,
  318 F.R.D. 143 (M.D. Ala. 2016) ...............................................................................4

## Other Authorities

6A C. Wright, A. Miller, & M.K. Kane, *Federal Practice & Procedure* § 1504 (1990) ............................................................................................... 7, 8

Federal Rule of Civil Procedure 15 ................................................................... 3, 4

Horizontal Merger Guidelines, 2 Fed. Trade Comm'n § 5.3 ................................. 6

Sherman Act §§ 1 and 2 ........................................................................................ 4

# INTRODUCTION

Plaintiff The Okavage Group, LLC ("Okavage") moves for leave to file a Supplemental Complaint in this case in the form of Exhibit A, attached hereto. Since the filing of the Second Amended Complaint ("SAC"), and after the briefing on Defendants' Motion to Dismiss (Doc. 73), Defendants Mat Ishbia and United Wholesale Mortgage, LLC ("UWM") have made numerous statements which squarely support Okavage's antitrust claims. Additionally, UWM's most recent market share is dramatically higher than in the past, also strongly supporting these claims. Finally, a number of firms have left the wholesale lending market since the filing of the SAC, further cementing UWM's dominance and supporting Okavage's claims. These statements and disclosures were not made until the end of February and beginning of March of this year, and therefore could not possibly have been learned until after the filing of the SAC.

Permitting Okavage to supplement the SAC to include these facts would promote the efficient disposition of this case, and permit the merits of the Plaintiff's allegations to be tested on the basis of a complete record.

## SUMMARY OF SUPPLEMENTAL ALLEGATIONS

As the SAC explains, SAC at ¶¶1-2, this case is brought to challenge a group boycott initiated and coerced by Defendants which cut off thousands of mortgage brokers from an opportunity to refer their customers to the mortgage lender of their choice. UWM's ultimatum and the resulting boycott required brokers to

cease doing business with Fairway Mortgage and Rocket Pro TPO or face termination of their business relationship with UWM.

UWM's brokers who continued to use Rocket and Fairway were harmed (and their customers were harmed) by the unavailability of lower priced, better quality mortgages from Rocket and Fairway. Brokers who refused to participate in the boycott were harmed because they no longer could utilize the services of UWM, the largest wholesale mortgage broker.

The supplemental allegations consist of only nine additional paragraphs (paragraphs 101-109), as well as adjustments to the introduction and incorporation of paragraphs in the counts to reference these nine paragraphs. However, they include highly significant evidence.

The proposed Supplemental Complaint adds allegations relating to disclosures made by UWM, and statements by UWM's CEO and co-Defendant, Mat Ishbia, during February and March of 2023. They include, among other things:

1. The disclosure that UWM now has a 54% market share among wholesale residential lenders. Supplemental Complaint at ¶ 104.

2. The statement that UWM's greater share, and the corresponding lesser share possessed by its strongest rival, Rocket Mortgage, is directly due to UWM's Ultimatum requiring mortgage brokers to cease using UWM's main competitors Rocket and Fairway if they wished to continue utilizing UWM. *Id.* at ¶ 105.

3. The statement that no broker "is willing to take [the] chance" of losing UWM's services. *Id.* at ¶ 103.

4. Other evidence of UWM's market power, including statements that UWM controls its margins. *Id.* at ¶ 101-102, 106-109.

47204589.11

Additionally, a number of firms, including at least two major lenders, have exited or drastically curtailed their activity in the relevant market. *See* Supplemental Complaint at ¶ 106.

## ARGUMENT

### I. Leave to File a Supplemental Complaint Should Be Freely Granted

Under Federal Rule of Civil Procedure 15(d), the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).[1] The 11th Circuit has explained that "[a] supplemental pleading is an appropriate vehicle by which to set forth new facts in order to update the earlier pleading." *Lussier v. Dugger*, 904 F.2d 661, 670 (11th Cir. 1990) (citation and quotations omitted).

"[A]n application for leave to file a supplemental pleading is addressed to the discretion of the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties." *Henderson v. Stewart*, 82 F.3d 415 (5th Cir. 1996); *see also Harris v. Garner*, 216 F.3d 970, 984 (11th Cir. 2000) (noting "the liberal allowance of amendments or supplements to . . . pleading under Rule 15"). Indeed, courts have

---

[1] In contrast, "an amendment to the pleadings pursuant to Federal Rule of Civil Procedure 15(a) encompasses facts or legal claims in existence at the time the original pleading was filed." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 n.8 (11th Cir. 1992) (citing 6A C. Wright, A. Miller, & M.K. Kane, *Federal Practice & Procedure* § 1504, at 184 (1990)).

47204589.11

long held that supplemental pleadings are "[s]o useful [and] of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears . . . ." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988); *West Alabama Women's Ctr. v. Miller*, 318 F.R.D. 143, 148 (M.D. Ala. 2016).

In addressing the appropriateness of a supplemental complaint, courts typically apply (where relevant) many of the same fairness factors considered on a motion to amend the pleadings under Rule 15(a), such as "Would the supplementation be futile? Would a nonmovant be prejudiced? Has there been unreasonable delay in presenting the supplementation? And would the supplementation facilitate the efficient resolution of current claims as well as any new ones?" *Miller*, 318 F.R.D. at 147–48 (quoting *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015)). As described below, these factors argue in favor of supplementation in this case.

## II. There Will Be Substantial Efficiencies to Be Derived From Supplementing the SAC

The Supplemental Complaint will make an important contribution to this case, because it will add highly relevant and specific factual allegations relating to two contested issues emphasized in Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 73) ("Motion to Dismiss"): whether UWM has sufficient market power under Sections 1 and 2 of the Sherman Act, and whether UWM's actions have had an impact on the market.

In their Motion to Dismiss, Defendants argued that UWM's share was too small to create market power (citing UWM's currently alleged 34% share) and that there was no dangerous probability that its share would increase sufficiently to create monopoly power. Doc. 73 at pp.32-33. The new facts cited in the proposed Supplemental Complaint directly address these issues. The Supplemental Complaint explains that UWM now has a market share of 54%, Supplemental Complaint at ¶ 104, more than sufficient to support a conclusion that it has market power and a dangerous probability of achieving monopoly power under the cases cited by both parties. *See* Doc. 79 at pp.27-29; Doc. 73 at pp.32-34. The Supplemental Complaint also addresses another important indicium of market power, that Mr. Ishbia says that UWM controls its margins. Supplemental Complaint at ¶ 109 (including Mr. Ishbia's statements that UWM has "great control of our margins" and that "we do control the margins in this industry"). Control over price is one of the definitions of monopoly power. *McWane, Inc. v. FTC*, 783 F.3d 814, 830 (11th Cir. 2015) ("Monopoly power is the ability 'to control prices or exclude competition.'" (citation omitted)).

The proposed Supplemental Complaint also alleges that Mr. Ishbia recently attributed UWM's growth in share to his ultimatum that brokers cease using Rocket and Fairway in order to use UWM, because under those circumstances, brokers felt they had to choose UWM. *See* Supplemental Complaint ¶ 103 ("The penalty of working with Rocket . . . is you don't get to work with UWM. And nobody is willing to take that chance . . . . That's why of the 12,000 brokers,

5

11,500 all stayed with UWM."). UWM's ability to successfully impose these burdensome conditions on brokers is further evidence of its market power, *see* Doc. 79 at pp.20-21, and also evidence of the impact of the boycott.

These statements on market share are relevant in yet another way. The Ultimatum and boycott also harmed competition because they increased UWM's market dominance and thereby harmed the competitive structure of the market. Under the Herfindahl-Hirschman Index ("HHI") test, a measure of market concentration set forth by the federal antitrust agencies in their Horizontal Merger Guidelines, competition is assessed by summing the squares of the market shares of the competitors. Horizontal Merger Guidelines, 2 Fed. Trade Comm'n § 5.3 (2022-2023).

The Ultimatum and boycott increased UWM's market share in the services market from 34% to 54%, thus increasing the HHI by more than 1,500 points to more than the 2,500 level assessed as "highly concentrated." Horizontal Merger Guidelines at § 5.3. The transaction thus increased UWM's share by an amount that is presumed to be anticompetitive under the FTC/DOJ Merger Guidelines. *Id.*

Finally, the supplemental allegations reference the exit from the market or curtailing of competition from a number of competitors, further enhancing UWM's dominance.

Permitting Okavage to timely "set forth new facts in order to update" the SAC will thus promote the most efficient disposition of the controversy on the

6

47204589.11

basis of the full universe of facts at issue. *Lussier*, 904 F.2d at 670. It would not be proper to determine whether Okavage has plausibly alleged sufficient facts in support of its claims without considering significant new facts that further support them.

### III. Additional Factors Weigh in Favor of Granting Leave

#### A. There Was No Unreasonable Delay and Supplementation Would Not Cause Prejudice to Defendants

There is no reason, based on undue delay or prejudice, to deny leave here. First, courts do not readily find undue delay, especially where, as here, the movant seeks to supplement a pleading with relevant facts and circumstances that occurred only *after* the pleading to be supplemented was filed. And in any case, in the analogous context of amendment, "under the precedent of this Circuit, mere delay on Plaintiff's part in filing a proposed amendment to a complaint does not justify denying the amendment." *Kleiner v. First Nat'l Bank of Atlanta*, 526 F. Supp. 1019, 1020 (N.D. Ga. 1981) (15(a)) context); Wright & Miller, *supra* at § 1488 ("In most cases, delay alone is not a sufficient reason for denying leave.") Thus, for example, courts have allowed supplemental pleadings even where the moving party waited over a year after discovering the new information giving rise to the motion to supplement. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (granting motion to supplement).

Second, absent a showing of specific harm, courts likewise do not readily deny a motion to supplement on the basis of "undue prejudice." For example, a number of courts have granted a party's motion to supplement after the close of

7

47204589.11

discovery and where allowing supplementation would require reopening discovery. *La Salvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). Courts have even allowed parties to supplement pleadings where trial was on the horizon. *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir. 1975) (amendment allowed five weeks before trial).

Neither delay nor undue prejudice can be shown here. Ishbia's and UWM's admissions occurred within the last few weeks, after the filing of the SAC and Defendants' Motion to Dismiss. *See* Supplemental Complaint at ¶¶ 101-109. Nor could Ishbia or UWM claim to be unduly prejudiced by supplementation of the SAC to include their own statements, reports, and admissions.

### B. Supplementation Would Not Be Futile

Futility can represent a defense to supplemental allegations, but such a defense is disfavored. Numerous courts have held that only proposed supplemental pleadings that are "clearly . . . frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." Wright & Miller, *supra* at § 1487 (collecting cases). Here, the proposed supplemental allegations are plainly relevant, material, and substantial.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that supplementation should be permitted.

8

47204589.11

Date: March 24, 2023

Respectfully Submitted,
**PARRISH & GOODMAN, PLLC**
/s/ Robert H. Goodman
ROBERT H. GOODMAN
Florida Bar No.: 1008059
13031 McGregor Blvd., Suite 8
Fort Myers, Florida 33919
Phone: (813) 643-4529
Facsimile: (813) 315-6535
Primary: rgoodman@parrishgoodman.com
Secondary: admin@parrishgoodman.com
AND
JOSEPH E. PARRISH
Florida Bar No: 690058
Primary: jparrish@parrishgoodman.com
Secondary: admin@parrishgoodman.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of March, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing Generated by CM/ECF.

/s/Robert H. Goodman
*Attorney for Plaintiff*

47204589.11