**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 3:21-cv-00448-BJD-JRK**

THE OKAVAGE GROUP, LLC,
on behalf of itself and all others
similarly situated,

      *Plaintiff*,

       v.

UNITED WHOLESALE MORTGAGE, LLC and
MATHEW ISHBIA, individually,

      *Defendants.*

_____/

## <u>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT</u>

Defendants, United Wholesale Mortgage, LLC ("UWM") and Mathew Ishbia ("Mr. Ishbia," and collectively with UWM, "Defendants"), respond to Plaintiff's Motion for Leave to File Supplemental Complaint [Dkt. 80] ("Motion") and Supporting Memorandum of Law [Dkt. 81] ("Memo."). In opposition to the Motion, Defendants state as follows:

### INTRODUCTION

Plaintiff, The Okavage Group, LLC ("Plaintiff"), desperately seeks leave to file a purported Supplemental Class Action Complaint (the "Supplemental Complaint" or "Suppl. Compl.") that serves no purpose other than duplication, waste, futility, and prejudice. In the face of a fully-briefed motion to dismiss [Dkts. 73, 79], and as part of its ongoing treatment of these proceedings as a headline-

*ACTIVE 686281848v5*

seeking publicity campaign, Plaintiff belatedly seeks to introduce more of the same types of allegations already contained in the operative Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC"). Plaintiff couples these untimely allegations with improper new arguments seeking to advance previously unasserted grounds for denial of Defendants' motion to dismiss. The Court should deny Plaintiff's Motion for two reasons.

<u>First</u>, Plaintiff has not shown good cause to depart from the Court's Order of September 26, 2022 [Dkt. 66] (the "September 26 Order") setting a deadline of October 21, 2022 for Plaintiff to amend its pleadings. The mere passage of time and accumulation of supposed new evidence that Plaintiff believes may support its claims is not good cause to allow supplementation after briefing of the pending motion to dismiss has concluded. Nothing in Plaintiff's Supplemental Complaint alters the underlying factual allegations or claims of the Second Amended Complaint; it simply repeats more of the same assertions. Either Plaintiff has stated a claim or it has not. This Court has set an orderly case management schedule to decide that question. Interrupting the Court's case management schedule prolongs these proceedings to no useful end and risks endlessly recursive "supplements" to add new "facts" arising from the daily news cycle.

<u>Second</u>, Plaintiff's proposed supplementation should be denied on grounds of futility and prejudice. The proposed supplementation does not address the deficiencies of Plaintiff's Second Amended Complaint, or the defects identified by the Magistrate Judge in recommending dismissal of Plaintiff's First Amended

Complaint. *See* Report and Recommendation of July 27, 2022 [Dkt. 61] ("Report"). Accumulation of redundant quotes from media interviews and additional market data cannot fix what is wrong with Plaintiff's claims. Yet, Plaintiff seeks to misuse its putative supplemental allegations to present new and previously unasserted arguments in opposition to Defendants' pending and fully-briefed motion to dismiss. Inserting new facts and new arguments five months after the amendment deadline and two months after briefing has closed wastes time, effort, and judicial resources, and specifically harms Defendants by seeking to interpose previously unasserted allegations and arguments to influence the outcome of a long-pending dispositive motion. Plaintiff's supplemental allegations are mere surplusage that have nothing to do with whether Plaintiff has pled or can plead a sufficient claim.

Indeed, this is not the first time Plaintiff has tried to have it both ways. In response to the Magistrate Judge's Report, Plaintiff similarly filed an Objection to the Report while simultaneously promising to amend the First Amended Complaint—essentially urging this Court to give Plaintiff an advisory opinion on the merits of its causes of action even as Plaintiff had announced its intention to change its operative pleading. [*See* Dkt. 63]. This Court rejected Plaintiff's tactic in the September 26 Order, holding the resolution of Defendants' motion to dismiss and Plaintiff's Objection in abeyance and requiring Plaintiff to amend by a date certain. [Dkt. 66]. Now, Plaintiff again seeks a ruling on Defendants' pending motion to dismiss [Dkt. 79] while simultaneously seeking to supplement the very pleading it previously purported to defend. Indeed, the substantial majority of

3

Plaintiff's supporting memorandum is not directed to the question of leave to supplement at all, but instead improperly presents additional arguments in opposition to Defendants' motion to dismiss. [*See* Memo. at 4-7]. This Court should disallow Plaintiff's seemingly endless gamesmanship, and deny the Motion.

## ARGUMENT

### I.   Legal Standard

Plaintiff seeks leave to supplement its pleadings under Rule 15(d), which states this Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The standard to be applied when considering a motion for leave to supplement a complaint under Rule 15(d) is the same standard applied when considering a motion for leave to amend a complaint under Rule 15(a)." *Porter v. Inch*, No. 4:20cv230-MW-HTC, 2020 U.S. Dist. LEXIS 125154, at *16 (N.D. Fla. June 19, 2020) (citing *Nat'l Franchisee Ass'n v. Burger King Corp.*, No. 09-2243-CIV, 2010 U.S. Dist. LEXIS 150732, at *4 (S.D. Fla. Jul. 16, 2010) (citation omitted)). *See also Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1504 (3d ed. 2010).

Leave to supplement "is not guaranteed," and the Court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it." *Porter*, 2020 U.S. Dist. LEXIS 125154, at *16-17 (quoting *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008)). In particular, the liberal standard favoring

4

amendment is not a free pass to ignore this Court's scheduling orders. Under Rule 16(b), district courts are required to enter scheduling orders that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). These orders control the subsequent course of proceedings and "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Advisory Committee's note to Rule 16(b)).

Thus, where—as here—a plaintiff does not move to amend or supplement within the time directed by the Court, "a two-step analysis is appropriate." *James Gorman Ins., Inc. v. Bankers Ins. Co.*, No. 8:16-cv-816-T-27AEP, 2017 U.S. Dist. LEXIS 31769, at *3 (M.D. Fla. Mar. 7, 2017) (citing *Sosa*, 133 F.3d at 1419). First, the movant must "demonstrate good cause under Rule 16(b)[.]" *Sosa*, 133 F.3d at 1419 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)); *see also Gorman Ins.*, 2017 U.S. Dist. LEXIS 31769, at *3 (same). If the Court "considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* Moreover, it is the movant's burden to "show good cause why leave to amend the complaint should be granted" after the deadline set by the Court. *Smith v. School Bd. of Orange Cty.*, 487 F.3d 1361, 1366 (11th Cir. 2007).

5

Second, if Plaintiff can satisfy the good cause showing, the Court proceeds to evaluate the request under Rule 15. *See Gorman Inc.*, 2017 U.S. Dist. LEXIS 31769, at *4. This Court "need not" allow Plaintiff to supplement under Rule 15(d). *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). It may deny leave to supplement "(1) where there has been an undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id. See also Nance v. Rico Elec., Inc.*, 381 F. App'x 919, 923 (11th Cir. 2010 (same); *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001) (same). Leave to supplement may also be denied where it would "unduly delay resolution of the case." *United States ex rel Gadbois v. Pharmerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015) (quoting *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006). Plaintiff's Motion fails on all counts.

## II.   Plaintiff's Motion Is Untimely and Lacks Good Cause

This Court set a deadline in its September 26 Order of October 21, 2022 for Plaintiff to amend its pleadings. Plaintiff submitted its unopposed motion for leave to file its Second Amended Complaint on October 21, 2022. [Dkt. 71]. Defendants filed their motion to dismiss on December 14, 2022. [Dkt. 73]. Plaintiff responded on February 1, 2022. [Dkt. 79]. Plaintiff did not move to file its putative Supplemental Complaint until March 24, 2023—five months after the deadline this Court set for amended pleadings and nearly two months after briefing concluded on the pending motion to dismiss. [Dkts. 80, 81]. Plaintiff has made no showing of

good cause to depart from the September 26 Order's deadline; indeed, it has not even attempted to do so.

Plaintiff's Motion acknowledges the Court's directive to seek leave to amend by October 21, 2022, but does not so much as mention Plaintiff's obligation to show good cause to depart from that deadline. [*See* Motion ¶ 5]. Plaintiff's failure even to discuss the good cause standard, much less attempt to show that it has satisfied good cause, is fatal to its Motion. To establish good cause, "the movant has the burden of proving that the scheduling deadline could not have been met despite the movant's diligent efforts to do so." *John Morrell & Co. v. Royal Caribbean Cruises Ltd.*, 243 F.R.D. 699, 701 (S.D. Fla. 2007). Plaintiff has not even attempted to meet its burden; its Motion skips the Rule 16(b) good cause showing altogether and jumps directly to Rule 15(d), asserting that leave to supplement should be "freely granted" under Rule 15(d). [*See* Motion ¶¶ 9-10; Memo. at 3-4, 7-8].

This raises the exact concern against which the Eleventh Circuit has cautioned—that skipping the Rule 16(b) inquiry would "render scheduling orders meaningless" and would read the good cause requirement out of the federal rules. *Sosa*, 133 F.3d at 1419. Plaintiff's failure to "indicate with specificity the good cause [it] had for untimely moving to amend its complaint" precludes a finding of good cause, particularly where Defendants' motion to dismiss has been pending for months. *Smith*, 487 F.3d at 1367 (finding "good cause" not satisfied where plaintiff did not make good cause showing and motion for summary judgment "had been pending for approximately one month" prior to motion to amend). By attempting

7

to skip the first part of the two-step inquiry this Court is directed to undertake, Plaintiff has failed to sustain its burden and cannot proceed to the Rule 15 inquiry.

Even if this Court were inclined to evaluate Plaintiff's Rule 15 arguments under the rubric of the Rule 16(b) good cause standard, Plaintiff has not shown good cause. To explain its delay, Plaintiff says only that the putative "interviews with the news media," statements to investors, and "facts relating to the market … reported in the media" that Plaintiff seeks to add to the Supplemental Complaint did not occur until "the end of February and beginning of March" and thus could not have been included in the Second Amended Complaint. [Motion ¶ 8; *see also* Memo at 1, 2-3]. But that is not good cause. The question of diligence does not center on the date of a particular media interview, statement, or report, but on whether the underlying *facts* therein were ascertainable and available prior to the Court's deadline, and whether the movant delayed in requesting leave to amend "even after acquiring the information." *Sosa*, 133 F.3d at 1419.

Here, although it is obvious that media interviews, investor calls, and other news events continue to take place since Plaintiff filed its Second Amended Complaint, Plaintiff does not and cannot contend that *new facts* have emerged from these news events necessitating supplemental pleading. Plaintiffs' nine new "supplemental allegations" seek to present only duplicative recitations of allegations already made prior to the Court's deadline:

- Plaintiff alleges UWM stated in its March 1, 2023 Form 10-K that it has agreements with more than 12,000 brokers. (Suppl. Compl. ¶

8

101). But Plaintiff had already alleged that UWM had 12,000 brokers. (SAC ¶ 61).

- Plaintiff alleges that during an earnings call on March 1, 2023, Mr. Ishbia touted UWM's status as the largest wholesale mortgage lender, and that data from the fourth quarter of 2022 indicates UWM is the largest wholesale mortgage lender with a putative market share exceeding 50%. (Suppl. Compl. ¶¶ 102, 104). But Plaintiff had already made various allegations regarding UWM's size, supposed market "dominance," and alleged share of the wholesale mortgage segment exceeding 50%. (SAC ¶¶ 2, 27-28, 31, 36, 62-63, 102).

- Plaintiff alleges Mr. Ishbia gave an interview on February 28, 2023, in which he purportedly explained the success of UWM's All-In Initiative. (Suppl. Compl. ¶¶ 103, 105). Plaintiff had already alleged similar interviews and statements by Mr. Ishbia. (SAC ¶¶ 61-63).

- Plaintiff alleges based on an unidentified "2023 report" that at least 17 firms have exited the wholesale market, purportedly because they lacked UWM's "scale," "volume," and "great" margin control. (Suppl. Compl. ¶¶ 106-109). Setting aside that the absence of a citation to the "2023 report" renders these allegations meaningless, in any event, Plaintiff had already alleged UWM's supposed market power and the purported barriers to entry for other mortgage lenders based on scope, scale, and costs. (SAC ¶¶ 82-84).

Thus, Plaintiff has not met its burden of showing its inability to ascertain or the unavailability of the underlying facts to which its supplemental allegations are directed. Quite the opposite, Plaintiff's supplemental allegations are duplicative of facts already alleged. To the extent Plaintiff is merely attempting to assert new putative **evidence** to bolster its existing allegations, that is improper pleading. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Court has discouraged pleadings of "unwieldy length," which "read[] more like an evidentiary narrative than a pleading contemplated by the notice pleading standard." *Syaqua Ams., Inc.*

*v. Am. Mariculture, Inc.*, No. 2:20-cv-736-JES-MRM, 2021 U.S. Dist. LEXIS 117876, at *4 (M.D. Fla. June 24, 2021) (collecting cases). Indeed, there is no endpoint to Plaintiff's tactics. If the Court were to allow supplementation every time a new media interview, statement, or market report emerges that Plaintiff perceives as new evidence to support its claims, then Rule 15(d) becomes a vehicle for an endlessly repeating, ever-growing shotgun supplemental pleading.

Plaintiff also has made no attempt to justify its three-week delay in bringing its Motion. All of the events referenced by date in Plaintiff's supplemental allegations occurred on either February 28 or March 1. (Suppl. Compl. ¶¶ 101-03, 105, 108-09). Plaintiff then waited more than three weeks before advising Defendants and the Court and filing its Motion, despite knowing that a fully-briefed motion to dismiss was pending.[1] A "delay[] in requesting leave to amend even after acquiring the information" will defeat good cause to amend. *Sosa*, 133 F.3d at 1419; *see also Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (finding claims of misconduct in discovery did not constitute "good cause" for seeking leave to amend six weeks after deadline); *Sanchez v. H & R Maint., L.C.*, 294 F.R.D. 677, 680 (S.D. Fla. 2013) ("Having determined that Plaintiff lacked diligence in discovering and utilizing the

---

[1] Plaintiff asserts that "mere delay" and "delay alone" is insufficient to justify denying an amendment. (Memo. at 7). But Plaintiff's delay occurred after the Court's deadline to amend, and in the face of an already-pending motion to dismiss; and, as discussed in § II, *infra*, is also characterized by futility and prejudice.

10

information that forms the basis for seeking leave to amend, the good cause inquiry required by Rule 16(b) ceases.").

## III.  Plaintiff's Motion Should Be Denied on Grounds of Futility and Prejudice

Even if Plaintiff had shown good cause for its delayed Supplemental Complaint (it did not), it also fails to satisfy Rule 15(d); and leave to supplement should be denied for that reason as well on grounds of futility and prejudice. Nothing contained in the Supplemental Complaint changes the outcome of the pending motion to dismiss, because Plaintiff's new allegations are merely duplicative of its existing, insufficient allegations. Plaintiff's supplemental allegations do not address or correct the substance of the grounds for dismissal set forth in the Magistrate Judge's Report and Defendants' motion to dismiss.

Yet that does not stop Plaintiff from attempting to exploit the Supplemental Complaint to that end. Plaintiff's Motion and supporting memorandum reveal Plaintiff's true intentions: to get a second bite of the apple, present a second round of arguments in opposition to Defendants' motion to dismiss, and secure a ruling on the sufficiency of its claims using allegations and arguments not contained in the Second Amended Complaint to which Defendants' motion is directed. (*See* Memo. at 4-7). Plaintiff's proposed Supplemental Complaint is thus both futile and prejudicial: futile because the supplemental allegations do not and should not affect the outcome of the motion to dismiss, and prejudicial because Plaintiff seeks

*ACTIVE 686281848v5*

to use the supplemental allegations to influence the outcome of the motion to dismiss with arguments Defendants have had no opportunity to address.

### A.    Plaintiff's Supplemental Allegations Are Futile

Plaintiff's proposed supplemental allegations are futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). As discussed above, Plaintiff's supplemental allegations do not contain new facts, but rather assertions that duplicate the Second Amended Complaint's insufficient allegations. Plaintiff's supplemental allegations therefore fail to state a claim for the same reasons its existing allegations fail to do so, as articulated in the Magistrate Judge's Report and Defendants' motion to dismiss.

Plaintiff's assertion that the Supplemental Complaint will make an "important contribution" to this case and "add highly relevant and specific factual allegations" relating to the "contested issues" of market power and impact on the market is simply wrong. (Memo. at 4). And it is improper for Plaintiff to attempt to use its Motion and supporting memorandum to present new arguments in opposition to Defendants' motion to dismiss.

First, Plaintiff argues its supplemental allegation of 54% market share and the exiting of competitors from the market demonstrates UWM's "dominance" and a "dangerous probability" of monopoly power. (Memo. at 5-6).  But that ignores the essence of the pleading deficiency identified in the Magistrate Judge's Report—

that even assuming the accuracy of Plaintiff's allegations of UWM's market power, Plaintiff: (1) does not plead what percentage of the brokers in the wholesale market as a whole "joined the boycott," and (2) does not plead what the alleged effect of the supposed boycott was on the relevant market. [Report at 37]. That comports with numerous cases holding that even a market share substantially greater than 50%, as high as 70% or even 90%, does not establish market power absent sufficient allegations of the purported effect. [*See* Dkt. 73 at 24-25 (collecting cases)]. Plaintiff also still does not address that the relevant market is not the wholesale segment, but the market of all residential mortgages, in which UWM's share does not approach anything close to 50%. [*See* Dkt. 73 at 32-34].

Second, Plaintiff conflates Mr. Ishbia's alleged statement on an earnings call that UWM "controls its margins" (*see* Suppl. Compl. ¶ 109) with "[c]ontrol over price," which "is one of the definitions of monopoly power." (Memo. at 5). Plaintiff either does not understand or is deliberately muddying the distinction between controlling ***margins*** (*i.e.* cost-cutting measures) and controlling ***prices***. Mr. Ishbia has never said, and certainly could not say, that UWM exercises the power to exercise "control over price" in the vibrant residential mortgage market.

Third, Plaintiff asserts that Mr. Ishbia supposedly "attributed UWM's growth" to his so-called "ultimatum" to brokers. (Memo. at 5-6). Even on the face of the supplemental allegation, that is not a plausible characterization of what Mr. Ishbia said; he simply discussed UWM's success in the years since he announced the All-In Initiative. (*See* Suppl. Compl. ¶ 105). But even accepting Plaintiff's self-

13

serving characterization, its supplemental allegation does not address the three central flaws in its claims: (1) there is no allegation to suggest brokers acted out of coercion rather than their own self-interest in choosing UWM; (2) Plaintiff has not connected UWM's alleged conduct to possible harm to competition; and (3) there is nothing to indicate that UWM's Amendment has foreclosed competition. [*See* Report at 28-38; Dkt. 73 at 19-23, 26, 29-31].

Fourth, Plaintiff references the Herfindahl-Hirschmann Index ("HHI") test and asserts that UWM's supposed market share of 54% increases UWM's market share to "highly concentrated" and presumptively anticompetitive under the Horizontal Merger Guidelines. (Memo. at 6). Even the Supplemental Complaint, however, makes no reference to HHI; it appears Plaintiff is now attempting to introduce what would, at best, be the subject of expert testimony before it has even alleged the underlying substantive facts necessary to state a claim. Even taking Plaintiff's HHI analysis at face value, it fails to address Plaintiff's pleading deficiencies for the same reasons the assertion of 54% market share fail to do so— Plaintiff has not alleged and cannot allege what percentage of brokers joined the boycott, the alleged effect of the supposed boycott, or the fact that the actual relevant market is all residential mortgages—where UWM's HHI score would be *de minimis*. [*See* Report at 73; Dkt. 73 at 24-25, 32-34].

Plaintiff's supplemental allegations are also futile because the issues of market share and market impact are neither the only nor the most important grounds for dismissal set forth in the Report or Defendants' motion to dismiss.

14

Other grounds for dismissal, which Plaintiff's supplemental allegations do not address at all, include: (1) Plaintiff's failure to plead a per se illegal group boycott based on a horizontal agreement; (2) Plaintiff's failure to plead an illegal hub-and-spoke conspiracy; (3) Plaintiff's failure to allege anticompetitive conduct or a specific intent to monopolize; (4) Plaintiff's failure to establish personal jurisdiction over Mr. Ishbia; (5) Plaintiff's failure to allege the elements of any of its claims against Mr. Ishbia; and (6) Plaintiff's failure to allege the elements of any of its state law claims. [*See generally* Report; *see also* Dkt. 73 at 12-40].

Because Plaintiff's supplemental allegations do not and cannot change the outcome of Defendants' motion to dismiss, they are futile and leave to supplement should be denied.

## B.    Plaintiff's Supplemental Allegations Are Prejudicial

Plaintiff's proposed supplementation is also prejudicial. "[U]nfair prejudice" to the defendant is grounds for denial of leave to amend. *Campell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). Here, the prejudice to Defendants is obvious. Although Plaintiffs' supplemental allegations do not cure the facial deficiencies in Plaintiff's pleadings, *see* § III.B *supra*, Plaintiff is nevertheless attempting to use its putative Supplemental Complaint to introduce allegations and to present arguments that Defendants have had no previous opportunity to address.

Defendants timely filed their motion to dismiss on December 14, 2022. [Dkt. 73]. Plaintiff responded on February 1, 2022. [Dkt. 79]. Defendants' motion to dismiss and Plaintiff's response are both based on the allegations contained in the

*ACTIVE 686281848v5*

Second Amended Complaint—the operative pleading filed in accordance with the deadline set forth in the Court's September 26 Order. Plaintiff's Supplemental Complaint now introduces nine new paragraphs of putative supplemental allegations that, while duplicative of the underlying facts set forth in the Second Amended Complaint, purport to set forth new evidence in support of Plaintiff's claims that Defendants had no notice or opportunity to address in their motion to dismiss. (Suppl. Compl. ¶¶ 101-09). More than that, Plaintiff devotes most of its memorandum to presenting new arguments based on the new allegations of the Supplemental Complaint that Plaintiff urges the Court to consider as "highly relevant" to "two contested issues emphasized" in Defendants' motion to dismiss. (Memo. at 4). Plaintiff's new argument regarding HHI is emblematic of this tactic. Having never previously mentioned HHI in any pleading, allegation, or argument, Plaintiff now submits HHI as a new substantive argument for this Court to consider on the subject of market share in an untimely attempt to convince the Court that UWM operates in a "highly concentrated" market. (Memo. at 6). That is a transparent expansion of Plaintiff's opposition brief.

In short, Plaintiff's Motion and supporting memorandum seek a second chance to present new allegations and new arguments in an attempt to sway the outcome of the pending motion to dismiss, five months after the Court's deadline to amend and two months after briefing concluded on the motion to dismiss. This Court's rules disfavor even the filing of a reply brief, much less the submission of untimely new allegations and new arguments months after briefing has concluded.

16

*See* Local R. 3.01(d). Granting Plaintiff leave to file its Supplemental Complaint would thus present Defendants with a Hobson's choice: either stick with their motion to dismiss as is and allow Plaintiff's new allegations and new argument to stand unaddressed in Defendants' motion papers, or be afforded leave to file a reply brief to address the new allegations and arguments, which is both disfavored by the Court, and would incur unnecessary and prejudicial time and expense months after briefing closed. This Court likewise would have to jettison its work of the past two months and restart its consideration to account for Plaintiff's new allegations, Plaintiff's new arguments, and any supplemental or reply brief the Court permits Defendants to file to address these new matters. These specific harms to Defendants and the Court constitute undue prejudice.

Nor is this the first time Plaintiff has sought to have its cake and eat it too. After the Magistrate Judge entered the Report recommending dismissal of Plaintiff's First Amended Complaint, Plaintiff filed its Objection; yet in its Objection, also announced its intention to amend. [See Dkt. 63]. Thus, Plaintiff sought the equivalent of an advisory ruling on the sufficiency of its First Amended Complaint, even as it refused to stand by the allegations of that pleading. Now Plaintiff has gone a step further, seeking to introduce its new allegations and arguments after already responding to the pending motion to dismiss, and urging the Court to consider these new materials rather than confining its ruling to the operative Second Amend Complaint that Plaintiff purported to defend as sufficient when it responded to Defendants' motion to dismiss two months ago.

*ACTIVE 686281848v5*

## CONCLUSION

Plaintiff does not get to abuse the Court's scheduling orders, the Federal Rules of Civil Procedure, or this Court's Local Rules to suit its strategic aims and further its publicity campaign. There is an operative Complaint and a mature, fully-briefed motion to dismiss awaiting this Court's ruling. Nothing about Plaintiff's supplemental allegations contribute to the question of whether Plaintiff can state a facially sufficient claim, and Plaintiff should not be permitted to put its thumb on the scale at the eleventh hour to avoid dismissal. The Court should deny leave to supplement.

For the foregoing reasons, Defendants respectfully request the Court enter an order denying Plaintiff's Motion for Leave to File Supplemental Complaint, and granting Defendants such other relief as the Court deems just and proper.

Dated: April 7, 2023           Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone: 954-765-0500
Telefax: 954-765-1477

By:   */s/ Glenn E. Goldstein*
**Glenn E. Goldstein, Esquire**
Florida Bar No. 435260
Email: GoldsteinG@gtlaw.com
      geistc@gtlaw.com
      FLService@gtlaw.com
**Sabrina D. Niewialkouski**
Florida Bar No. 0123630
Email: Niewialkouskis@gtlaw.com
      FLService@gtlaw.com

*ACTIVE 686281848v5*

*Attorneys for Defendants United Wholesale Mortgage, LLC and Mathew Ishbia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Glenn E. Goldstein*
GLENN E. GOLDSTEIN

## SERVICE LIST
***The Okavage Group, LLC v. United Wholesale Mortgage, LLC and Mathew Ishbia***
**Case No. 3:21-cv-00448**
**United States District Court, Middle District of Florida**

*Counsel for Plaintiff*:

**PARRISH & GOODMAN, PLLC**
13031 McGregor Blvd., Suite 8
Fort Myers, Florida 33919
Phone: (813) 643-4529
Facsimile: (813) 315-6535
**ROBERT H. GOODMAN**
Florida Bar No.:  1008059
Primary:
rgoodman@parrishgoodman.com
Secondary:
admin@parrishgoodman.com
**JOSEPH E. PARRISH**
Florida Bar. No: 690058

19

Primary:
jparrish@parrishgoodman.com
Secondary:
admin@parrishgoodman.com