UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 3:21-cv-00448-BJD-LLL

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

    *Plaintiff*,

      v.

UNITED WHOLESALE MORTGAGE, LLC
and MATHEW ISHBIA, individually,

    *Defendants.*
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SUPPLEMENTAL CLASS ACTION COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**

## TABLE OF CONTENTS

Page(s)

I.   Introduction ........................................................................................... 1

II.  Argument................................................................................................ 1

    A.   There Is No Basis for Jurisdiction Over Mr. Ishbia.............................. 1
    B.   Plaintiff Has Not Plausibly Alleged a Relevant Market....................... 2
    C.   Plaintiff Has Not Plausibly Alleged an Antitrust Claim ....................... 6

        1.   **Plaintiff Has Not Alleged a *Per Se* Hub-and-Spoke Conspiracy**................................................................................ 6
        2.   **Plaintiff Has Not Alleged an Unreasonable Restraint of Trade** ........................................................................................ 9
        3.   **Plaintiff Has Not Alleged Attempted Monopolization**............ 9

    D.   Plaintiff Has Not Plausibly Alleged Any State Law Claims ............... 10

III. Conclusion............................................................................................ 10

ACTIVE 689992954v3

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*,
  203 F.3d 1028 (8th Cir. 2000) .................................................................................. 7

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ................................................................................................... 3

*Evergreen Partnering Grp, Inc. v. Pactiv Corp.*,
  720 F.3d 33 (1st Cir. 2013) ....................................................................................... 8

*Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*,
  244 F.3d 521 (6th Cir. 2001) ................................................................................... 3

*FTC v. Staples*,
  970 F. Supp. 1066 (D.D.C. 1997) .......................................................................... 4

*FTC v. Sysco Corp.*,
  113 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................... 4

*FTC v. Whole Foods Mkt.*,
  548 F.3d 1028 (D.C. Cir. 2008) ............................................................................. 4

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ..........................................................................3, 4

*JES Props. v. USA Equestrian, Inc.*,
  253 F. Supp. 2d 1273 (M.D. Fla. 2003) ............................................................... 3

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  588 F.3d 908 (6th Cir. 2009) ................................................................................. 4

*Licciardello v. Lovelady*,
  544 F.3d 1280 (11th Cir. 2008) .............................................................................. 2

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
  302 F.3d 1207 (11th Cir. 2002) .............................................................................. 3

*Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
  458 F. Supp. 2d 474 (E.D. Mich. 2006), *aff'd*, 524 F.3d 726 (6th Cir. 2008) ............................................................................................................................. 3

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ..........................................................................................5, 6

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) .................................................................................. 4

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) .................................................................................. 3

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) ..................................................................................... 7

*United States v. Dentsply Int'l, Inc.*,
    399 F.3d 181 (3d Cir. 2005) ..................................................................................... 9

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ..................................................................................... 9

*Wydler v. Bank of Am., N.A.*,
    360 F. Supp. 2d 1302 (S.D. Fla. 2005) ..................................................................... 5

**State Cases**

*Internet Sols. Corp. v. Marshall*,
    39 So. 3d 1201 (Fla. 2010) ....................................................................................... 2

ACTIVE 689992954v3

I. <u>Introduction</u>

Plaintiff's Response and Brief in Opposition ("Opposition" or "Opp.") to Defendants' Motion to Dismiss Supplemental Class Action Complaint and Memorandum of Law in Support ("Motion" or "Def. Br.") fails to supply any plausible factual allegation or legal rationale for the Court to transform a routine business disagreement into an antitrust class action. Plaintiff repeatedly relies on inapposite precedent and conclusory allegations in a failed attempt to escape the facial implausibility of each of its claims. Nor can Plaintiff overcome the pleading deficiencies identified in the Magistrate Judge's Report. The Court should dismiss all claims against Mr. Ishbia, because Plaintiff has not alleged any basis for personal jurisdiction over him. The Court should further dismiss all claims against UWM, with prejudice, because Plaintiff has not plausibly alleged a properly defined market, any antitrust violation, or any viable state law claim.

II. <u>Argument</u>

A. **There Is No Basis for Jurisdiction Over Mr. Ishbia**

Plaintiff asserts that its general allegation of "internet communications by Mr. Ishbia" is enough to comprise a "tortious act in Florida" under Florida's long-arm statute. Opp. 37-38. But, as argued in Defendants' opening brief, Florida does not recognize such an open-ended "internet communications" loophole to the requirement of its long-arm statute that tortious acts must occur "in Florida," nor would such a loophole comport with due process. *See* Def. Br. 13-15.

Plaintiff's own principal authority confirms that internet activity must be

1

"targeted" at Florida residents, not just "accessible" in Florida, to satisfy the long-arm statute. *Id*. 14-15 (quoting *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1211, 1214-15 (Fla. 2010)). Plaintiff's other authorities acknowledge the same restriction. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) (due process requires "the commission of an intentional tort, expressly aimed at a specific individual in the forum"); *Ares Def. Sys., Inc. v. Karras*, No. 6:15-CV-1107-Orl-22DAB, 2016 WL 7042957, at *11 (M.D. Fla. Mar. 10, 2016) (similar). Plaintiff has alleged no tortious conduct by Mr. Ishbia that was directed at Florida, and thus has alleged no basis for personal jurisdiction.

### B. Plaintiff Has Not Plausibly Alleged a Relevant Market

Plaintiff's own allegations and the materials incorporated into the Supplemental Amended Complaint leave no doubt that UWM, Rocket, and Fairway are competitors in the overall residential mortgage lending market—of which wholesale and retail are just two channels—with interchangeable products competing for the same mortgage originations. Def. Br. 4-7, 15-19. Plaintiff has no answer for the interchangeability of wholesale and retail mortgages, and thus tries instead to divert focus.

Plaintiff first asserts market definition is a "factual question" and is "reserved for discovery." Pl. Br. 8-9. But as Plaintiff concedes, both the Eleventh Circuit and this Court have repeatedly dismissed cases for failing to allege a plausible market. *Id*. at 9. Plaintiff seeks to distinguish these cases as involving "the absence of *any* factual allegations on relevant market." *Id*. (emphasis in original). In reality, the pleadings in each case are strikingly similar to this case. As here, plaintiffs in each case failed to

2

address "reasonable interchangeability," *JES Props. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1281-82 (M.D. Fla. 2003); relied on "skimpy allegations" and "conclusory statement[s]" in lieu of facts, *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010); and did not supply "sufficient information to plausibly define" the market, *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 711 (11th Cir. 2014). Indeed, this case is even more stark, as Plaintiff's allegations and source materials affirmatively negate its assertion of a separate wholesale market. Def. Br. 4-7, 15-19. The "definition of the relevant market requires little factual analysis" where two supposedly distinct markets offer "interchangeable" products. *Found. for Int. Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001).[1]

Plaintiff next asserts that interchangeability only defines the "outer boundaries" of a market, and proposes to use "practical indicia" instead. Opp. 9-10 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). But "practical indicia" are secondary at best; the Court must first define the market of "products that have reasonable interchangeability" by looking "to the uses to which the product is put by consumers in general." *Jacobs*, 626 F.3d at 1337 (quoting *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1221 (11th Cir. 2002) (internal quotation omitted)). Where, as here, Plaintiff has alleged ***no facts*** to overcome the "reasonable substitutability" of

---

[1] *See also Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 482-83 (E.D. Mich. 2006) (dismissing for failure to allege market encompassing "all interchangeable substitute products"), *aff'd*, 524 F.3d 726, 733 (6th Cir. 2008) (the fact that "market definition generally requires discovery" does not prevent dismissal of an "insufficiently pled or totally unsupportable" market).

3

mortgages or the fact that "consumers view the products as substitutes," they "are part of the same market" and "practical indicia" cannot establish a relevant submarket. *Id.* (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995)). *See also Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918 (6th Cir. 2009) (rejecting "the notion that 'market and submarket analyses are substitute tests,'" and holding that "the reasonable-interchangeability analysis is the 'essential test for ascertaining the relevant product market.'") (Internal quotation omitted).[2]

Plaintiff further asserts that its conclusory allegations regarding "distinct" customers and marketing, "specialized" vendors, and cost savings in the wholesale channel "closely track" the *Brown Shoe* "practical indicia." Opp. 10-11. But Plaintiff's allegation that the wholesale channel has some discrete features cannot satisfy lack of substitutability where "consumers derive comparable utility from equivalent consumption" of either mortgage. *Jacobs*, 626 F.3d at 1337 n.13; *see also* Def. Br. 16-17. Here, Plaintiff affirmatively alleges that consumers "need" to have "mortgage lending," SAC ¶ 20, a need equally served by the wholesale and retail channels. Plaintiff further admits Rocket and Fairway offer wholesale and retail products that are "close substitutes." *Id.* ¶¶ 16, 30-33; DE 79, at 24. Plaintiff's supplemental allegations and incorporated materials also confirm the relevant market is the "overall

---

[2] Plaintiffs' authorities reinforce this point. In *FTC v. Staples*, 970 F. Supp. 1066 (D.D.C. 1997), the court found "practical indicia" may be relevant only to the extent they demonstrate low cross-elasticity of demand; that is, if a "significant increase" in price "will not cause a considerable number" of customers to substitute products. *Id.* at 1074-75. Plaintiff alleges no facts indicating low cross-elasticity of demand between wholesale and retail mortgages. *See also FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 27 (D.D.C. 2015) (requiring interchangeability to define market); *FTC v. Whole Foods Mkt.*, 548 F.3d 1028, 1037 (D.C. Cir. 2008) (requiring lack of interchangeability for submarkets).

4

mortgage market" in which wholesale and retail lenders "compet[e]" for "mortgage loan originations" from the same consumers. Def. Br. 4-7, 18.

Plaintiff next asserts that Defendants have "mine[d]" its source materials to demonstrate the existence of an "overall mortgage market." But no "mining" was necessary; Plaintiff's source materials contain more than a dozen unambiguous references to UWM's market share in the "overall mortgage market," of which wholesaler lending is just one "channel," and of direct competition between the retail and wholesale channels for the same loan originations. Def. Br. 4-6. Though Plaintiff attempts to counter these clear statements with excerpts describing unrelated features of the wholesale and retail channels, Plaintiff cannot identify a single excerpt contradicting the acknowledged interchangeability of mortgage loans in both channels. Opp. 12-13. Nor are Defendants' citations "an effort to offer evidence" at the motion to dismiss stage. *Id*. at 13. These are ***Plaintiff's*** source materials, adopted by reference in its own pleading, and are thus properly considered on a motion to dismiss. *See* Def. Br. at 4 n.1. Indeed, in a conflict between Plaintiff's bare allegations and the materials incorporated into its pleadings, "the exhibits control." *Wydler v. Bank of Am., N.A.*, 360 F. Supp. 2d 1302, 1310 n.1 (S.D. Fla. 2005). Plaintiff cannot complain that its own chosen source materials negate its asserted market definition.

Plaintiff lastly asserts a relevant market is "not essential" because it has asserted "actual detrimental effects." Opp. 13. The Supreme Court rejected this exact argument in *Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018), holding that market definition may only be set aside in cases involving "agreements between competitors not to

5

compete[.]" *Id*. at 2284-85, 2305 n.7. Defendants have already demonstrated that Plaintiff cannot allege such a theory, and Plaintiff does not contest this point. Def. Br. 19-21.

### C. Plaintiff Has Not Plausibly Alleged an Antitrust Claim

Plaintiff has not pled a plausible claim or corrected the faults identified in the Magistrate Judge's Report with respect to its failed claims of a *per se* hub-and-spoke conspiracy, unreasonable restraint of trade, or attempted monopolization.

#### 1. **Plaintiff Has Not Alleged a *Per Se* Hub-and-Spoke Conspiracy**

Plaintiff insists it has plausibly alleged a "hub and spoke" conspiracy under a "parallel conduct" and "plus factor" framework, citing a patchwork of inapposite and predominantly out-of-jurisdiction price-fixing cases. Opp. 13-23. Plaintiff does not state a claim because the relationship between UWM and its brokers is unavoidably vertical, and Plaintiff cannot allege any horizontal agreement between brokers.

Plaintiff has at most still alleged only a "rimless wheel," as the Magistrate Judge found, and the Supplemental Amended Complaint does nothing to connect the spokes. Def. Br. 22-24; Report at 32. At base, what Plaintiff continues to allege is UWM's announcement of the terms on which it will do business with brokers, the acceptance of those terms by most (but not all) of UWM's existing brokers, and anecdotal examples of enthusiastic support. That is not enough for multiple reasons.

First, what Plaintiff describes is not even "parallel conduct" among 11,000 horizontal competitors, much less "direct evidence of agreement." Opp. 14. Plaintiff has alleged a *vertical* transaction between UWM and its brokers—a point Plaintiff does

6

not even contest. *See* Def. Br. 19-22. Plaintiff has not alleged each of 11,000 brokers unilaterally changed its/their conduct in parallel with others. It has alleged a singular event: UWM's amendment of the terms of its brokerage agreements, followed by each broker accepting or rejecting UWM's Amendment. A vertical transaction between UWM and its brokers is not parallel horizontal conduct. *Id*.

Second, Plaintiff does not allege "interbroker communications." Opp. 15-18. The new allegations of the Supplemental Amended Complaint are just additional "expressions of enthusiasm and encouragement," which the Magistrate Judge already found insufficient. Def. Br. 22-23; Report at 33. Nothing has changed. Indeed, Plaintiff's own authority discredits its efforts to apply this "plus factor." *See Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (requiring "a high level of communications among competitors" about "price verification" and finding plaintiff's evidence "far too ambiguous" to support the plus factor). And *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), is readily distinguishable, as it involved collusion among three publishers to fix prices in a highly concentrated market, in which the defendant "consciously played a key role." *Id*. at 316.

Third, Plaintiff has not plausibly alleged any brokers acted "against their individual interests" or were "coerced." Opp. 18-20. These are bare conclusions unsupported by factual allegations. Indeed, Plaintiff's allegations of brokers' vocal support and enthusiasm belie any inference of lack of self-interest or coercion. *See* Def. Br. 28-29 n.8; Report at 33-38. Plaintiff's allegations also incoherently cast the same brokers as both jointly liable conspirators *and* class members. Def. Br. 25-26.

7

Fourth, Plaintiff's insistence that the "parallel conduct" and "plus factors" model has at times been applied outside the price-fixing context, Opp. 21-23, cannot change the fact that essentially *all* of the cases Plaintiff relies upon to support its arguments are price-fixing cases involving highly concentrated industries, and thus inapposite here. *See* Opp. 13-20. The First Circuit warned in Plaintiff's own lead case that courts should be "wary of placing too much significance on the presence or absence of 'plus factors' at the pleadings stage." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33 (1st Cir. 2013). That warning is salient here, where Plaintiff relies exclusively on "plus factors" predicated on wholly conclusory allegations to infer a parallel conspiracy among 11,000 competitors in an unconcentrated market.

Fifth, Plaintiff has failed to allege market power. As Plaintiff's own sources confirm, UWM has never had a market share above 11% of the residential mortgage market or 38% of the wholesale channel, and the mortgage brokers with whom UWM does business represent just 11.6% of federally registered loan officers and 8.5% of loan submissions. Def. Br. 4-5. Plaintiff repeatedly and misleadingly refers to a "dramatic increase" in UWM's "market share" from "34% to 54%," Opp. 1-2, 6, 12, 28-32, but brushes aside that this was a single-quarter number in a year when UWM's aggregate share of the wholesale channel was still just 38%, and Plaintiff's own source materials are clear this was a transitory number. Def. Br. 5. As the Magistrate Judge concluded, in a market with 50+ other wholesale lenders, Plaintiff has not alleged market power—particularly where brokers are free to terminate their agreements with UWM immediately on notice. Def. Br. 26-29, 31-32; Report at 36-37.

8

2. **Plaintiff Has Not Alleged an Unreasonable Restraint of Trade**

Plaintiff's claim for unreasonable restraint of trade fails because Plaintiff has not cured its failure to allege the exercise of market power in a properly defined market, or the potential for or an actual detrimental effect on competition. Def. Br. 29-33; Report 38-41. Plaintiff's arguments regarding market definition and market power have already been addressed. *See* §§ II.B, II.C.1, *supra*. Plaintiff's theatrical assertions of anti-competitive effects based on a hypothetical event that never happened—Rocket and Fairway being "eliminated" from the market—are likewise the kinds of broad, unsupported allegations of detrimental effects that cannot survive dismissal. Def. Br. 28-29, 32. Plaintiff's authorities are inapposite, as they involve either failed antitrust claims or exclusivity arrangements in highly concentrated markets. *See, e.g., Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 258 (2d Cir. 2001) (affirming summary judgment against plaintiff who failed to show how defendant's conduct "harmed consumers"); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005) (discussing "exclusivity policy" by a manufacturer with an 80% market share, unlike UWM's much smaller market share and non-exclusive agreement with brokers).

3. **Plaintiff Has Not Alleged Attempted Monopolization**

Plaintiff's defense of its attempted monopolization claim rests on a repeat of its same misleading allegation of UWM's non-existent "54% share" of the supposed wholesale "market," and its conclusory assertions of "substantial consolidation" and "high barriers to entry" in this "market" of 50+ competing lenders. Opp. 31-32. These points have been addressed. *See* §§ II.B, II.C.1-2, *supra*. Plaintiff also misrepresents an

9

out-of-context statement by Mr. Ishbia about "control" of "margins" as evidence of pricing power. Opp. 31-32. But Plaintiff has no response to the fact—clear from its own source materials—that this statement referred to a price *cut* due to "extremely competitive" pricing, the exact *opposite* of what Plaintiff tries to infer. Def. Br. 6-7.

### D.  Plaintiff Has Not Plausibly Alleged Any State Law Claims

Plaintiff's arguments as to its state law claims, Opp. 33-36, do not cure the deficiencies identified in the Magistrate Judge's Report and are adequately addressed in Defendants' Motion. Defendants stand on their arguments and authorities with respect to each claim. *See* Def. Br. 36-40; Report at 6 n.4, 45-49 & n.16.

### III.  Conclusion

For the foregoing reasons, the Court should dismiss Plaintiff's Supplemental Amended Complaint, with prejudice.

Dated: September 5, 2023                    Respectfully submitted,

                                                **GREENBERG TRAURIG, P.A.**
                                                401 East Las Olas Boulevard
                                                Suite 2000
                                                Fort Lauderdale, Florida 33301
                                                Telephone: 954-765-0500
                                                Telefax: 954-765-1477

                                     By:    /s/ *Glenn E. Goldstein*
                                                **Glenn E. Goldstein, Esquire**
                                                Florida Bar No. 435260
                                                Email: GoldsteinG@gtlaw.com
                                                               geistc@gtlaw.com
                                                               FLService@gtlaw.com
                                                **Sabrina D. Niewialkouski**
                                                Florida Bar No. 0123630
                                                Email: Niewialkouskis@gtlaw.com
                                                               Jennifer.Shiner@gtlaw.com

FLService@gtlaw.com

*Attorneys for Defendants United Wholesale Mortgage, LLC and Mathew Ishbia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Glenn E. Goldstein*
GLENN E. GOLDSTEIN

11