UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

      Plaintiff,               Case No. 3:21-cv-448-BJD-LLL

v.                          Hon. Brian J. Davis

UNITED WHOLESALE        Magistrate Judge Laura Lothman Lambert
MORTGAGE, LLC and
MATTHEW ISHBIA, individually

      Defendants.

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS SUPPLEMENTAL CLASS ACTION COMPLAINT**

49314587.13

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

I.      INTRODUCTION ................................................................................................ 1

II.     DEFENDANTS' ARGUMENTS APPLY THE WRONG LEGAL
        STANDARD ......................................................................................................... 1

III.    THE SAC PLAUSIBLY ALLEGES PERSONAL JURISDICTION
        OVER MAT ISHBIA ...........................................................................................3

IV.     OKAVAGE HAS PROPERLY PLEADED A RELEVANT MARKET...............4

V.      THE SAC PLAUSIBLY ALLEGES A *PER SE* GROUP BOYCOTT .................7

VI.     DEFENDANTS' OTHER ARGUMENTS ARE EQUALLY DEFICIENT ........9

49314587.13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 1

*In re Broiler Chicken Antitrust Litig.,*
    290 F. Supp. 3d 772 (N.D. Ill. 2017) ................................................................... 7

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962) ........................................................................................... 5, 6

*Dugas v.3M Co.,*
    101 F. Supp. 3d 1246 (M.D. Fla. 2015) (Davis, J.) ............................................. 2

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
    504 U.S. 451 (1992) ............................................................................................. 2

*Internet Solutions Corp. v. Marshall,*
    39 So.3d 1201 (Fla. 2010). ECF No. 102, PageID.1629 ................................. 3, 4

*Jacobs v. Tempur-Pedic Int'l, Inc.*
    626 F.3d 1327 (11th Cir. 2010) ........................................................................... 5

*Kleen Prods., LLC v. Packaging Corp. of Am.,*
    775 F. Supp. 2d 1071 (N.D. Ill. 2011) ................................................................ 7

*Ohio v. Am. Express Co.,*
    138 S. Ct. 2274 (2018) ......................................................................................... 6

*Price v. Kronenberger,*
    24 So.3d 775 (Fla. 5th DCA 2009) ...................................................................... 3

*Restore Robotics LLC v. Intuitive Surgical, Inc.,*
    2022 WL 19408080 (N.D. Fla. Feb. 7, 2022) ..................................................... 9

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.,*
    792 F.2d 210 (D.D.C. 1986) ................................................................................ 6

*In re Salmon,*
    2021 WL 1109128 (S.D. Fla. Mar. 23, 2021) ...................................................... 7

49314587.13

*Smith v. Healthcare Authority for Baptist Health*,
  2022 WL 857036 (M.D. Ala. Mar. 22, 2022) ....................................................2

*Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*,
  623 F.3d 1371 (11th Cir. 2010).......................................................... 1, 2

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
  7 F.3d 986 (11th Cir. 1993) ...................................................................5

*United States v. H&R Block, Inc.*,
  833 F. Supp. 2d 36 (D.D.C. 2011) ..........................................................5

*Watts v. Florida Int'l Univ.*,
  495 F.3d 1289 (11th Cir. 2007) .............................................................1

*White & White, Inc. v. Am. Hosp. Supply Corp.*,
  723 F.2d 495 (6th Cir. 1983) .................................................................6

## Other Authorities

Areeda & Hovenkamp, *Antitrust Law* ¶1606h3 ....................................... 8

Edward A. Hartnett, *Taming Twombly, Even After Iqbal*, 158 U. Pa. L. Rev 473, 491 (2010)...........................................................................2

Howard M. Erichson, *What's the Difference Between a Conclusion and a Fact?*, 41 Cardozo L. Rev. 899, 906 (2020) ..............................................3

49314587.13

## I.      INTRODUCTION

Plaintiff The Okavage Group, LLC ("Okavage") files this Sur-Reply in response to Defendants' Reply in Support to Their Motion to Dismiss Supplemental Class Action Complaint ("SAC") Pursuant to Rules 12(b)(2) and 12(b)(6) (ECF No. 107).

## II.     DEFENDANTS' ARGUMENTS APPLY THE WRONG LEGAL STANDARD

A common failure in Defendants' arguments is that they treat the allegations in the SAC as if they were proofs at trial. Defendants' Reply Brief repeatedly weighs evidence, criticizes the credibility of evidence and, when all else fails, disparages evidence as "conclusory." But these approaches directly contradict the basic standards applicable under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and the cases in this circuit and district applying its principles.

The most basic principle here is that a plaintiff "need not prove his case on the pleadings[.]" *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). That is because all that a complaint need do to be adequate is to present "enough factual matter (taken as true) to *suggest that*" a violation of the Sherman Act occurred. 550 U.S. at 556, n.5 (emphasis added). This standard has been repeatedly applied by this circuit. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

"A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts are impossible, and that a recovery is very remote and unlikely." *Speaker*, 623 F.3d at 1380 (quoting *Twombly*). Nor is it appropriate for

a court to draw inferences unfavorable to the Plaintiffs. Even in the summary judgment context, a plaintiff's evidence "is to be believed, and all justifiable inferences are to be drawn in their favor." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992) (brackets omitted).

As a result, the Court should not weigh inferences, and must always choose the inference that supports the plaintiff even when alternative inferences are possible. *Smith v. Healthcare Authority for Baptist Health*, 2022 WL 857036, at *3 (M.D. Ala. Mar. 22, 2022) (collecting cases) ("[I]t is not for the court to weigh competing, plausible inferences at the motion-to-dismiss stage."). *Id.*

Defendants' attacks on the SAC's allegations as "conclusory" also miss the mark. Detailed factual allegations are not necessary under Rule 12(b)(6). *Speaker*, 623 F.3d at 1380, 1384 (discussing *Twombly's* holding that "a complaint 'does not need detailed factual allegations'"). *Id.* at 1380 ("[T]he Court '[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly*)). *See also Dugas v.3M Co.*, 101 F. Supp. 3d 1246, 1251 (M.D. Fla. 2015) (Davis, J.).

Thus, general factual statements should not be rejected as "conclusory." "A conclusory allegation is one that asserts the final and ultimate conclusion which the court is to make in deciding the case, that is, one that alleges an element of a claim." Edward A. Hartnett, *Taming Twombly, Even After Iqbal*, 158 U. Pa. L. Rev 473, 491 (2010). Adequate factual allegations need only involve "stepping back from a statement of each element of a claim and offering a narrative to support that

2

49314587.13

element." Howard M. Erichson, *What's the Difference Between a Conclusion and a Fact?*, 41 Cardozo L. Rev. 899, 906 (2020). Okavage has certainly done that here.

## III.    THE SAC PLAUSIBLY ALLEGES PERSONAL JURISDICTION OVER MAT ISHBIA

Defendants again make much of the fact that internet communications must be "targeted" at (and not merely "accessible" by) Florida residents in order to confer jurisdiction over non-resident defendants. But that is precisely what occurred here, as demonstrated by the very authority Defendants cite.

Ishbia's statements are precisely the sort of internet communications deemed sufficient to confer personal jurisdiction in Florida. Under Florida's long-arm statute, while "information" merely made "accessible" to anyone on the "World Wide Web" (e.g. a static webpage) does not confer jurisdiction, internet communications directed at "a specific group of individuals" (e.g. group emails and internet chat rooms) do, as long as some of those individuals live in Florida. *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1207-1214 (Fla. 2010). ECF No. 102, PageID.1629 (Ishbia directing his live remarks specifically to "you . . . the broker family").

For example, the defendant in *Price v. Kronenberger*, 24 So.3d 775, 776 (Fla. 5th DCA 2009), objected to personal jurisdiction because a defamatory email "addressed the e-mail only to the association members generally and did not specifically target Florida residents as recipients." *Id.* at 1209 (emphasis added). But, the court rejected that argument, concluding that the defendant "committed

49314587.13

a tortious act based on communications directed into Florida," through its email to association members, "some of whom live in Florida." *Id.*

Florida courts have specifically held that communications in an internet chat room can give rise to personal jurisdiction under Florida's long arm statute. *Id.* at 1209-1210 (citing *Becker v. Hooshmand*, 841 So.2d 561 (Fla. 4th DCA 2003)).

## IV.    OKAVAGE HAS PROPERLY PLEADED A RELEVANT MARKET

Defendants attack Okavage's allegations that wholesale lending is a relevant submarket here by claiming that the facts alleged show that wholesale and retail mortgage lending are reasonably interchangeable; that a submarket analysis will not suffice; and that the SAC's allegations are wholly conclusory. All three arguments are patently false.

First, the SAC does not allege that wholesale and retail lending are reasonably interchangeable. In fact, it alleges exactly the opposite:

> E.    The consumers who utilize the mortgage brokers and therefore the wholesale mortgage lenders *would not readily switch to a retail mortgage lender for a small difference in price,* because of their desire to obtain advice from a mortgage broker professional regarding the proper choice of a mortgage.

> F.    UWM itself maintains that the typical borrower who uses a mortgage broker will save $9,400 over the life of the loan, compared to a borrower who uses the standard retail shop.

SAC at ¶25.E-F (emphasis added).

The SAC certainly does not allege that obtaining a mortgage through the wholesale and retail channels are "functionally equivalent." The wholesale process involves the use of an independent broker who provides additional services to the

borrower, including critical information on the strengths and weaknesses of alternative lenders and products. SAC ¶¶22-23. Mr. Ishbia has described these additional services, and their benefits, in detail. ECF No. 102, Ex. A at PageID.1369-70. Thus, in the wholesale channel, the "product," including these related services, is quite different from what is obtained at retail. And borrowers therefore do not "derive comparable utility" from the wholesale and retail channels. *Jacobs v. Tempur-Pedic Int'l, Inc.* 626 F.3d 1327, 1337, n.13 (11th Cir. 2010). It is certainly plausible (as the SAC explains) that borrowers needing guidance would not readily forego these advantages. SAC ¶25E. *See also United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 54-55 (D.D.C. 2011) (separate market where different channels involved, *inter alia* a "different . . . user experience.").

Of course UWM agrees; that is why it solely operates in (and touts) the wholesale channel. The argument by UWM's lawyers that wholesale and retail lending are interchangeable is flatly contradicted by their client, Mr. Ishbia.

Second, the "reasonable interchangeability" test does not eviscerate the Supreme Court's controlling submarket analysis set forth in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), and repeatedly cited by the courts. ECF No. 105 at p.9-10. The case that Defendants most rely upon, *Jacobs*, 626 F.3d at 1337, specifically endorses the *Brown Shoe* submarket analysis: "A relevant product market can exist as a distinct subset of a larger product market." *See also id.* at n.12, *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993).

49314587.13

Third, there is no inconsistency between the submarket analysis and an interchangeability/substitutability test. The *Brown Shoe* "indicia seem to be evidentiary proxies for direct proof of substitutability. *Brown Shoe* said as much . . ." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 219 (D.D.C. 1986); *see also id.* at 219 n.4. "*Brown Shoe* . . . utilized the submarket indicia to more precisely answer the standard 'reasonable interchangeability' inquiry, whereas the trial judge in the case at bar [wrongly] believed that the basic test and the submarket indicia were not related." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 502 (6th Cir. 1983).

Fourth, the allegations in the SAC, *see, e.g.*, SAC ¶25, are not "conclusory." Some of the allegations involve very specific data (e.g., ¶25.F, referring to the $9,400 savings), and others describe general market conditions (e.g., ¶¶22-23, 25.A-E). But none are mere legal conclusions.

Fifth, Defendants' citation to *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018) is irrelevant here, because the restraint here is "horizontal," i.e. it involves an agreement between brokers, competitors operating at the same market level, SAC ¶24. Therefore, under *Amex*, a market need not be pleaded here.

Finally, Defendants' assertion that there are facts contained in the source materials for the SAC which could support their argument does not change any of these conclusions. The mere fact that the source materials use the phrase "overall mortgage market," ECF No. 107, PageID.1732, does not provide significant evidence. Businessmen can use the "market" phrase in many different ways.

6

Moreover, these same remarks very specifically address the distinct characteristics and benefits of the wholesale market. *See, e.g.*, ECF No. 102, Ex. A at PageID.1369-70. It would be improper to weigh the (weak if not irrelevant) citations offered by Defendants against the facts alleged by Okavage. *See* discussion, *supra*. That is not appropriate at the motion to dismiss phase.

## V.    THE SAC PLAUSIBLY ALLEGES A *PER SE* GROUP BOYCOTT

Defendants' arguments on the *per se* group boycott issue ignore or misstate the facts of the SAC. First, Defendants assert that parallel conduct has not been alleged. That is absurd; the SAC explains that more than 11,000 brokers agreed to the Ultimatum and thereby agreed to no longer deal with Rocket or Fairway, SAC ¶¶61, 103.B, even though 7,000 brokers had recently begun to use Rocket or Fairway because of their outstanding quality and service, *id.* ¶35.

Parallel conduct need not be identical or unanimous. *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 792 (N.D. Ill. 2017) ("Unanimity of action . . . is not required." (citation and quotations omitted)); *In re Salmon*, 2021 WL 1109128, at *13 n.23 (S.D. Fla. Mar. 23, 2021) ("Plaintiffs are not required to plead parallel conduct that is simultaneous or identical."); *Kleen Prods., LLC v. Packaging Corp. of Am.*, 775 F. Supp. 2d 1071, 1077 n.9 (N.D. Ill. 2011) ("some variation" will not "overcome [an] otherwise strong suggestion of conscious parallelism"). Of course, here, the conduct of those brokers who participated in the boycott was identical. The fact that some brokers chose not to participate simply means that they were not part of the boycott.

49314587.13

Defendants claim that the SAC does not set forth any "interbroker communications." But the host of comments made regarding compliance with the Ultimatum made during the virtual Facebook event, *see, e.g.*, SAC ¶41 ("all in," "with us or against us," "unstoppable together") were certainly interbroker communications. If not, what were they? Were the individual brokers talking to themselves? *See also id.* ¶¶43-45.

Third, Defendants claim, equally erroneously, that the SAC does not allege actions against the brokers' self-interest. But the fact that thousands of brokers chose to begin to use Rocket and Fairway, only to agree to not use them after the Ultimatum, *see* SAC ¶65, more than plausibly suggests that they were acting against their self-interest. Why would they choose to use Rocket and Fairway when making individual decisions, and agree not to only after the Ultimatum?

Defendants argue that because brokers do not operate in a highly concentrated market, they could not have conspired. But the allegations show that more than 90% of the brokers utilizing UWM acted together. *Id.* ¶¶61, 27. The fact that there are many individual brokers did not prevent collective action.

Defendants do not cite any case that says that concentration is a *necessary* plus factor. Indeed, Areeda & Hovenkamp say the opposite: "Although express conspiracies are easier to form and maintain when the collaborators are relatively few in number, manufacturers need not be concentrated in order to conspire expressly." Areeda & Hovenkamp, *Antitrust Law* ¶1606h3.

Finally, Defendants argue that market power is not adequately alleged here because Okavage bases its conclusion on a "single-quarter number." ECF No. 107, PageID.1735. But when the data shows that market share has increased to (most recently) 54%, and that is due to the boycott, according Mr. Ishbia himself, SAC ¶105, that is the best evidence of market power. There is no basis for concluding that a single quarter of data cannot "plausibly suggest" market power.

## VI.    DEFENDANTS' OTHER ARGUMENTS ARE EQUALLY DEFICIENT

Defendants' arguments on unreasonable restraint of trade and attempted monopolization suffer from the same flaws. They attack allegations of substantial consolidation and high barriers to entry as "conclusory," even though the consolidation allegations address the number and identity of lenders who left the market, SAC ¶¶106-107, and the allegations of barriers to entry address a number of specific requirements for a firm to be competitive. *See* SAC ¶¶82-84.

Defendants' attacks on Okavage's allegations regarding unreasonable restraint of trade ignore the specific detrimental effects on competition alleged at great length in the SAC and explained in Okavage's initial brief, *see* ECF No. 105, PageID.1688-1689, 1706-1709.

Finally, Defendants again try to argue the evidence, claiming that Mr. Ishbia's reference to "control of margins" was only about price cuts. But they ignore the fact that he concluded his remarks by saying that "you'll see everyone else will follow because we do control the margins in this industry." ECF No. 102, PageID.1568. Mr. Ishbia's statement plausibly alleged market power, *Restore*

9

*Robotics LLC v. Intuitive Surgical, Inc.*, 2022 WL 19408080, at *7 (N.D. Fla. Feb.

7, 2022), and there is no justification for parsing Mr. Ishbia's comments or drawing

an inference contrary to a common sense interpretation of this sentence.

Date: September 12, 2023          Respectfully Submitted,
                                  **PARRISH & GOODMAN, PLLC**
                                  /s/ Robert H. Goodman
                                  ROBERT H. GOODMAN
                                  Florida Bar No.: 1008059
                                  13031 McGregor Blvd., Suite 8
                                  Fort Myers, Florida 33919
                                  Phone: (813) 643-4529
                                  Facsimile: (813) 315-6535
                                  Primary: rgoodman@parrishgoodman.com
                                  Secondary: admin@parrishgoodman.com
                                  AND
                                  JOSEPH E. PARRISH
                                  Florida Bar No: 690058
                                  Primary: jparrish@parrishgoodman.com
                                  Secondary: admin@parrishgoodman.com
                                  *Counsel for Plaintiffs*

10

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this 12th day of September, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing Generated by CM/ECF.

/s/Robert H. Goodman
*Attorney for Plaintiffs*

49314587.13