## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 3:21-cv-00448-BJD-JRK

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,

        *Plaintiff*,

         v.

UNITED WHOLESALE MORTGAGE, LLC
and MAT ISHBIA, individually,

        *Defendants.*

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I. Introduction ................................................................................................1

II. Summary of Alleged Facts............................................................................4

III. Standard of Review ......................................................................................5

IV. Argument ......................................................................................................6

A. The Report Correctly Recommends Dismissal of All Claims Against Mr. Ishbia for Lack of Personal Jurisdiction (Counts X-XVII) ..............................................................................................6

B. The Report Correctly Recommends Dismissal of Plaintiff's Per Se Group Boycott Claims (Counts I and IV) ........................................6

    1. Plaintiff's Objections Fail to Address the Substance of the Magistrate Judge's Ruling on the Per Se Group Boycott Claims.....................................................................................6

    2. Each of Plaintiff's Objections with Respect to the Per Se Group Boycott Claims Also Fails on Its Merits. .........................9

C. The Report Correctly Recommends Dismissal of Plaintiff's "Rule of Reason" Claims (Counts II and V)..................................................16

D. The Report Correctly Recommends Dismissal of Plaintiff's Attempted Monopolization Claims (Counts III and VI) .....................19

E. The Report Correctly Recommends Dismissal of Plaintiff's FDUTPA and Declaratory Judgment Claims (Counts VIII and IX) ..............................................................................................20

V. Conclusion ..................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 5, 9, 10

*Big Apple BMW, Inv. v. BMW of N. Am., Inc.*,
    974 F.2d 1358 (3d Cir. 1992)......................................................................13

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*,
    203 F.3d 1028 (8th Cir. 2000) ....................................................................10

*Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*,
    No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405 (M.D. Fla. Sep. 21,
    2017) .............................................................................................................6

*Bolinger v. First Multiple Listing Serv., Inc.*,
    838 F. Supp. 2d 1340 (N.D. Ga. 2012) ......................................................10

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1967) ....................................................................................13

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (2012) ...................................................................................5

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
    245 F. Supp. 3d 1343 (N.D. Ga. 2017) ......................................................11

*In re Disposable Contact Lens Antitrust Litig.*,
    215 F. Supp. 3d 1272 (M.D. Fla. 2016) ......................................................10

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) .....................................................................................9

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
    500 F.3d 1276 (11th Cir. 2007).....................................................................4

*Hoefling v. City of Miami*,
    811 F.3d 1271 (11th Cir. 2016).....................................................................14

*In re Insurance Brokerage Antitrust Litigation*,
    618 F.3d 300 (3d Cir. 2010) .................................................................. 11, 12

*Levine v. Centr. Fla. Medical Affiliates*,
    72 F.3d 1538 (11th Cir. 1996) .....................................................................13

*MM Steel L.P. v. JSW Steel (USA) Inc.*,
806 F.3d 835 (5th Cir. 2015) ............................................................................13

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) ................................................................................... 9, 12

*Nobody in Particular Presents, Inc. v. Clear Channel Comm's, Inc.*,
311 F. Supp. 2d 1048 (D. Colo. 2004) ..............................................................20

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
472 U.S. 284 (1985) .............................................................................. 7, 12, 13

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998) ...........................................................................................7

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) .....................................................................................16

*In the Matter of ProMedica Health Sys., Inc.*,
No. 9346, 2012 WL 1155392 (F.T.C. Mar. 28, 2012) ................................. 18, 19

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019)..........................................................................10

*Realcomp II, Ltd. v. Federal Trade Comm'n*,
635 F.3d 815 (6th Cir. 2011) ............................................................................19

*Silver v. New York Stock Exchange*,
373 U.S. 341 (1963) .........................................................................................12

*State Oil Co. v. Khan*,
522 U.S. 3 (1997)................................................................................................7

*In re Terazosin Hydrochloride*,
220 F.R.D. 672 (S.D. Fla. 2004) .......................................................................15

*Texaco, Inc. v. Dagher*,
547 U.S. 1 (2006)................................................................................................7

*United Am. Corp. v. Bitmain, Inc.*,
530 F. Supp. 3d 1241 (S.D. Fla. 2021)................................................................7

*United States v. Apple*,
791 F.3d 290 (2d Cir. 2015) ....................................................................... 10, 11

*United States v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005) .............................................................................19

*United States v. H&R Block*,
833 F. Supp. 2d 36 (D.D.C. 2011)............................................................... 15, 18

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)...........................................................................5

*Virgin Atl. Airways, Ltd. v. British Airways, PLC,*
    257 F.3d 256 (2d Cir. 2001) ................................................................ 18

**State Cases**

*Internet Solutions Corp. v. Marshall,*
    39 So. 3d 1201 (Fla. 2010) ................................................................. 6

*Kitroser v. Hurt,*
    85 So. 3d 1084 (Fla. 2012) ................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................... 3, 5

Fed. R. Civ. P. 12(b)(6) ...................................................................... 5

Fed. R. Civ. P. 72(b)(3) ...................................................................... 5

Defendants United Wholesale Mortgage, LLC ("UWM") and Mathew Ishbia ("Mr. Ishbia") (together the "Defendants") respond to Plaintiff's Objections to Magistrate Judge's Report and Recommendation on Motion to Dismiss [ECF No. 112] ("Objections" or "Obj."), as follows:

## I.    <u>Introduction</u>

After three years, four complaints, and two thorough (50-page and 49-page) Reports and Recommendations of the Magistrate Judge recommending dismissal [ECF Nos. 61, 112], this matter should come to an end. The case-dispositive problem for Plaintiff The Okavage Group, LLC ("Plaintiff"), remains the same as it was at the start: Plaintiff has never alleged and can never allege any basis for personal jurisdiction against Mr. Ishbia, or any plausible set of facts making out a claim for antitrust violations, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), or declaratory judgment against UWM. This case has always been litigation theater geared at generating headlines rather than advancing any valid claim against the Defendants, and, as the Magistrate Judge has now twice correctly found, claims grounded in buzzwords, conclusions, speculation, and innuendo lack sufficient factual content to state a facially plausible claim. Accordingly, the Court should overrule Plaintiff's objections and adopt the Magistrate Judge's Report and Recommendation [ECF No. 112] (the "Report" or "Rpt.").

Plaintiff is an independent mortgage broker that briefly did business with UWM, and complains of UWM's decision to amend the terms on which it does business with brokers when it announced its "All-In Initiative" on March 4, 2021.

UWM launched this initiative to address its concerns regarding practices by Rocket Pro TPO ("Rocket") and Fairway Independent Mortgage ("Fairway"), which provide mortgages in both the wholesale channel (originated by brokers) and the retail channel (originated directly by lenders without brokers). UWM, which operates exclusively in the wholesale channel, believes Rocket and Fairway harm the vibrant, pro-consumer network of brokers by converting brokers' customers from the wholesale side to the retail side to the detriment of the wholesale channel. UWM therefore decided to end its business relationship with brokers originating loans with Rocket and Fairway.

UWM amended its Broker Agreement (the "Amendment") to that effect in accordance with its contractual right to amend.  The Amendment (which Plaintiff describes falsely as an "ultimatum" and "boycott") does not require brokers to originate any loans with UWM. It is terminable at any time, with or without cause, and terminating brokers can immediately originate mortgages with Rocket or Fairway. Both brokers who opted into the Amendment and those who did not continued to have access to at least 50+ other lenders in the wholesale mortgage channel.

Plaintiff commenced suit in April 2021 and filed its First Amended Complaint in August 2021, seeking to force UWM to do business on Plaintiff's preferred terms rather than those set forth in the Amendment, which Plaintiff had rejected. Rpt. at 2. The Magistrate Judge issued the first Report and Recommendation in July 2022, recommending that the claims against Mr. Ishbia be dismissed for lack of personal jurisdiction, the claims against UWM be dismissed for failure to state a claim, and Plaintiff be given an opportunity to refile. *See* Report and Recommendation [ECF No.

61] (the "First Report" or "First Rpt."). Plaintiff filed its Second Amended Complaint in November 2022, and its operative Supplemental Class Action Complaint in July 2023 [ECF No. 96] (the "Complaint" or "Suppl. Compl."). Defendants moved to dismiss each of Plaintiff's four complaints. [*See* ECF Nos. 16, 46, 73, 102]. They filed their Motion to Dismiss the present Complaint in August 2023 [ECF No. 102] (the "Motion" or "Mot."). Following briefing, the Magistrate Judge issued the Report giving rise to the present Objections on February 6, 2024, *recommending dismissal of each of Plaintiff's claims and not recommending leave to refile.* [ECF No. 112].

First, the Magistrate Judge recommends dismissal of the claims against Mr. Ishbia (Counts X-XVII) for lack of personal jurisdiction under Rule 12(b)(2), finding that Florida's corporate shield doctrine applies here. Rpt. at 10-14.

Second, the Magistrate Judge recommends dismissal of Plaintiff's per se group boycott claims (Counts I and IV) because (1) Plaintiff has not alleged a plausible "hub and spoke" conspiracy, and (2) Plaintiff has not alleged that UWM wields sufficient market power in the relevant market to restrain competition. *Id.* at 15-35.

Third, the Magistrate Judge recommends dismissal of Plaintiff's "rule of reason" claims (Counts II and V) because Plaintiff has failed to allege either actual or potential detrimental effects on competition. *Id.* at 35-40.

Fourth, the Magistrate Judge recommends dismissal of Plaintiff's attempted monopolization claims (Counts III and VI) because (1) Plaintiff has not alleged facts supporting a dangerous probability of success, and (2) Plaintiff has not sufficiently alleged a specific intent to monopolize. *Id.* at 40-43.

3

Fifth, the Magistrate Judge recommends dismissal of Plaintiff's tortious interference claim (Count VII) for failure to allege a business relationship or intentional and unjustified interference, which Plaintiff does not oppose. *Id.* at 43-47.

Sixth, the Magistrate Judge recommends dismissal of Plaintiff's claims for violation of FDUTPA and declaratory judgment (Counts VIII and IX), because both depend upon the validity of the antitrust claims. *Id.* at 47-48.

Each of these recommendations is correct. Plaintiff's Objections ignore the substance of the Magistrate Judge's reasoning in favor of a list of picayune disagreements with discrete words, phrases, and cases cited over the course of the Report. Each Objection fails on its own merits, but even taken together they provide no basis to depart from any of the Report's conclusions or recommendations.

## II.   Summary of Alleged Facts

The Report accurately summarizes the Complaint's allegations, and its summary need not be repeated in full here. Rpt. at 2-9. Briefly, Plaintiff is a mortgage broker who did business with UWM for less than a year, and also does business with Rocket and Fairway. Suppl. Compl. ¶¶ 17, 68-69; Mot. Ex. E.[1] UWM offers mortgage loans through mortgage brokers, and thus has a vertical relationship with brokers like Plaintiff. Suppl. Compl. ¶¶ 16, 20, 22, 27, 29.

---

[1] The Complaint references UWM's 2022 annual report, its Q4 2022 earnings call, an interview with Mr. Ishbia, the original Broker Agreement, Mr. Ishbia's announcement of the All-In Initiative on Facebook Live, and the Amendment. Suppl. Compl. ¶¶ 17, 36-40, 51, 68-70, 101-105. The Court may take judicial notice of these materials because they are referred to in the Complaint and neither party challenges their authenticity. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007). Defendants therefore included these materials as exhibits to the Motion. *See* Mot. Exs. A-G. The Report references several of these exhibits. Rpt. at 33, 34, 41, 42.

Mr. Ishbia, in his capacity as President and CEO of UWM, announced the All-In Initiative on March 4, 2021, stating that UWM was amending its Broker Agreement to require a representation and warranty that mortgage brokers who submit loans to UWM will not also submit loans to Rocket or Fairway. *Id.* ¶ 36. Many brokers made enthusiastic statements online expressing their support. *Id.* ¶¶ 41-42, 44, 49-50, 52. Plaintiff declined UWM's Amendment and alleges UWM terminated its Broker Agreement. *Id.* ¶¶ 70-71. Either party can terminate the Broker Agreement "for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice[.]" Mot., Ex. A §§ 7.05, 7.06. Under the Amendment, a notice of termination immediately releases the broker from its commitment not to submit loans to Rocket or Fairway. Mot., Ex. G § 3.05.

### III. <u>Standard of Review</u>

This Court reviews the Report *de novo*. Fed. R. Civ. P. 72(b)(3).

Plaintiff has the initial burden under Rule 12(b)(2) to allege "sufficient facts to make out a prima facie case of jurisdiction" against a nonresident defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted).

To survive a Rule 12(b)(6) motion, Plaintiff must state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations are insufficient. *Twombly*, 550 U.S. at 55. "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (2012) (quoting *Twombly*, 550 U.S. at 556).

IV.   <u>**Argument**</u>

**A.    The Report Correctly Recommends Dismissal of All Claims Against Mr. Ishbia for Lack of Personal Jurisdiction (Counts X-XVII)**

The Report correctly finds that Florida's corporate shield doctrine applies and defeats personal jurisdiction with respect to Plaintiff's claims against Mr. Ishbia, because those claims are based solely upon his role as UWM's chief executive and Plaintiff alleges no separate personal connection to Florida. Rpt. at 10-14. Plaintiff fleetingly asserts personal jurisdiction because "antitrust violations are a statutory tort." Obj. at 5. But Plaintiff has not alleged any viable antitrust violations, as discussed below. Regardless, the intentional tort exception to the corporate shield doctrine is inapplicable to a "nonresident employee-defendant" like Mr. Ishbia, who "commits no [tortious] acts ***in Florida***[.]" *Kitroser v. Hurt*, 85 So. 3d 1084, 1089-90 (Fla. 2012) (emphasis added). The creation of Internet content not "targeted" at but merely "accessible" in Florida, like Mr. Ishbia's Facebook Live announcement, does not suffice. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207, 1213 (Fla. 2010); *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *4 (M.D. Fla. Sep. 21, 2017).

**B.    The Report Correctly Recommends Dismissal of Plaintiff's Per Se Group Boycott Claims (Counts I and IV)**

**1.    Plaintiff's Objections Fail to Address the Substance of the Magistrate Judge's Ruling on the Per Se Group Boycott Claims.**

Plaintiff's Objections ignore almost the entirety of the Magistrate Judge's thoughtful 21-page analysis recommending dismissal of Plaintiff's per se group boycott

claims. Rpt. at 15-35. Plaintiff does not dispute that per se claims are limited to those that have a "predictable and pernicious anticompetitive effect," and "turns on whether the practice facially appears to be one that would always or almost always tend to restrict competition[.]" Rpt. at 16-17 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985). Nor does it dispute that the Supreme Court has cautioned against adopting per se rules "where the economic impact of certain practices is not immediately obvious," and that the per se label should be applied "infrequently and with caution." *Id.* at 17-18 (quoting *Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006)); *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1271 (S.D. Fla. 2021).

Plaintiff also does not contest that the per se rule in the boycott context is limited to "cases involving horizontal agreements among direct competitors," and that "[t]he freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage." *Id.* at 18-19 (quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135, 137 (1998)). Plaintiff does not dispute that it fails to allege a horizontal agreement among direct competitors, because the agreements at issue are vertical agreements between UWM and its brokers. *Id.* at 20. And Plaintiff does not object to the Magistrate Judge's finding that Plaintiff does not allege a "hub and spoke" conspiracy because "there are not enough facts" in the Complaint "to plausibly suggest the brokers agreed among themselves to boycott Rocket and Fairway," leaving a "rimless wheel" that "does not amount to a per se restraint of trade[.]" *Id.* at 20-23.

The Objections are similarly sparse with respect to the latter half of the

Magistrate Judge's per se analysis, which finds that even if Plaintiff had alleged a horizontal agreement between direct competitors, it does not plausibly allege that UWM wields sufficient market power or exclusive access to restrain competition. *Id.* at 25-35. Plaintiff does not dispute that defining the relevant market requires application of the "reasonable interchangeability" test, with particular attention to cross-elasticity of demand and reasonable substitutability of products. *Id.* at 28-29. Plaintiff also does not discuss or dispute the Report's finding that wholesale and retail mortgages are interchangeable, cross-elastic, and reasonably substitutable, and thus define one market of all residential mortgages. *Id.* at 30-32.

These unobjected-to findings, by themselves, support adoption of the Report's recommendation to dismiss Plaintiff's per se group boycott claims. As the Magistrate Judge's careful analysis makes clear, Plaintiff's conclusory recitation of the phrase "group boycott" to describe UWM's ***vertical*** agreements with its brokers does not place the .All-In Initiative within the narrow, infrequently used, and cautiously constrained categories of conduct that may properly be labeled per se antitrust violations. At most, Plaintiff alleges vertical agreements between UWM and its brokers, with the brokers free to terminate and switch to Rocket and Fairway immediately at any time, without any "rim" connecting the brokers' vertical agreements into a hub and spoke group boycott, and without adequate market power on the part of UWM to restrict competition, decrease output, or otherwise bring about anticompetitive effects in the relevant market of residential mortgage loans. At bottom, nothing UWM has done facially restrains the ability of consumers to choose any broker they want, any lender

they want, and any residential mortgage loan product they want.

> **2.    Each of Plaintiff's Objections with Respect to the Per Se Group Boycott Claims Also Fails on Its Merits.**

Each of Plaintiff's Objections also fails on its individual merits. Plaintiff first inexplicably cites case law finding that, at the ***summary judgment*** stage, its evidence "is to be believed[.]" Obj. at 1-2 (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)). This is not a summary judgment motion, and Plaintiff has not even offered plausible ***allegations***, much less evidence, to support its claims. To survive dismissal, Plaintiff must supply more than "descriptions of parallel conduct" without any "independent allegation of actual agreement[.]" *Twombly*, 550 U.S. at 564. Plaintiff asserts that the Report "contravene[s]" *Twombly*'s statement that the Complaint "does not need detailed factual allegations." Obj. at 9-10. But the Report accurately cites *Twombly*, stating that Plaintiff must supply "enough factual matter (taken as true) to suggest that an agreement was made," and "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." Rpt. at 14 (quoting *Twombly*, 550 U.S. at 556). Put simply, it is Plaintiff's obligation to "nudge[] [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Here, as the Report correctly finds, Plaintiff has alleged no facts setting forth an actual agreement among brokers.

Plaintiff next objects that the Report should not have "labeled as conclusory" its allegations that brokers acted against their unilateral self-interests, picking out the words "equally likely" to suggest that the Magistrate Judge has chosen "between

alternative plausible inferences[.]" Obj. at 2, 5-7. What the Report actually says is that Plaintiff's "conclusory assertion" of brokers "acting against their individual interests" is ***not*** a plausible inference of a "plus factor" where it is "equally likely" the brokers were choosing the Amendment as a matter of unilateral self-interest. Rpt. at 24-25. That is the correct analysis. Plaintiff has alleged no facts demonstrating any "uniformity that would be unexpected or idiosyncratic" or "***rule out the possibility***" that the brokers "were acting independently" for their individual best interests. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1271-72 (11th Cir. 2019) (emphasis added) (quoting *Twombly*, 550 U.S. at 553-54). "The Court cannot infer such an agreement from what is simply a unilateral business decision." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1361 (N.D. Ga. 2012).

The Magistrate Judge's reasoning also aligns with "plus factor" precedent, which requires "complex and historically unprecedented changes in pricing structure made at the same time by multiple competitors" for "no other discernible reason," accompanied by "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re Disposable Contact Lens Antitrust Litig.*, 215 F. Supp. 3d 1272, 1294-95 (M.D. Fla. 2016) (quoting *United States v. Apple*, 791 F.3d 290, 315 (2d Cir. 2015)). Plaintiff's own authorities illustrate the level of factual pleading required—and absent here. *See, e.g., Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (requiring "a high level of communications among competitors" about "price

verification" and finding plaintiff's evidence "far too ambiguous" to allege a plus factor); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1372 (N.D. Ga. 2017) (rejecting assertion of "invitation to collude" as a plus factor based on earnings call statement that did not "tend[] to exclude" independent action).

Plaintiff insists *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), is "highly analogous" and contradicts the Report. Obj. at 7. It is not analogous, as it involved collusion among three publishers to fix prices in a highly concentrated market, in which the defendant "consciously played a key role." *Id*. at 316. There are no similar allegations here that UWM coordinated brokers into horizontal arrangements. *See id*. at 319. Plaintiff also asserts that the Report misinterprets *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010). Obj. at 7. It does not. In that case, the alleged conspiracy concerned numerous competing insurance companies collaborating with brokers to allocate and funnel clients, thereby insulating themselves from competition, yet still ***failed*** to state a per se claim. 618 F.3d at 322-36. The factual allegations here are far weaker, and Plaintiff has not alleged that the brokers "exchanged assurances of common action." *Id*. at 322. *See* Rpt. at 23.

Plaintiff wrongly asserts that the Report "fails to address" paragraphs 41-44 of the Complaint regarding brokers' "extensive interactions" and "interfirm communications." Obj. at 2, 5-7. In fact, the Report addresses each of these allegations and others, which do ***not*** set forth "concerted action" or "interfirm communications" by brokers, but rather "independent expressions of enthusiasm and encouragement"—

which, again, is inconsistent with Plaintiffs' conclusory insistence they were acting against their self-interest. Rpt. at 23-24. The Magistrate Judge similarly found in the First Report that such expressions do not plausibly allege "concerted actions" or "an agreement among the brokers sufficient to form the rim of a conspiracy." First Rpt. at 33 (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 329-30 (3d Cir. 2010). A party "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). Plaintiff's allegations that brokers enthusiastically supported UWM's initiative do not tend to exclude independent action in the brokers' individual self-interest.

Plaintiff next contends the Report misapplies *Northwest Wholesale Stationers* because it does not consider "important business advantages" from which Rocket and Fairway would be "cut off," as purportedly evidenced by the fact that 11,000 brokers previously doing business with Rocket and Fairway ceased doing so. Obj. at 3-4, 8-9, 11. The Report properly analyzes *Northwest Wholesale Stationers*, in which the Supreme Court rejected per se treatment for conduct not "characteristically likely" to "result in predominantly anticompetitive effects," and required a boycott to "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete" due to "a dominant position in the market." Rpt. at 26-27 (quoting *Nw. Wholesale Stationers*, 472 U.S. at 284, 294-97). As the Report correctly finds, such factual allegations are wholly absent here. Rpt. at 27-34. Plaintiff has alleged nothing like the circumstances of *Silver v. New York Stock Exchange*, 373 U.S. 341 (1963), where defendant controlled and cut off access to a private wire connection that was the only means for traders to

access available market information. *Id*. at 347-48. UWM does not have any similar ability to "cut off" Rocket or Fairway from any supply, facility, or market necessary to their origination of residential mortgage loans. The fact that many brokers prefer UWM over Rocket and Fairway is not a "cut off"; it is competition. *See Levine v. Centr. Fla. Medical Affiliates*, 72 F.3d 1538, 1551 (11th Cir. 1996) ("The antitrust laws are intended to protect competition, not competitors") (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 344 (1967)). Plaintiff's summary judgment and post-verdict authorities again do not assist Plaintiff, as they require what Plaintiff cannot supply— facts that "tend to exclude the possibility of independent action." *Big Apple BMW, Inv. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1365 (3d Cir. 1992); *see also MM Steel L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 844 (5th Cir. 2015) (similar).

*Northwest Wholesale Stationers* further applies because, as in that case, UWM lacks a dominant position in the market. The Magistrate Judges bases this conclusion on, *inter alia*, the relevant market of all residential mortgage loans under the governing reasonable interchangeability test, the inadequacy of Plaintiff's conclusory allegations of a separate wholesale market, UWM's 11% share of the overall residential mortgage market, and the fact that even if there were a separate wholesale market (though there is not), UWM's share of that market would be only 38%. Rpt. at 27-34. Plaintiff mischaracterizes the Magistrate Judge's market dominance analysis as an "impermissible selection of one (weaker) piece of market share evidence as more relevant than another" and choosing "among plausible inferences" because the Report regards 38% rather than 54% as UWM's share of the wholesale channel. Obj. at 3, 11.

13

The Magistrate Judge was not choosing "among plausible inferences," but rather was quoting the earnings call on which Plaintiff relies for its 54% assertion, which does not reflect a 54% wholesale market share, but rather "54% market share of the broker channel in the fourth quarter," which represents "about 11% of the overall mortgage market," with a "38% market share of the wholesale channel" for 2022. Rpt. at 33-34. That is a proper application of the well-settled principle that "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Moreover, Plaintiff ignores the Report's preceding analysis, in which it finds that the properly defined market based on reasonable interchangeability is the entire residential mortgage market, in which UWM has only an 11% share. Rpt. at 28-34.

Plaintiff's only response to the relevant market question is to disregard the Report's reasonable interchangeability analysis altogether, and to assert that the Report fails to address paragraphs 22-23 and 25.F, purporting to explain why customers "may prefer mortgages from wholesale lenders" due to various service or cost considerations. Obj. at 9-11. Again, however, the Report does specifically address those allegations and others with respect to defining the relevant market, and correctly finds that they do not alter the reasonable interchangeability analysis because they do not indicate a lack of interchangeability, a lack of cross-elasticity of demand, or a lack of reasonable substitutability between wholesale and retail mortgages. Rpt. at 29-32. More specifically, paragraphs 22-23 are just "statements regarding mortgage brokers generally and how they operate," and do not address reasonable substitutability. *Id*. at

14

31. And paragraph 25.F's discussion of cost savings for "typical" borrowers "actually constitutes evidence of the cross-elasticity of demand and reasonable substitutability of these products," as it indicates that consumers would readily switch between residential mortgage loan products in exchange for cost savings. *Id.* at 30-31. Plaintiff's authority is inapposite, as it involves distinct tax preparation products provided "though an entirely different method, technology, and user experience," with a "price disparity" of six to eight times between the two product types ($25 to $55 versus $150 to $200). *United States v. H&R Block*, 833 F. Supp. 2d 36, 55 (D.D.C. 2011).

Plaintiff asserts that the Report "fails to consider" that UWM's market power is established by its supposed power to "raise prices or impose other burdensome terms" on the 93% of brokers that preferred UWM to Rocket and Fairway. Obj. at 3-4, 11-12. But that ignores the Report's correct determination that the relevant market is all residential mortgage loans, and Plaintiff has alleged no ability on the part of UWM to raise prices, impose onerous terms, or dominate the residential mortgage loan market. Rpt. at 27-34. Plaintiff also does not allege that UWM has the power to raise prices even in the wholesale channel, and does not address the fact that brokers were and are free to terminate with UWM at will and to immediately do business with Rocket and Fairway—hardly an "onerous" term. Mot., Ex. A §§ 7.05, 7.06; Mot., Ex. G § 3.05. Plaintiff's authority is also a monopoly case, not a per se conspiracy case, and still requires market power to be determined by reference to the "relevant market[.]" *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 696 (S.D. Fla. 2004).

Lastly, Plaintiff insists the Report fails to address its "barriers to entry"

allegations and falsely asserts that the Magistrate Judge imposes a "requirement" to "anticipate, and address, every possible counter-argument on barriers to entry[.]" Obj. at 4, 12-13. In reality, the Report points out the obvious—that Rocket and Fairway are already retail lenders that have also entered the wholesale channel, and Plaintiff has failed to allege any barriers to entry that would prevent similar retail competitors from entering the same channel. Rpt. at 34. The Report also notes Plaintiff's failure to allege how many wholesale lenders remain in the wholesale channel, and how many have entered the wholesale channel. *Id.* Indeed, Plaintiff has never disputed that there are 50+ other competitors already in the market, even crediting its claim of 17 recent exits. Mot., Ex. F at 16:9-18. Plaintiffs' allegations of "general 'barriers to entry' for new competitors" do not suffice to show dominance under these circumstances. *See id.*

### C.    The Report Correctly Recommends Dismissal of Plaintiff's "Rule of Reason" Claims (Counts II and V)

Plaintiff again fails to address most of the substance of the Report's recommendation for dismissal of Plaintiff's "rule of reason" claims. *See* Rpt. at 35-40. Plaintiff does not dispute the applicability of the Supreme Court's three-step, burden-shifting analysis, or that it has the initial burden to allege "a substantial anticompetitive effect that harms consumers in the relevant market." *Id.* at 35-36 (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)).  Plaintiff also does not contest that satisfying this burden requires it to show either an actual or potential detrimental effect on competition. *Id.* at 36. Plaintiff does not dispute that it has alleged "no underlying facts at all" to support its assertion that the so-called "ultimatum" has increased the cost of

16

mortgage loans either in the relevant market of all residential mortgages or even in the wholesale channel. *Id*. at 37. Plaintiff does not object to the Report's finding that Plaintiff alleges no facts indicating the "actual effects" on the "market as a whole" of the fact that "the brokers who decided to work with UWM could not apply for mortgages from Rocket or Fairway[.]" *Id*. at 37-38. Plaintiff further does not contest the Report's finding that Plaintiff supplies "nothing in the factual assertions" to show that Rocket and Fairway "were ever eliminated, or that they no longer participate in the wholesale mortgage market," rendering Plaintiff's allegations of harm to Rocket and Fairway "speculative at best" and "short of adequately pleading direct evidence of anticompetitive effects." *Id*. at 38. Plaintiff also does not dispute that it lacks allegations of the "potential for genuine adverse effects on competition." *Id*. at 38-40. On the basis of these unobjected-to findings alone, the Court should adopt the Report's recommendation to dismiss Plaintiff's rule of reason claims.

Plaintiff's Objections do not change the outcome. Plaintiff objects that the Report does "not address[]" its allegations of harm to Rocket and Fairway, which Plaintiff asserts are the equivalent of allegations of harm to the market, because Rocket and Fairway purportedly offer lower prices and better-quality products than UWM, and are UWM's largest rivals and closest competitors. Obj. at 4, 13-15. That again mischaracterizes the Report, which extensively addresses Plaintiff's allegations of harm to Rocket and Fairway, including most of the specific paragraphs of the Complaint cited by Plaintiff. *See* Rpt. at 37-39 (addressing Suppl. Compl. ¶¶ 72-81). Putting aside the obvious point that "[n]either Fairway nor Rocket are parties to this

lawsuit," Rpt. at 3, the Report identifies five central problems with these allegations: (1) "there are no facts indicating the actual effects" of the supposed harm to Rocket and Fairway "on the market as a whole"; (2) there are no factual allegations "that Rocket and Fairway were ever eliminated" from the market "or that they no longer participate in the wholesale mortgage market"; (3) Plaintiff's allegations of what would happen to the market if Rocket and Fairway were eliminated "are speculative at best" and do not plead "direct evidence of anticompetitive effects"; (4) Plaintiff has alleged "no supporting facts regarding how" reduced access to mortgages from Rocket and Fairway "harmed the overall mortgage market—or wholesale market—as a whole"; and (5) consumers remained "free to access [Rocket and Fairway] mortgages from the brokers who did not work with UWM or sign the agreement." Rpt. at 37-39.

The Objections offer no answers to any of these findings. In fact, Plaintiff's authorities support the Magistrate Judge's findings. Because Plaintiff has not alleged the elimination of Rocket and Fairway or any harm to the residential mortgage market as a whole, it has not alleged a rule of reason claim. *See, e.g., H&R Block*, 833 F. Supp. 2d at 79 (enjoining merger that "would result in the ***elimination*** of a particularly aggressive competitor in a ***highly concentrated market***") (emphases added); *In the Matter of ProMedica Health Sys., Inc.*, No. 9346, 2012 WL 1155392, at *32 (F.T.C. Mar. 28, 2012) (discussing proposed combination of competitors that "may enable the merged firm profitably to increase prices"); *Virgin Atl. Airways, Ltd. v. British Airways, PLC*, 257 F.3d 256, 264-265 (2d Cir. 2001) (finding section 1 claim "must be dismissed" because plaintiff failed to show "actual adverse effect" or "harm to consumers").

18

Plaintiff also asserts that the Report fails to address the impact of the so-called "boycott" on "the autonomy of the marketplace." Obj. at 14. But as its lead case reflects, such harm is only established where the defendant has the power to ***control market access***, *i.e.*, an exclusive real-estate listing service that used a website policy to effectively exclude residential real estate brokers from the relevant geographic market. *See Realcomp II, Ltd. v. Federal Trade Comm'n*, 635 F.3d 815, 829 (6th Cir. 2011). Plaintiff has alleged no similar market power on the part of UWM to control access to the relevant market of all residential mortgage loans, nor even the wholesale channel. Rocket and Fairview are not foreclosed from the market, as the Report notes, because consumers remain free to access their mortgages from other brokers—or through the retail channel. *See* Rpt. at 38-39. And the 50+ other wholesale lenders in the market are not impacted at all, with Plaintiff offering "no supporting facts" demonstrating harm to "the overall mortgage market—or wholesale market—as a whole." *Id.* at 38. Plaintiff certainly has not met the bar set by its other case—a monopoly decision—of excluding "a substantial number of rivals" or "severely restrict[ing] the market's ambit." *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005)

**D.    The Report Correctly Recommends Dismissal of Plaintiff's Attempted Monopolization Claims (Counts III and VI)**

The Report recommends dismissal of Plaintiff's attempted monopolization claims because Plaintiff has not alleged a dangerous probability of achieving monopoly power in the relevant market of all residential mortgage loans, in which UWM has an 11% market share, or in the wholesale channel, in which UWM has a 38% market

share. Rpt. at 40-43. Plaintiff does not raise any separate Objections with respect to these claims, but merely asserts that the Report "rest[s] on the foregoing erroneous conclusions," and repeats the assertion that UWM's market share supposedly increased "to 54% at the expense of Rocket and Fairway." Obj. at 4. These arguments fail for all the reasons already discussed, and Plaintiff's new authority is clearly inapposite, as it involved an increase in market share from 0.45% to 50.48% in two years. *See Nobody in Particular Presents, Inc. v. Clear Channel Comm's, Inc.*, 311 F. Supp. 2d 1048, 1103 (D. Colo. 2004). No similar allegations are made here.

Plaintiff also does not object to the Report's separate finding that, even if Plaintiff adequately alleged the relevant market and a dangerous possibility of achieving market power, it fails to allege a specific intent to monopolize. Rpt. at 43. That uncontested finding by itself supports the Report's recommendation of dismissal.

### E.     The Report Correctly Recommends Dismissal of Plaintiff's FDUTPA and Declaratory Judgment Claims (Counts VIII and IX)

Plaintiff raises no separate Objections to the recommended dismissal of the FDUTPA and declaratory judgment claims, simply asserting that the recommendation rests "on the foregoing erroneous conclusions." Obj. at 4. As the Report correctly finds, both claims are dependent on the asserted antitrust violations, and therefore should be dismissed for the same reasons. Rpt. at 47-48.

### V.     <u>Conclusion</u>

Wherefore, Defendants respectfully request that the Court overrule Plaintiff's Objections, accept the Magistrate Judge's Report, and dismiss the Complaint.

Dated: March 4, 2024

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone: 954-765-0500
Fax: 954-765-1477

By:     /s/ *Glenn E. Goldstein*
       **Glenn E. Goldstein**
       Florida Bar No. 435260
       Email: GoldsteinG@gtlaw.com
       depasqualem@gtlaw.com
       FLService@gtlaw.com

       **Sabrina D. Niewialkouski**
       Florida Bar No. 0123630
       Email: Niewialkouskis@gtlaw.com
       Anastasiya.Karant@gtlaw.com
       FLService@gtlaw.com

*Attorneys for Defendants United Wholesale Mortgage, LLC and Mat Ishbia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Glenn E. Goldstein*
GLENN E. GOLDSTEIN