UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 3:21-cv-00448-WWB-LLL

THE OKAVAGE GROUP, LLC
on behalf of itself and all others
similarly situated,
       *Plaintiff*,

  v.

UNITED WHOLESALE MORTGAGE, LLC
and MAT ISHBIA, individually,
       *Defendants*.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS**

Defendants United Wholesale Mortgage, LLC ("UWM") and Mathew Ishbia ("Mr. Ishbia") (together the "Defendants") respond to Plaintiff's Objections to Magistrate Judge's Report and Recommendation [ECF No. 116] ("Objections" or "Obj."):

**I. Introduction**

After three years, four complaints, and two thorough (50-page and 49-page) Reports and Recommendations of the Magistrate Judge recommending dismissal [ECF Nos. 61, 112], this matter should come to an end. Plaintiff The Okavage Group, LLC ("Plaintiff") has never alleged and can never allege any basis for personal jurisdiction against Mr. Ishbia, or any plausible set of facts making out a claim for antitrust violations, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), or declaratory judgment against UWM. As the Magistrate Judge has now twice correctly found, claims grounded in buzzwords, conclusions, and speculation lack sufficient factual content to state a facially plausible claim. Accordingly, the Court should adopt the Magistrate Judge's Report and Recommendation [ECF No. 112] (the "Report" or "Rpt.").

1

Plaintiff is an independent mortgage broker that briefly did business with UWM, and complains of UWM's decision to amend the terms on which it does business with brokers. UWM announced its "All-In Initiative" on March 4, 2021, to address its concerns regarding practices by Rocket Pro TPO ("Rocket") and Fairway Independent Mortgage ("Fairway") harmful to mortgage brokers. UWM decided to end its relationship with brokers originating loans with Rocket and Fairway, and amended its Broker Agreement (the "Amendment") to that effect. The Amendment does not require brokers to originate any loans with UWM. It is terminable at any time, with or without cause, and terminating brokers can immediately originate mortgages with Rocket or Fairway. All brokers continued to have access to 50+ other lenders in the wholesale mortgage channel.

Plaintiff commenced this suit in 2021. Rpt. at 2. The Magistrate Judge issued the first Report and Recommendation in July 2022, recommending that Plaintiff's First Amended Complaint be dismissed against Mr. Ishbia for lack of personal jurisdiction and against UWM for failure to state a claim. *See* Report and Recommendation [ECF No. 61] (the "First Report" or "First Rpt."). Plaintiff filed a Second Amended Complaint, and thereafter, its operative Supplemental Class Action Complaint [ECF No. 96] (the "Complaint" or "Suppl. Compl."). Defendants moved to dismiss the present Complaint in August 2023 [ECF No. 102] (the "Motion" or "Mot."). Following briefing, the Magistrate Judge issued the second Report [ECF No. 112], to which Plaintiff now objects, on February 6, 2024, recommending dismissal of each of Plaintiff's claims as follows:

First, the Report recommends dismissal of the claims against Mr. Ishbia (Counts X-XVII) for lack of personal jurisdiction. Rpt. at 10-14.

Second, the Report recommends dismissal of Plaintiff's per se group boycott

claims (Counts I and IV) because Plaintiff has not alleged (1) a plausible "hub and spoke" conspiracy, or (2) sufficient market power to restrain competition. *Id*. at 15-35.

Third, the Report recommends dismissal of Plaintiff's "rule of reason" claims (Counts II and V) for failure to allege detrimental effects on competition. *Id*. at 35-40.

Fourth, the Report recommends dismissal of Plaintiff's attempted monopolization claims (Counts III and VI) because Plaintiff has not alleged (1) a dangerous probability of success or (2) a specific intent to monopolize. *Id*. at 40-43.

Fifth, the Report recommends dismissal of Plaintiff's tortious interference claim (Count VII), which Plaintiff does not oppose. *Id*. at 43-47.

Sixth, the Report recommends dismissal of Plaintiff's claims for violation of FDUTPA and declaratory judgment (Counts VIII and IX), because both are derivative of and depend upon the validity of the dismissed antitrust claims. *Id*. at 47-48.

Plaintiff's Objections ignore the Magistrate Judge's reasoning in favor of picayune disagreements, each of which fails on its own merits, and all of which taken together provide no basis to depart from any of the Report's conclusions or recommendations.

## II. Standard of Review

This Court reviews the Report *de novo*. Fed. R. Civ. P. 72(b)(3). Plaintiff has the initial burden under Rule 12(b)(2) to allege "sufficient facts to make out a prima facie case of jurisdiction" against a nonresident defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted).To survive a Rule 12(b)(6) motion, Plaintiff must state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

III. <u>Argument</u>

    A.    **The Report Correctly Recommends Dismissal of All Claims Against Mr. Ishbia for Lack of Personal Jurisdiction (Counts X-XVII)**

The Report correctly finds that Florida's corporate shield doctrine defeats personal jurisdiction as to Mr. Ishbia. Rpt. at 10-14. Plaintiff asserts an exception because "antitrust violations are a statutory tort." Obj. at 4. But Plaintiff has not alleged any viable antitrust violations. *See infra*. Regardless, the intentional tort exception is inapplicable to a "nonresident employee-defendant" like Mr. Ishbia, who "commits no [tortious] acts ***in Florida***[.]" *Kitroser v. Hurt*, 85 So. 3d 1084, 1089-90 (Fla. 2012) (emphasis added). The creation of Internet content not "targeted" at but merely "accessible" in Florida does not suffice. *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207, 1213 (Fla. 2010).

    B.    **The Report Correctly Recommends Dismissal of Plaintiff's Per Se Group Boycott Claims (Counts I and IV)**

        1.    **Plaintiff's Objections Fail to Address the Substance of the Magistrate Judge's Ruling on the Per Se Group Boycott Claims.**

Plaintiff's Objections ignore almost the entirety of the Magistrate Judge's thoughtful 21-page analysis recommending dismissal of Plaintiff's per se group boycott claims. Rpt. at 15-35. The Supreme Court has cautioned that the per se label should be applied "infrequently and with caution." *Id*. at 17-18 (quoting *Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006)). The per se rule is limited to boycotts "involving horizontal agreements among direct competitors." *Id*. at 18-19 (quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135, 137 (1998)). Plaintiff does not allege such a horizontal agreement, but rather vertical agreements between UWM and its brokers. *Id*. at 20. Plaintiff also does not allege a "hub and spoke" conspiracy because the Complaint lacks facts "to plausibly suggest the brokers agreed among themselves to boycott Rocket and Fairway," leaving a "rimless

4

wheel" that "does not amount to a per se restraint of trade[.]" *Id*. at 20-23.

Plaintiff also does not plausibly allege that UWM wields sufficient market power to restrain competition in a properly defined market under the "reasonable interchangeability" test. *Id*. at 25-35. Because wholesale and retail mortgages are interchangeable and cross-elastic, they define one market of all residential mortgages in which UWM lacks the power to restrain competition. *Id*. at 30-32.

These unobjected-to findings, by themselves, support adoption of the Report's recommendation to dismiss Plaintiff's per se group boycott claims.

### 2. Each of Plaintiff's Objections with Respect to the Per Se Group Boycott Claims Also Fails.

Plaintiff objects that its "evidence" is "to be believed," citing summary judgment precedent. Obj. at 1. But this is not a summary judgment motion. What Plaintiff must supply at this stage is "enough factual matter (taken as true) to suggest that an agreement was made"; instead, it offers "an allegation of parallel conduct and a bare assertion of conspiracy," which "will not suffice." Rpt. at 14 (quoting *Twombly*, 550 U.S. at 556).

Plaintiff next objects that the Report has chosen "between alternative plausible inferences[.]" Obj. at 2, 4-6. But Plaintiff's "conclusory assertion" of brokers "acting against their individual interests" is ***not*** a "plausible inference" of a "plus factor" where it is "equally likely" the brokers were acting out of self-interest. Rpt. at 24-25. Plaintiff has alleged no facts that would "rule out the possibility" that the brokers "were acting independently." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1271-72 (11th Cir. 2019) (quoting *Twombly*, 550 U.S. at 553-54). Plaintiff's own cases illustrate the level of pleading required—and absent here. *See, e.g., Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (plaintiff's evidence "far too

5

ambiguous" to allege a plus factor); *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1372 (N.D. Ga. 2017) (rejecting assertion of "invitation to collude" based on earnings call statement that did not "tend[] to exclude" independent action).

Plaintiff's reliance on *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), is misplaced. That case involves collusion to fix prices in a highly concentrated market, in which the defendant "consciously played a key role." *Id.* at 316. No such allegations exist here. By contrast, the Report correctly applies *In re Insurance Brokerage Antitrust Litigation*, in which plaintiff failed to state a per se claim despite alleging direct collaboration between numerous competing insurers and brokers to allocate clients. 618 F.3d 300, 322-36 (3d Cir. 2010). The allegations here are far weaker. *See* Rpt. at 23.

Plaintiff wrongly asserts that the Report "fails to address" paragraphs 41-44 of the Complaint. Obj. at 2, 5-6. In fact, the Report addresses each of these allegations, which do **not** set forth "concerted action" or "interfirm communications" by brokers, but rather "independent expressions of enthusiasm and encouragement." Rpt. at 23-24. Such expressions do not plausibly allege "concerted actions" or "an agreement among the brokers sufficient to form the rim of a conspiracy." First Rpt. at 33.

The Report also correctly applies *Northwest Wholesale Stationers*. Obj. at 3, 7-8, 10. There, the Supreme Court held a per se boycott must "cut off access to a supply, facility, or market necessary to enable the boycotted firm to compete." Rpt. at 26-27 (quoting *Nw. Wholesale Stationers*, 472 U.S. at 284, 294-97). Such allegations are absent here. Rpt. at 27-34. Plaintiff has alleged no facts akin to *Silver v. New York Stock Exchange*, 373 U.S. 341 (1963), where defendant controlled and cut off the only means of access to market information. *Id.* at 347-48. The fact that many brokers prefer UWM to

Rocket and Fairway is not a "cut off"; it is competition. *See Levine v. Centr. Fla. Med. Affiliates*, 72 F.3d 1538, 1551 (11th Cir. 1996) ("The antitrust laws are intended to protect competition, not competitors") (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 344 (1967)). Plaintiff's allegations simply do not "tend to exclude the possibility of independent action." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1365 (3d Cir. 1992).

UWM also lacks a dominant position in the properly defined market of all residential mortgage loans under the reasonable interchangeability test. *See* Rpt. at 27-34. Plaintiff mischaracterizes the Magistrate Judge's market analysis as an "impermissible selection" of certain market share evidence as "more relevant." Obj. at 3, 8-9. In fact, the Magistrate Judge was not choosing "among plausible inferences," but rather quoting Plaintiff's cited earnings call, which references a "54% market share of the broker channel in the fourth quarter," but acknowledges this represents "about 11% of the overall mortgage market," with a "38% market share of the wholesale channel" for 2022. Rpt. at 33-34. That aligns exactly with the Magistrate Judge's determination that the properly defined market is the entire residential mortgage market, in which UWM has only an 11% share. Rpt. at 28-34.

Plaintiff asserts that the Report fails to address allegations purporting to explain why customers "may prefer mortgages from wholesale lenders." Obj. at 3, 8. Again, however, the Report specifically addresses those allegations, finding they are just "statements regarding mortgage brokers generally and how they operate," and, if anything, "actually constitute[] evidence of the cross-elasticity of demand and reasonable substitutability" of wholesale and retail mortgages. Rpt. at 29-32.

Plaintiff asserts that the Report fails to consider UWM's supposed power to "raise prices or impose other burdensome terms." Obj. at 9. But that ignores the Report's correct

7

determination that Plaintiff has not alleged UWM's power within the properly defined market of all residential mortgage loans. Rpt. at 27-34. Even within the wholesale channel, Plaintiff does not address the fact that brokers were and are free to terminate with UWM at will and to immediately do business with Rocket and Fairway—hardly an "onerous" term. Mot., Ex. A §§ 7.05, 7.06; Mot., Ex. G § 3.05.

Lastly, Plaintiff insists the Report fails to address its "barriers to entry" allegations. Obj. at 3, 10. In fact, the Report points out the obvious—that Rocket and Fairway are already retail lenders that have also entered the wholesale channel, and Plaintiff has failed to allege any barriers to entry that would prevent similar retail competitors from entering the same channel. Rpt. at 34. Indeed, Plaintiff has never disputed that there are 50+ other competitors already in the market. Mot., Ex. F at 16:9-18.

### C. The Report Correctly Recommends Dismissal of Plaintiff's "Rule of Reason" Claims (Counts II and V)

The Report properly recommends dismissal of Plaintiff's "rule of reason" claims. *See* Rpt. at 35-40. Plaintiff has not alleged "a substantial anticompetitive effect that harms consumers in the relevant market." *Id*. at 35-36 (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)). It alleges "no underlying facts at all" to support its assertion of increased mortgage loan costs, and no facts indicating the "actual effects" on the "market as a whole." *Id*. at 37-38. These unobjected-to findings alone suffice to dismiss.

Plaintiff objects that the Report does "not address[]" its allegations of harm to Rocket and Fairway. Obj. at 10-12. In fact, the Report extensively addresses these allegations. *See* Rpt. at 37-39 (addressing Suppl. Compl. ¶¶ 72-81). Plaintiff's allegations supply "no facts indicating the actual effects" on "the market as a whole," offer "nothing" to show that Rocket and Fairway "were ever eliminated" or "no longer participate" in the

8

market, are "speculative at best," do not plead "direct evidence of anticompetitive effects," and present no harm to "the overall mortgage market—or wholesale market—as a whole." *Id*. at 37-39. Consumers remained "free to access [Rocket and Fairway] mortgages from the brokers who did not work with UWM or sign the agreement." *Id*.

Plaintiff also asserts that the Report fails to address the impact of the so-called "boycott" on "the autonomy of the marketplace." Obj. at 11. But as its lead case reflects, such harm is only established where the defendant has the power to **control market access**, such as through an exclusive listing service. *See Realcomp II, Ltd. v. Fed. Trade Comm'n*, 635 F.3d 815, 829 (6th Cir. 2011). Here, consumers remain free to access mortgages from Rocket and Fairway through other brokers, or to access mortgages from 50+ other wholesale lenders or through the retail channel. *See* Rpt. at 38-39. Plaintiff has not alleged the exclusion of "a substantial number of rivals" or "severely restrict[ing] the market's ambit." *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005).

### D. The Report Correctly Recommends Dismissal of Plaintiff's Attempted Monopolization Claims (Counts III and VI)

The Report properly recommends dismissal of Plaintiff's attempted monopolization claims because Plaintiff has not alleged a dangerous probability of achieving monopoly power. Rpt. at 40-43. Plaintiff reasserts its Objections to "the foregoing erroneous conclusions" regarding UWM's market share. Obj. at 3-4. These arguments fail for all the reasons already discussed, and Plaintiff's only additional authority involved an increase in market share from 0.45% to 50.48% in two years. *See Nobody in Particular Presents, Inc. v. Clear Channel Comm's, Inc.*, 311 F. Supp. 2d 1048, 1103 (D. Colo. 2004). No similar allegations are made here.

Plaintiff also does not object to the Report's separate finding that Plaintiff fails to

9

allege a specific intent to monopolize. Rpt. at 43. That uncontested finding by itself supports the Report's recommendation of dismissal.

E. **The Report Correctly Recommends Dismissal of Plaintiff's FDUTPA and Declaratory Judgment Claims (Counts VIII and IX)**

Plaintiff raises no separate Objections to the recommended dismissal of the FDUTPA and declaratory judgment claims. Obj. at 3. Both claims depend on the asserted antitrust violations, and should be dismissed for the same reasons. Rpt. at 47-48.

IV. **Conclusion**

Wherefore, Defendants respectfully request that the Court overrule Plaintiff's Objections, accept the Magistrate Judge's Report, and dismiss the Complaint.

Dated: March 15, 2024

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: 954-765-0500

By: /s/ *Glenn E. Goldstein*
**Glenn E. Goldstein**
Florida Bar No. 435260
Email: GoldsteinG@gtlaw.com

**Sabrina D. Niewialkouski**
Florida Bar No. 0123630
Email: Niewialkouskis@gtlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served on all counsel of record via transmission of Notices of Electronic Filing by CM/ECF.

/s/ *Glenn E. Goldstein*
GLENN E. GOLDSTEIN